# Exhibit 3

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF RICHLAND | ) | FIFTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | Civil Action No. 2025-CP-40-06539 |
| | ) | |
| ANNE CROOK, | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| SOUTH CAROLINA ELECTION | ) | |
| COMMISSION A/K/A STATE | ) | |
| ELECTION COMMISSION, | ) | |
| *Defendant,* | ) | |
| | ) | |
| HENRY DARGAN MCMASTER, IN HIS | ) | |
| OFFICIAL CAPACITY AS GOVERNOR | ) | |
| OF THE STATE OF SOUTH | ) | |
| CAROLINA, | ) | |
| *Intervenor-Defendant.* | ) | |

This matter is before the Court on a Motion for Temporary Injunction filed by Plaintiff, Anne Crook. The motion seeks to prevent or limit the Election Commission's dissemination to DOJ of certain information from the South Carolina statewide voter registration list (VRL), containing Plaintiff's personal information. The Court heard this matter on September 26, 2025, and took the matter under advisement. For the reasons stated below, the Motion is **DENIED**.

<u>**Introduction**</u>

Plaintiff is requesting an injunction to prevent the South Carolina Election Commission (Election Commission) from releasing any protected election data to the Department of Justice (DOJ) until there is a memorandum of understanding (MOU) between the two parties. Additionally, Plaintiff requests that this Court review any MOU. In the Election Commission's memorandum in opposition, as well as at oral arguments by their counsel, they have stated point-

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

blank that they will not release the data to the DOJ without an MOU between the two government agencies. Additionally, counsel stated that the contents of the MOU would be discussed and voted on in open session by the commissioners. This Court denies the drastic remedy of granting injunction for several reasons.

**First**, Plaintiff has failed to prove she will suffer an irreparable harm because the Election Commission has stated it will not release the data without an MOU containing necessary security safeguards to ensure the proper and confidential use of that data and its transmission.

**Second**, Plaintiff has failed to prove there are no adequate remedies at law because she could avail herself to the state and federal tort claims acts if any data is negligently handled in the future.

**Finally**, Plaintiff is not likely to succeed on the merits for several reasons. **1.** The Election Commission is statutorily authorized to engage in the conduct she seeks to enjoin; specifically, South Carolina law vests the Election Commission with the authority to enter data sharing agreements to disclose securely certain voter registration data. **2.** The "right to privacy" constitutional provision does not encompass the sharing of data between the State and the federal government to secure federal elections. **3.** Requesting this Court to mandate an MOU and to assess its adequacy would improperly entangle the judiciary in the routine operations of the Election Commission, which would offend foundational separation of powers principles. **4.** Federal law likely requires the Election Commission to provide the requested information to DOJ.

<u>**Factual Background**</u>

On August 6 and 14, 2025, the Department of Justice Civil Rights Division (DOJ) sent letters to the Election Commission, requesting, in sum, South Carolina's VRL. Specifically, in the second letter, DOJ requested "an electronic copy of the statewide voter VRL[, which] should contain *all fields*, which means, [the] state's VRL must include the registrant's full name, date of birth, residential address, [and] his or her state driver's license number or the last four digits of the registrant's social security number . . . ." *See* Compl. at 7–11 (Letter from Harmeet K. Dhillon, Assistant Attorney General Civil Rights Division to Howard Knapp, then-Executive Director, State Election Commission).

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

On August 27, 2025, the Election Commission met to address DOJ's requests. Wooten Aff. ¶ 4. Specifically, the Election Commission directed its staff to confer with DOJ about the prospect of entering into a data sharing agreement as authorized by section 7-5-186(C) of the South Carolina Code of Laws. *Id.* After additional communications with DOJ, on September 3, 2025, the Election Commission and DOJ held a conference call to discuss a possible data sharing agreement. *Id.* ¶ 5. Based on that conference call, the Election Commission understands that DOJ is currently developing a Memorandum of Understanding (MOU) that identifies the requested information and addresses the security and privacy concerns raised by the Election Commission. *Id.* ¶ 6. The Election Commission has not yet received the MOU. *Id.* The Election Commission has stated that it will not share any data without a proper MOU in place.

Contesting dissemination of the VRL to DOJ, Plaintiff filed a complaint with a request for injunctive relief and a declaratory judgment in Calhoun County. Ultimately, the case was transferred to Richland County and assigned to the Honorable Daniel M. Coble. The Election Commission filed its Answer on September 25, 2025.

<u>**Legal Standard**</u>

An injunction is a "drastic" remedy that "ought to be applied with caution." *Strategic Res. Co. v. BCS Life Ins. Co.*, 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006). A plaintiff "must establish three elements" to obtain a preliminary injunction: (1) irreparable harm, (2) likelihood of success on the merits, and (3) no adequate remedy at law. *Compton v. S.C. Dep't of Corr.*, 392 S.C. 361, 366, 709 S.E.2d 639, 642 (2011).

**1. Irreparable harm**

Plaintiff submits to the Court that she would suffer irreparable harm "if either 1) more of her [personal information] is shared than is permissible under the law or 2) the information is shared without adequate protection." Motion for Temporary Injunction at 11 (Sept. 23, 2025). Transmitting her personal information within the defined confines of an MOU protects against either scenario. Therefore, Plaintiff has failed to identify any sufficient harm—let alone an irreparable harm—she would suffer absent an injunction.

The Election Commission stated in court and in the filings with this Court that they will enter into an MOU with the DOJ that complies with all state law and ensure the protection of any

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

personal information. Additionally, the Election Commission stated that the contents of the MOU would be discussed and voted on at an open hearing. The Election Commission stated in their Memorandum in Opposition to Plaintiff's Motion for a Temporary Injunction:

> Specifically, in recognition of the significant privacy concerns involved, the Election Commission will fulfill its statutory obligations to protect private information and share voter information with DOJ only pursuant to an MOU containing necessary security safeguards to ensure the proper and confidential use of that data and its transmission. Indeed, this explains why the Election Commission has not transmitted the requested information since DOJ first inquired in early August. To appease her concerns, Plaintiff need not look any further than to the MOUs into which the Election Commission routinely perfects when exercising its statutory authority to share voter registration data to carry out its obligation "to maintain accurate voter registration records." *See* Wooten Aff. ¶ 4; S.C. Code Ann. §§ 7-3-20(D)(11), 7-5-186(A). As is standard practice, those MOUs outline the limited purpose for which the shared voter information will be used and the steps taken to protect the confidentiality of that data upon disclosure. For example, such documents ordinarily set forth data use limitations and provide secure transmission protocols and storage and destruction procedures. Any perfected MOU with DOJ should be no different.

Memorandum in Opposition to Plaintiff's Motion for a Temporary Injunction at 5 (Sept. 26, 2025).

Further, Plaintiff's alleged irreparable harm rests on the premise that the Election Commission will not act in good faith or properly carry out the law. Public officials are, absent evidence to the contrary, presumed to act in good faith and follow the laws. *S.C. Jurisprudence*, Evidence § 29 (1999*); see also Toporek v. S.C. State Election Comm'n*, 362 F. Supp. 613 (D.S.C. 1973) (stating that without an evidentiary basis, courts will not assume that state election officials will act arbitrarily in the future). The only evidence in this case is that the Election Commission has acted in good faith in enacting the MOUs with other states to fulfill its statutory duty to maintain accurate voter lists—that is, to prevent voter fraud. Plaintiff has not alleged, and the Court cannot assume, that the Election Commission will do anything other than adhere to state law in any negotiations with DOJ.

## 2. Adequate remedies

Actions for injunctive relief are equitable in nature. *Grosshuesch v. Cramer*, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005) (citation omitted). Generally, equitable relief is available only where there is no adequate remedy at law. *Santee Cooper Resort, Inc. v. S.C. Pub. Serv. Comm'n*, 298

S.C. 179, 185, 379 S.E.2d 119, 123 (1989). Specifically, "An 'adequate' remedy at law is one which is as certain, practical, complete and efficient to attain the ends of justice and its administration as the remedy in equity." *Id.* In the unlikely event that Plaintiff's private information somehow falls in the hands of a "bad actor" as a result of the Election Commission's fulfillment of its statutory obligations under S.C. Code Ann. § 7-5-186(C) as she hypothesizes, she could avail herself to the state and federal tort claims acts. Such claims are more than adequate vehicles for relief such that an injunction is improper.

### 3. Success on the Merits

#### *Statutory Authorization*

Because the Election Commission is statutorily authorized to engage in the conduct she seeks to enjoin, Plaintiff cannot possibly establish she is likely to succeed on the merits. More specifically, South Carolina law vests the Election Commission with the authority to enter data sharing agreements to disclose securely certain voter registration data.

The South Carolina Constitution mandates the General Assembly to enact legislation providing for the regulation of elections (article II, section 1), the registration of voters (article II, section 8), and "the fulfillment and integrity of the election process" (article II, section 10). Pursuant to that authority, the General Assembly enacted Title 7 of the South Carolina Code of Laws, in turn establishing the Election Commission to oversee the administration of elections and to maintain fair and fraud-free elections. *See* S.C. Code Ann. § 7-3-10(F) (charging the Election Commission with "promulgat[ing] regulations to establish standardized processes for the administration of elections and voter registration that must be followed by the county boards of voter registration and elections").

To that end, relevant here, section 7-5-186(A) requires the Election Commission to establish and maintain a statewide voter registration database and to "conduct an annual general registration list maintenance program to maintain accurate voter registration records in the statewide voter registration system." S.C. Code Ann. § 7-5-186(A). Included in that list is the information the Election Commission collects pursuant to its statutory mandate for contents of voter registration applications. In particular, the application (and therefore the VRL) must contain a registrant's name, sex, race, social security number, date of birth, residential address and may

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

also include driver's license numbers, state-issued identification numbers, telephone numbers, email addresses, mailing addresses, location of prior voter registrations, voter registration agencies, and other data incident to voter registrations. S.C. Code Ann. § 7-5-170(2); *see also* S.C. Code Ann. § 7-5-185(B)(5) (requiring the same information for electronic applications for voter registration).

Furthermore, section 7-5-186(C) expressly provides,

> The State Election Commission *may enter into agreements to share information or data* with other states or groups of states, *as the commission considers necessary,* in order to maintain the statewide voter registration database established pursuant to this section. Except as otherwise provided in this subsection, the commission shall ensure that any information or data provided to the commission that is confidential in the possession of the state providing the data remains confidential while in the possession of the commission. *The commission may provide such otherwise confidential information or data to persons or organizations that are engaging in legitimate governmental purposes related to the maintenance of the statewide voter registration database.*

S.C. Code Ann. § 7-5-186(C) (Emphasis added). The plain language of the statute permits the Election Commission to share the requested information with "organizations" such as DOJ. Before perfecting the agreement, the Election Commission determines whether the DOJ MOU meets the state's statutory requirements for disclosure of voter personal information. If it does not, the Election Commission will not enter the agreement or share the VRL.

Much of the Family and Personal Identifying Information Privacy Protection Act is not relevant to this action. For instance, it requires state agencies to have privacy policies and to inform people that collected information might be disclosed, and it prohibits anyone from using personal information obtained from a government agency from using that information for commercial solicitation. *See* S.C. Code Ann. §§ 30-2-20, -40, -50(A). Specific to the section Crook cites in the heading of her motion, section 30-2-20 permits agencies to share personal information to "fulfill a legitimate public purpose." *Id.* § 30-2-20. Surely protecting the voter rolls fits that description. *See id.* § 7-3-10(G) (Commission must "comply with applicable state and federal election law").

Put simply, the statute's plain text authorizes the Election Commission to engage in the conduct Plaintiff hopes to enjoin. *See Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("Under the plain meaning rule, it is not the province of the court to change the meaning of a clear and unambiguous statute.").

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

*Right to Privacy*

A statute gives a plaintiff the right to sue only if the General Assembly intended to create that right. *Denson v. Nat'l Cas. Co.*, 439 S.C. 142, 151, 886 S.E.2d 228, 233 (2023). "Generally, when a statute does not expressly create civil liability, a duty will not be implied unless the statute was enacted for the special benefit of a private party." *Id.* at 151–52, 886 S.E.2d at 233. Nothing in section 7-5-170 (or section 7-5-186) is for any special benefit of an individual. Instead, these statutes provide the framework how voters register and how the Election Commission handles the voter registration database. Bolstering this conclusion are other parts of Title 7, which expressly provide a person the right to challenge certain Election Commission actions. *See, e.g.,* S.C. Code Ann. §§ 7-5-230(C), 7-5-240.

Because there is no private cause of action conferred under these election statutes, the Plaintiff's standing hinges on whether or not her "right to privacy" has been implicated under South Carolina's Constitution. Article I, section 10 prohibits "unreasonable invasions of privacy." S.C. Const. art. I, § 10. That provision was intended "to take care of the invasion of privacy through modern electronic devices." Committee to Make a Study of the Constitution of South Carolina, 1895, *Minutes of Committee Meeting* 6 (Sept. 15, 1967). It sought "to protect the citizen from improper use of electronic devices, computer data banks, etc." Committee to Make a Study of the Constitution of South Carolina, 1895, *Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895*, at 15 (1969). As originally understood then, this provision has nothing to do with the sharing of data between the State and the federal government to secure federal elections.

This constitutional provision's current jurisprudence is not precisely clear, and there is limited case law on the issue. Therefore, this Court must look to several recent cases to ascertain and interpret the provision in light of the facts of this case. In *Planned Parenthood I*, the South Carolina Supreme Court interpreted the right to privacy as more than merely a search or seizure related protection. However, *Planned Parenthood I* was not directly overruled, but it was clearly supplanted by *Planned Parenthood II*. The first case's two dissenting opinions viewed the right to privacy in a more limited fashion, with Justice James' opinion keeping the provision within the search and seizure framework. *Planned Parenthood II* made it clear that while the majority

opinion ruled that the right to privacy encompassed more than the search and seizure context, it did so only for the purposes of that opinion.

> Second, *Planned Parenthood I* is a highly fragmented decision with five separate opinions. ...we likewise decline to revisit the fragmented decision regarding the proper scope of the privacy provision. Rather, in the interest of unity, we will assume only for purposes of our analysis and decision **today** that the privacy provision reaches beyond the search and seizure context to include bodily autonomy. Accordingly, we go no further **today** than referencing *Singleton v. State*, which held that the interests protected by the privacy clause extend to bodily autonomy and integrity.

*Planned Parenthood S. Atl. v. State*, 440 S.C. 465, 481, 892 S.E.2d 121, 130 (2023), *reh'g denied* (Aug. 29, 2023) (emphasis added). The Supreme Court made clear that in that case they were not making a definitive ruling as to the interpretation of the history and meaning of the constitutional provision in question. *Id.* at 481 n.9 ("We elect not to address those threshold differences: for purposes of our analysis and decision today, we will cast aside a review of the history and relevance of the 1971 amendments to the state constitution that included the privacy provision, including the work of the West Committee.").

Courts will attempt to avoid making legal interpretations when they are unwarranted and superfluous to the ultimate decision. The judiciary is not in the business of creating business but rather tasked with the simple job of making decisions related to past conduct and stating rules for predictability of future conduct. It is often not necessary – and usually unproductive – to create more rules, more interpretations, and more disagreements on issues that are not directly impacted by the ultimate decision. However, because the standing of this Plaintiff hinges on whether or not her right to privacy could be violated, this Court must draw an interpretation as to what the constitutional provision means.

This trial court will never say what the law is or what it ought to be – but it will say what it believes the law is as promulgated by the South Carolina Supreme Court and the South Carolina General Assembly. Following along the lines of the several opinions in *Planned Parenthood I*, in conjunction with prior precedent, this Court does not believe that this provision is implicated with the sharing of election data. In his well-reasoned and thoroughly analyzed opinion, Justice James walks through the history and times of the constitutional amendments during the 1960s and 1970s, and particularly, how the right to privacy provision came about. Without quoting verbatim the

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

opinion, this Court notes several passages to explain why it believes the right to privacy does not encompass the voter election data at issue in this case.

First, in a letter from the attorney general to West Committee Staff Consultant Robert H. Stoudemire, the attorney general explains the reason why the right to privacy needed to be added to the constitutional protections:

> In the first paragraph, General McLeod acknowledged that the proposed privacy provision "relate[d] to interception of communication which is generally done by electronic means." Letter from Daniel R. McLeod, S.C. Att'y Gen., to Robert H. Stoudemire, Staff Consultant, Comm. to Make a Study of the S.C. Const. (Oct. 2, 1967), 1967 WL 12658, at *1. He then noted an "additional factor [that] may be taken into consideration" is the "protection of privacy in areas such as information gotten through data processing." *Id.* The letter as a whole speaks solely in terms of "securing individual privacy in the field of data processing" and in terms of protecting against intrusions into privacy occasioned by (1) interception of communication and information by electronic means, (2) mass collection of data, (3) unguarded income tax and health information, and (4) unguarded information stored in computers. *Id.*

*Planned Parenthood S. Atl. v. State*, 438 S.C. 188, 339–40, 882 S.E.2d 770, 851–52 (2023), *reh'g denied* (Feb. 8, 2023).  Second, the final report related to this constitutional provision discusses the purpose of the added language:

> **Section J. Searches and seizures.** The Committee recommends that the historic provision on searches and seizures be retained. In addition, the Committee recommends that the citizen be given constitutional protection from an unreasonable invasion of privacy by the State. This additional statement is designed to protect the citizen from improper use of electronic devices, computer databanks, etc. Since it is almost impossible to describe all of the devices which exist or which may be perfected in the future, the Committee recommends only a broad statement on policy, leaving the details to be regulated by law and court decisions.

*Planned Parenthood S. Atl. v. State*, 438 S.C. 188, 338, 882 S.E.2d 770, 850–51 (2023), *reh'g denied* (Feb. 8, 2023).

But even as expanded in *Singleton v. State*, 313 S.C. 75, 89, 437 S.E.2d 53, 61 (1993), article I, section 10 still does not reach the sharing of the voter registration list. That case holds no more than that this provision might extend to "bodily autonomy and integrity." *Planned Parenthood S. Atl. v. State*, 440 S.C. 465, 481, 892 S.E.2d 121, 130 (2023). This Court would thus break new ground by applying article I, section 10 to the voter registration list—and with no way

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

to reconcile that conclusion with the "intent of [article I, section 10's] framers and the people who adopted it." *State v. Long*, 406 S.C. 511, 514, 753 S.E.2d 425, 426 (2014).

And of course, article I, section 10 "draws the line at *unreasonable* invasions of privacy." *Planned Parenthood S. Atl.*, 440 S.C. at 482, 892 S.E.2d at 131 (emphasis added). So even if this provision were implicated by the sharing of voter registration lists, this provision would be violated only if the Commission would act unreasonably to provide information to the federal government. This Court does not believe there would be an unreasonable invasion of privacy for the Election Commission to turn over its data to the DOJ.

### Separation of Powers

Plaintiff seeks an injunction preventing the Election Commission from sharing any such information absent an "adequate" MOU, subject to review by this Court. This Court cannot supersede the Election Commission's discretion to enter such agreements specifically conferred by statute. In a similar vein, in the first instance, the Election Commission alone is charged with ensuring that an MOU "adequately protects" the rights of the South Carolina electorate, including Plaintiff. Requesting this Court to mandate an MOU and to assess its adequacy would improperly entangle the judiciary in the routine operations of the Election Commission. Such involvement would offend foundational separation of powers principles (article I, section 8 of the South Carolina Constitution) and undermine the independence of the executive agency by inserting judicial oversight into the Election Commission's discharge of its statutory duties and responsibilities. *State ex rel. McLeod v. McInnis*, 278 S.C. 307, 312, 295 S.E.2d 633, 636 (1982) ("One of the prime reasons for separation of powers is the desirability of spreading out the authority for the operation of the government. It prevents the concentration of power in the hands of too few, and provides a system of checks and balances. The legislative department makes the laws; the executive department carries the laws into effect; and the judicial department interprets and declares the laws.").

### Federal law

Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III alone is sufficient to reach that conclusion. Title III requires that, for

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

22 months after a federal election, a state election official "retain and preserve" "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework. For starters, the voter registration list from the 2024 election is a "record" in a state election official's possession "relating to" the "registration" of voters for the 2024 election. *Id.* § 20701. And that registration now includes either a driver's license number or the last four digits of a Social Security number. *Id.* § 21083(a)(5)(A). DOJ made this request "in writing" and explained its "basis" and "purpose" of ensuring that the State was complying with HAVA and the NVRA. *Id.* § 20703; *see* Compl. Exs. 1 & 2 (DOJ letters).

<u>**Conclusion**</u>

***State Sovereignty***

This Court finds that federal law likely preempts state law in this area simply because of how this Court has to frame the issue. This case is about whether a citizen can likely succeed on the merits of challenging a State action in compliance with its own interpretation of federal law. And the State at this point has interpreted the law as requiring compliance with the federal request. It is not framed as the State *challenging* the federal request to a state agency. This Court has grave concerns about federal overreach and encroachment over this State's sovereignty. However, because this Court rules on the issue at hand, it does not discuss this issue further. As stated by Chief Justice John Roberts of the United States Supreme Court:

> Outside the strictures of the Supremacy Clause, States retain broad autonomy in structuring their governments and pursuing legislative objectives. Indeed, the

Constitution provides that all powers not specifically granted to the Federal Government are reserved to the States or citizens. Amdt. 10. This "allocation of powers in our federal system preserves the integrity, dignity, and residual sovereignty of the States." *Bond v. United States,* 564 U.S. ——, ——, 131 S.Ct. 2355, 2364, 180 L.Ed.2d 269 (2011). But the federal balance "is not just an end in itself: Rather, federalism secures to citizens the liberties that derive from the diffusion of sovereign power." *Ibid.* (internal quotation marks omitted). More specifically, " 'the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections.' " *Gregory v. Ashcroft,* 501 U.S. 452, 461–462, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991)

*Shelby Cnty., Ala. v. Holder,* 570 U.S. 529, 543, 133 S. Ct. 2612, 2623, 186 L. Ed. 2d 651 (2013).


For the reasons stated above, the Motion for Temporary Injunction is **DENIED**. The Governor's Motion to Dismiss is continued.




**AND IT IS SO ORDERED.**

_____

The Honorable Daniel McLeod Coble



October 1, 2025

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539

ELECTRONICALLY FILED - 2025 Oct 01 11:15 AM - RICHLAND - COMMON PLEAS - CASE#2025CP4006539



Richland Common Pleas

**Case Caption:**   Anne  Crook vs   South Carolina Election Commission , defendant, et al

**Case Number:**   2025CP4006539

**Type:**   Order/Other

So Ordered

s/ Daniel Coble, 2774

Electronically signed on 2025-10-01 11:10:17    page 13 of 13