IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,<br><br>    *Defendant*. | Civil No. 25-cv-1193-LF-JFR<br><br>**MOTION TO INTERVENE OF THE NEW MEXICO ALLIANCE FOR RETIRED AMERICANS** |

The New Mexico Alliance for Retired Americans, through undersigned counsel, hereby moves to intervene pursuant to Fed. R. Civ. P. 24. In compliance with Rule 24(c), the Alliance attaches a proposed "pleading" herewith. *See* Ex. A. The Alliance reserves the right to file a Rule 12 motion ahead of any deadline set by the Court or the Federal Rules.

In support of this Motion, the Alliance submits the declaration and recent intervention decisions of other federal courts, attached herewith, and further state as follows:

**INTRODUCTION**

The Department of Justice ("DOJ") recently embarked on an unprecedented nationwide campaign to amass a wide array of highly sensitive personal information on voters in a centralized database. In connection with this effort, DOJ sued Secretary of State Maggie Toulouse Oliver on December 2, 2025, seeking to compel production of New Mexico's complete and unredacted voter registration list, which contains sensitive and private information about every voter in New Mexico. This assault intrudes not only on New Mexico's constitutional prerogative to maintain and protect its own voter registration list—and the explicit guarantees that New Mexico has made to voters that their private information will not be shared—but also on the privacy rights of

individual New Mexico voters who have good reason to fear their personal information being handed over to the federal government. This includes the approximately 22,000 voters affiliated with the New Mexico Alliance for Retired Americans, which now seeks to intervene to preserve its members' privacy rights by preventing disclosure of their sensitive personal information to DOJ. Additionally, the Alliance seeks to protect its own mission-critical efforts to empower communities worried about retaliation and scrutiny by the federal government. New Mexico law permits disclosure of only select categories of information about registered voters. N.M. Stat. Ann. § 1-4-5.5(B). Pointedly, the Secretary of State "shall not provide data or lists that include voters' social security numbers." *Id.*

The Alliance is entitled to intervene as a matter of right because it has significant interests that are at serious risk of impairment by the relief sought in this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, the Alliance has an interest in ensuring that its members' sensitive and personal information is not improperly disclosed to DOJ. While New Mexico's Secretary of State has thus far resisted disclosure, she does not adequately represent the Alliance and its members: As a governmental defendant, she must consider "broader public-policy implications" of the issues presented in this suit, while the Alliance is solely concerned with protecting its members' privacy and voting rights and preserving its organizational resources—"full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538–39 (1972)). Unsurprisingly, in cases involving DOJ's nationwide crusade, other federal courts have already granted intervention as of right to similarly situated intervenors—including to the Michigan Alliance for Retired Americans. *See* Ex. B (Op., *United States v. Benson*, No. 25-cv-1148 (W.D.

Mich. Dec. 9, 2025), Dkt. No. 45); Ex. C (Op. & Order, *United States v. Oregon*, No. 25-cv-01666 (D. Or. Dec. 5, 2025), Dkt. No. 52).

Alternatively, the Alliance should be granted permissive intervention under Rule 24(b) to ensure that New Mexico voters themselves have a voice in this case, the core subject of which is the disclosure of *their* personal information. At a minimum, the Alliance's presence will help to develop the issues and ensure vigorous presentation of arguments that the existing Defendant may be limited in presenting. Those considerations weigh strongly in favor of permissive intervention. *See* Ex. D (Mins. Of Mot. Hr'g, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 24, 2025), Dkt. No. 70) (granting permissive intervention by oral order).

## BACKGROUND

**I.   Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. As a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. Congress in 1993 enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a),

including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the federal government with compiling a federal national voter registration list. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

II.  **The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter registration data held by the states.**

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has sent

4

demands to more than forty states, with plans to make similar demands on all fifty.[1] It seeks to use the data to create a national voter database that will, in turn, be used in an attempt to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* note 1. The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2]

The pressure campaign against New Mexico began on September 8, 2025, when DOJ sent Secretary Oliver a letter demanding, among other things, New Mexico's "statewide voter registration list." Dkt. No. 2-3 at 2. DOJ insisted that the voter list "[c]ontain[] *all fields*," including driver's license numbers and the last four digits of social security numbers. *Id.* at 2–3 & n.3 (emphasis in original). Secretary Oliver responded on September 22, explaining that New Mexico law required her "to redact certain information from the voter registration list before it is made available for inspection." Dkt. No. 2-4 at 2. This included "social security numbers, full dates of birth, driver's license numbers, and contact information of participants in the confidential address programs." *Id.* The Secretary offered to provide a redacted list. *Id.* at 3. Secretary Oliver also expressed concerned about DOJ's compliance with the Privacy Act and asked DOJ to explain the "purpose for creating this system of records, why 'all fields' are necessary to fulfill this purpose,

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 5, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] *See* Martizen-Ochoa, O'Connor, & Berry, *supra* note 1 (so far, two states—Indiana and Wyoming—have given DOJ everything it sought).

and how DOJ intends to protect this information." *Id.* DOJ did not respond to the Secretary's questions. Instead, they filed this lawsuit.

### III.   The Department of Justice sues New Mexico to obtain its voter registration list.

DOJ filed this suit on December 2, 2025, seeking to compel New Mexico to provide its full statewide voter registration list. *See generally* Dkt. No. 1. DOJ frames its suit chiefly as seeking to ensure that New Mexico is complying with its obligations under the NVRA and HAVA. *Id.* ¶¶ 16–23. But DOJ does not bring any claims under either the NVRA or HAVA. Instead, its sole claim is brought under Section 303, a Civil Rights-era law that permits DOJ to review certain voting "records and papers which come into [the Secretary's] possession," 52 U.S.C. §§ 20701–20703, for the purpose of enabling investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).

Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. No. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). DOJ *admits* it is not seeking to enforce these laws or investigate the unconstitutional denial of the right to vote. Instead, DOJ claims to be evaluating

New Mexico's list maintenance efforts under the NVRA and HAVA. *See* Compl. ¶ 20.[3] The Civil Rights Act thus has no application here.

And it is notable that, while DOJ asserted NVRA and HAVA claims in otherwise nearly identical complaints it brought against a series of other states that similarly have refused to turn over sensitive voter data, it has abandoned those claims in its newest wave of these lawsuits, including this one against New Mexico.[4] DOJ's change of tactic is an implicit admission that it does not believe it has a basis to pursue these actions under HAVA or the NVRA, and in that regard at least, DOJ is correct.

HAVA does not require states to disclose voter registration materials to the federal government, and DOJ's Complaint and letter correspondence to the Secretary cite no case law or other authority for the radical proposition that DOJ's authority to enforce HAVA's "uniform and nondiscriminatory" requirements entitles it to unfettered access to state voter registration lists upon

---

[3] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Voter Reference Found., LLC v. Torrez*, --- F.4th ---, No. 24-2133, 2025 WL 3280300, at *9 n.14 (10th Cir. Nov. 25, 2025); *PILF v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).

[4] The United States filed eight cases in September, alleging claims under the NVRA, HAVA, and the Civil Rights Act of 1960. *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025), Dkt. No. 1; Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025), Dkt. No. 1; Compl., *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025), Dkt. No. 1; Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025), Dkt. No. 1. The five subsequent cases, filed alongside this case on December 2, allege only a claim under the Civil Rights Act of 1960. *See* Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025), Dkt. No. 1; Compl., *United States v. Amore*, No. 25-cv-00629 (D.R.I. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. Copeland Hanzas*, No. 25-cv-903 (D. Vt. Dec. 2, 2025), Dkt. No. 1; Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025), Dkt. No. 1.

demand. 52 U.S.C. § 21111. Nor does the NVRA provide a basis for DOJ's unprecedented and sweeping demand.

## IV. Sensitive personal information of the Alliance's members is placed in jeopardy by DOJ's demands.

The New Mexico Alliance for Retired Americans is 501(c)(4) nonprofit, social welfare organization and the statewide New Mexico affiliate of the national Alliance for Retired Americans. Decl. of Virgil Thompson ("Thompson Decl.") ¶ 4. It represents approximately 22,000 members across the state of New Mexico, comprising primarily of retirees from public- and private-sector unions, who are politically active and engaged. *Id.* ¶ 5. The Alliance is dedicated to ensuring social and economic justice, as well as full civil rights, for all retirees in New Mexico. *Id.* ¶ 6. Naturally, encouraging political participation is central to its mission. *Id.* ¶ 7.

The Alliance has concerns about DOJ's intended use of its members' sensitive personal voter information. *Id.* ¶¶ 8–9. These concerns are especially acute given the threat that the voter registration process will be weaponized against the Alliance's members by the current presidential administration, *id.* ¶ 9, which has repeatedly disregarded privacy protections over sensitive personal data.[5] The Alliance is further concerned about the substantial intrusion of its members' and members' privacy, which is threatened by the DOJ's attempt to obtain New Mexico's complete and unredacted voter registration lists. *Id.* ¶ 11. Many of the Alliance's members, for example, are concerned about the risks of social security fraud, identify theft, and other types of fraud frequently

---

[5] For example, public reports have indicated that the Department of Government Efficiency (DOGE) placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://www.nytimes.com/2025/08/26/us/politics/doge-social-security-data.html. Recently, the National Archives allegedly released the military records of a New Jersey gubernatorial candidate in violation of the Privacy Act, with the apparent aim of seeking to help her opponent. *See* Caroline Vakil, *Sherrill campaign slams release of military records to opponent's ally*, The Hill (Sept. 25, 2025), https://perma.cc/8WZB-994P.

targeted at older Americans. *Id.* ¶ 10. Consequently, disclosure of New Mexico's voter registration list to the DOJ will deter the Alliance's members from engaging in the electoral process and discourage them from registering to vote out of fear that their personal information will be mishandled, or worse, weaponized. *Id.* ¶ 12. This deterrence will harm the Alliance's civic engagement work, by diminishing the effectiveness of those efforts, and thereby impair the organization's mission.

## LEGAL STANDARD

A movant "seeking to intervene as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties." *Kane Cnty., Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (citing Fed. R. Civ. P. 24(a)(2) and *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)). Courts in the Tenth Circuit follow a "liberal line in allowing intervention" under Rule 24(a). *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (quoting *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001)). Courts also have discretion to grant permissive intervention if the movant has "a claim or defense that shares with the main action a common question of law or fact," if doing so will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

## ARGUMENT

**I. The Alliance is entitled to intervene as of right under Rule 24(a)(2).**

**A. This Motion is timely.**

The Alliance's motion—filed a mere ten days after DOJ brought suit and before any case schedule has been set—is plainly timely. *See Kane County*, 928 F.3d at 890–91 (motion timely where intervenors moved "three months" after learning of potential impact on interests); *see also Zinke*, 877 F.3d at 1164–65 (motion timely where intervenors moved "just over two months after"

9

learning of lawsuit that could potentially affect interests). In fact, the Secretary has not even entered an appearance; because this case is at its earliest stage, there is no risk of prejudice to the existing parties. *See Kane County*, 928 F.3d at 891.

> **B.     As other courts have recognized in parallel litigation, the Alliance has an interest in protecting its members' sensitive and personal information from improper disclosure to DOJ.**

The Alliance also satisfies Rule 24(a)(2)'s interest requirements because it has interests that may be "impair[ed] as a practical matter." *Utah Ass'n of Cntys.*, 255 F.3d at 1253. To meet this standard, the Alliance must show only that the impairment is "possible" and the "burden is minimal." *Id.* Here, the Alliance represents thousands of registered New Mexico voters who oppose the disclosure of their sensitive personal information to the federal government. *See supra* Background Part IV. The risk of disclosure, and of accompanying adverse consequences, in this case is enough to satisfy Rule 24(a). *See WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1197–98 (10th Cir. 2010) (noting that intervenor-organization asserted its members' interests in determining that it had a protectable interest); *Forest Guardians v. U.S. Dep't of Interior*, No. CIV-02-1003 JB/WDS, 2004 WL 3426413, at *7–8 (D.N.M. Jan. 12, 2004) (concluding that intervenor-organization had protectable interest in case implicating members' privacy interests). And multiple federal courts have held as much in the DOJ's parallel cases, granting intervention as of right in Michigan—notably, to the Michigan Alliance for Retired Americans—and in Oregon. *See* Ex. B (Op. at 3–10, *Benson*, No. 25-cv-01148); Ex. C (Op. & Order at 2–3, *United States v. Oregon*, No. 25-cv-01666).

Importantly, the voter registration data of the Alliance's members is protected from disclosure under New Mexico law. *See* N.M. Stat. § 1-4-5.5(B). And the Alliance and its members are credibly concerned about the consequences of the disclosure of their sensitive information to DOJ, both because of the potential risk of data breaches that would expose them to identity theft

scams, and because of the potential for retaliation by the federal government against voters who engage in political advocacy work disfavored by the current administration. Thompson Decl. ¶¶ 9–12. Furthermore, these privacy interests implicate the right to vote, and the Alliance has a substantial interest in preserving its members' "right to vote privately," *Powell v. Benson*, No. 20-CV-11023, 2020 WL 5229104, at *5 (E.D. Mich. Sept. 2, 2020), and in ensuring that right is not unlawfully burdened, *see, e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding voting-right interest was "sufficient interest").

The Alliance's mission-critical voter engagement and turnout work will also be harmed by the disclosure of its members' information to DOJ. Its members are predominantly senior citizens, who are frequently targets of identity theft scams, and many members are also concerned about the prospect of political retaliation against disfavored political advocacy. *See* Thompson Decl. ¶ 9. If members know their sensitive identifying information will be disclosed to a federal government that they do not trust to handle it with care, many may opt out of voter registration and political engagement altogether, thus undermining the Alliance's core mission. *Id.* ¶ 12.

Courts have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their members' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that party

committees had "legally protectable interest" because they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process").

Ultimately, however, the Alliance and its members "have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm." Ex. B (Op. at 6, *Benson*, No. 25-cv-01148). Because once that information is disclosed, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure); *see also Kalbers v. DOJ*, 22 F.4th 816, 828 (9th Cir. 2021) (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents); *Forest Guardians*, 2004 WL 3426413, at *7–8. Thus, disclosure of the confidential information of the Alliance's members as a result of this litigation "easily satisfies the minimal burden of showing the potential for impairment of [their] interests." *Barnes*, 945 F.3d at 1124; *see also* Ex. B (Op. at 4, *Benson*, No. 25-cv-01148); Ex. C (Op. & Order at 2–3, *United States v. Oregon*, No. 25-cv-01666).

### C. As other courts have recognized in parallel litigation, the existing parties do not adequately represent the Alliance.

Lastly, the Alliance readily meets the burden of establishing inadequate representation—which, here, is a "minimal one" requiring only that the Alliance demonstrate that "representation *may* be inadequate." *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) (citation modified); *accord Trbovich*, 404 U.S. at 538 n.10. "[W]here the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, 'this presumption [can be] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest.'" *Kane County*, 928 F.3d at 892 (quoting *Utah Ass'n of Cntys.*, 255 F.3d at 1255). The Tenth Circuit has also found

12

inadequate representation where "the government has multiple objectives and could well decide to embrace some" goals over others in the course of litigation. *Id.* at 892–93 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 997 (10th Cir. 2009)). That is true here for both Plaintiff and Defendant. And, again, multiple federal courts have held as much in granting intervention of right in the DOJ's parallel cases in Michigan and Oregon. *See* Ex. B (Op. at 10–12, *Benson*, No. 25-cv-01148); Ex. C (Op. & Order at 4–5, *United States v. Oregon*, No. 25-cv-01666).

DOJ plainly does not represent the Alliance's interests—it seeks to forcibly compel production of sensitive, personal voter information against the wishes of the Alliance's members and in violation of privacy laws. And while New Mexico's Secretary of State, to date, has resisted that demand, she too does not adequately represent the Alliance's distinct private interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant "is seeking to protect not only the interest of the public but also the private interest of the petitioners in intervention, a task which is on its face impossible." *Utah Ass'n of Cntys.*, 255 F.3d at 1255. Simply put, "the government's representation of the public interest" may not be "identical to the individual parochial interest of a particular group" just because "both entities occupy the same posture in the litigation." *WildEarth Guardians*, 573 F.3d at 996; *see also* Ex. B (Op. at 11, *Benson*, No. 25-cv-01148) (recognizing "Michigan has other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal government—that may ultimately

induce it to stop defending the lawsuit or give up the information at issue"); Ex. C (Op. & Order at 4–5, *United States v. Oregon*, No. 25-cv-01666) (similar).

Moreover, the risk that the Secretary may seek a compromise settlement in this case weighs strongly in favor of granting intervention as well. Representation is clearly inadequate where existing parties may seek to "negotiate[] a settlement that would [be] contrary to the interest of the prospective intervenors." *Fiandaca v. Cunningham*, 827 F.2d 825, 833 (1st Cir. 1987); *see also Kane County*, 928 F.3d at 895–96 (recognizing "administration of . . . litigation resources" and "inclin[ation] to settle" may further establish inadequate representation); *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011) (explaining that a possible "conflict of interest . . . when it comes to settlement possibilities" favors intervention); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998) (similar). There may be good reason for the Secretary to seek a settlement with the federal government, because she must balance her personal views with her public duties, including under federal and state laws governing voter registration. *See id.* at 972; *cf. Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (recognizing competing objectives of the NVRA). But that only confirms the Secretary cannot adequately represent the Alliance's interests. The Supreme Court itself recently emphasized this point, noting that public officials must "bear in mind broader public-policy implications," whereas private litigants—like the Alliance and its members—seek to vindicate their own rights, "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). Because state officials do not share "identical" interests with private parties, the Alliance bears only a "minimal" burden in showing inadequate representation. *Id.* (citation omitted). And courts in general are typically "liberal in finding" this requirement satisfied, recognizing that, ultimately, "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller,

14

Federal Practice & Procedure § 1909 (3d ed. 2024). Here, the Alliance is not constrained by competing public duties, but is instead vehemently opposed to the exposure of its members' personal and private information, and should be allowed to intervene in order to ensure that its interests are adequately represented.

**II.     Alternatively, the Alliance should be granted permissive intervention.**

Even if the Alliance did not satisfy the requirements for intervention as of right—which it does, *see supra* Part I—this Court would be justified in granting permissive intervention in any event. *See Forest Guardians*, 2004 WL 3426413, at *11–12. Rule 24(b) is readily satisfied here: the Alliance asserts a "claim or defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b); *see* Ex. A (Proposed Answer). And the Alliance agrees to abide by any schedule entered by the Court or agreed to by the existing parties.

Courts regularly grant permissive intervention to ensure actual voters (or organizations representing them) have a say in litigation concerning their rights.[6] That rationale applies with particular force here. The Alliance and its members indisputably have "confidentiality and/or privacy interest[s]" at stake in this case, which alone "warrants an opportunity to permissively intervene to protect that interest." *In re Exch. Union Co.*, No. 24-MC-91645-ADB, 2025 WL 894652, at *3 (D. Mass. Mar. 24, 2025). Furthermore, the Alliance represents a collection of New Mexico voters. Thus, its presence will add a unique—and critically important—voter perspective that "will contribute to this case, perhaps significantly." *Romero v. Bd. of Cnty. Commissioners for the Cnty. of Curry*, 313 F.R.D. 133, 147 (D.N.M. 2016); *see also id.* at 140 ("allowing an

---

[6] *See, e.g.*, *RNC v. Aguilar*, No. 2:24-CV-00518-CDS-MDC, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024); *Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374, 2022 WL 4448320, at *2 (D. Ariz. Sep. 23, 2022); *PILF v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020).

15

intervenor with a contingent interest to intervene will usually only strengthen the litigation, making the parties' presentation of the issues more sharply focused"). These considerations, in addition to the clear satisfaction of Rule 24(b), strongly weigh in favor of permissive intervention. *See also* Ex. D (Minutes of Motion Hearing, *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 24, 2025), Dkt. No. 70) (granting permissive intervention by oral order to state affiliates of the NAACP and League of Women Voters in DOJ's parallel lawsuit in California).

## CONCLUSION

For all of the foregoing reasons, the New Mexico Alliance for Retired Americans respectfully requests that the Court grant it intervention as of right—or in the alternative permissive intervention—to allow it to protect the significant interests that the Alliance and its members have at stake in this case.

| | |
|---|---|
| Respectfully submitted,<br>*/s/ Justin R. Kaufman* | Dated: December 12, 2025 |
| | |
| Justin R. Kaufman<br>Caren I. Friedman<br>Molly H. Samsell<br>**DURHAM, PITTARD & SPALDING, LLP**<br>125 Lincoln Avenue, Suite 402<br>Santa Fe, NM 87501<br>Telephone: (888) 998-6688<br>jkaufman@dpslawgroup.com<br>cfriedman@dpslawgroup.com<br>msamsell@dpslawgroup.com | Uzoma N. Nkwonta*<br>Joshua Abbuhl*<br>Omeed Alerasool*<br>**ELIAS LAW GROUP LLP**<br>250 Massachusetts Ave NW, Suite 400<br>Washington, DC 20001<br>Telephone: (202) 968-4490<br>unkwonta@elias.law<br>jabbuhl@elias.law<br>oalerasool@elias.law<br><br>Walker McKusick*<br>**ELIAS LAW GROUP LLP**<br>1700 Seventh Avenue, Suite 2100<br>Seattle, WA 98101<br>Telephone: (206) 656-0177<br>wmckusick@elias.law<br><br>*\* Pro Hac Vice Applications Forthcoming*<br><br>*Counsel for Proposed Intervenor* |

## CERTIFICATE OF CONFERRAL

The undersigned hereby certifies, pursuant to Local Rule 7.1(a), that counsel for the New Mexico Alliance for Retired Americans sought the concurrence of Plaintiff. Counsel for Plaintiff informed counsel for Proposed Intervenor that Plaintiff is unopposed to this Motion. No counsel for Defendant has entered an appearance in this matter. On December 11, counsel for Proposed Intervenor emailed a lawyer within Secretary Oliver's office to inquire about their position on this Motion, but as of the time of this filing counsel for Proposed Intervenor had not received a response.

*/s/ Justin R. Kaufman*
Justin R. Kaufman

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, pursuant to Local Rule 7.1(b), that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. All other counsel will be served in accordance with Federal Rule of Civil Procedure 5(a).

*/s/ Justin R. Kaufman*
Justin R. Kaufman