## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

MAGGIE TOULOUSE OLIVER, in her
official capacity as Secretary of State of
New Mexico,

                Defendant.

No. 1:25-cv-01193-LF-JFR

## UNOPPOSED MOTION OF COMMON CAUSE, CLAUDIA MEDINA, AND JUSTIN ALLEN TO INTERVENE AS DEFENDANTS

Common Cause, Claudia Medina, and Justin Allen (collectively, "Proposed Intervenors") respectfully move to intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b), and set forth the legal argument necessary to support their motion below. *See* L.R. Civ. P. 7.1(a). Proposed Intervenors append as Exhibit 1 to this motion a proposed motion to dismiss by way of a response to the United States' Complaint, while reserving the right to supplement their response to the Complaint within the time allowed for response by Rule 12 after intervention is granted. *See* Fed. R. Civ. P. 24(c).

## INTRODUCTION

The United States seeks to force New Mexico to turn over voters' sensitive personal information and data. It has been widely reported that the United States will use this data to build an unauthorized national voter database and to target voters for potential challenges and disenfranchisement. These efforts are being driven by self-styled "election-integrity" advocates who have previously used ill-conceived database-matching and database-analysis methods to mass-challenge voters and deny the results of elections, and who now serve in or advise the present Administration.

Proposed Intervenors are Common Cause, a nonpartisan, good-government organization dedicated to grassroots voter engagement in New Mexico, whose members and whose own work are at risk by the relief sought by the United States in this case, as well as individual voters who are directly threatened. Proposed Intervenors have an extremely strong interest in preventing the United States' requests for unfettered and total access to the most sensitive aspects of New Mexico's non-public voter data from being used to harass and potentially disenfranchise voters. Common Cause works to expand access to the ballot and civic engagement, as well as to protect civil liberties, and thus has an interest in protecting the voting and privacy rights of its members and all New Mexico voters. Its grassroots work engaging voters is threatened by the United States' request for sensitive, non-public voter data, which risks discouraging New Mexicans from registering to vote. And the privacy and voting-rights interests of Common Cause's members and of the individual voter intervenors are also directly at stake here. Proposed Intervenors include members of some of those groups who are under particular threat from the United States' requested form of relief, such as voters who are naturalized citizens, voters who have a felony conviction, voters who have previously been registered to vote in another state, voters who registered to vote by mail, and voters whose personal information is especially sensitive and who thus have heightened privacy interests.

Proposed Intervenors are entitled to intervene as of right under Rule 24 because this motion is timely, because both their rights and interests are at stake, and because those rights and interests are not adequately represented by the existing Defendant, who unlike Proposed Intervenors, is a state actor, subject to broader public policy and political considerations external to the legal issues presented in this case. Their unique interests in this case, their unique perspective, and their unique motivation to interrogate the purpose of the United States' sweeping request for non-public New Mexico voter data will ensure the full development of the record here and

aid the Court in its resolution of this case. Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

## BACKGROUND

### A. DOJ's Efforts to Obtain Private Voter Information

Beginning in May 2025, Plaintiff United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry*, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (updated Dec. 12, 2025), https://perma.cc/MC3M-VS33.

On September 8, 2025, DOJ sent a letter to the New Mexico Secretary of State ("the Secretary") demanding an electronic copy of New Mexico's entire statewide voter registration database. Compl. ¶¶ 18–20; Letter of Harmeet K. Dhillon to Maggie Toulouse Oliver (Sept. 8, 2025), ECF No. 2-3 ("DOJ Ltr.").[1] DOJ specifically requested private voter information, including registrants' full name, date of birth, address, driver's license number, and the last four digits of the registrant's social security number ("SSN4"). Compl. ¶ 20; DOJ Ltr. 2. DOJ requested that this full and unredacted copy of New Mexico's state voter registration list be provided within fourteen days. DOJ Ltr. 3–4.

Secretary Toulouse Oliver responded on September 22, 2025. Compl. ¶ 25; Letter of Maggie Toulouse Oliver to Harmeet K. Dhillon (Sept. 22, 2025), ECF No. 2-4 ("NM SOS Ltr."). Her letter offered to provide DOJ access to the publicly available, redacted voter registration list, but declined to provide a version containing uniquely

---

[1] All page cites to documents filed by the United States in this case use the ECF-generated page numbers, located at the top right of each document.

sensitive personally identifiable information absent further information and assurances from DOJ. NM SOS Ltr. 2.

The United States responded by filing this lawsuit, which is one of at least twenty-two that DOJ has initiated recently against states and election officials, seeking to compel them to hand over this sensitive voter data.[2]

Notably, according to public reporting, DOJ's requests for private, sensitive voter data appears to be in connection with novel efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching in order to scrutinize state voter rolls. According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating in these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ and DHS. *Id.*; *see also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept*

---

[2] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/HHJ7-JWQQ; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/TQ5T-FB2A; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC; *see also* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry*, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (updated Dec. 12, 2025), https://perma.cc/MC3M-VS33.

*Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09. One recent article extensively quoted a lawyer who recently departed from DOJ's Civil Rights Division, describing DOJ's aims in this case and others like it:

> "We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division."

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAG. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-ascent-staff-attorneys.html.

According to additional public reporting, these efforts are being conducted with the involvement of self-proclaimed "election integrity" advocates within and outside the government who have previously sought to disenfranchise voters and overturn elections. Those advocates include Heather Honey, who sought to overturn the result of the 2020 presidential election in multiple states and now serves as DHS's "deputy assistant secretary for election integrity."[3] Also involved is Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network," who

---

[3] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://www.propublica.org/article/heather-honey-dhs-election-security.

has promoted the use of artificial intelligence to challenge registered voters.[4] These actors, including some associated with Ms. Honey, have previously sought to compel states to engage in aggressive purges of registered voters, and have abused voter data to mass challenge and attempt to disenfranchise voters in other states. *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (determining that complaint brought by group affiliated with current DHS official Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to the HAVA, was meritless).[5]

DOJ's actions also indicate that it may focus on or target specific groups of voters in its use of the requested data. In letters to other states requesting the same private voter data, DOJ also requested information about how election officials,

---

[4] *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

[5] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); *see also* Jeremy Roebuck & Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).

among other things, process applications to vote by mail; identify and remove duplicate registrations; and verify that registered voters are not ineligible to vote, such as due to a felony conviction or lack of citizenship.[6] The Administration has also confirmed that it was sharing the requested information with the DHS, which will use the data to "scrub aliens from voter rolls." *See* Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security.

## B. Proposed Intervenors

Proposed Intervenor Common Cause is a nonpartisan organization committed to, *inter alia*, ensuring that all eligible New Mexico voters register to vote and exercise their right of suffrage at each election. *See* Ex. 2, Decl. of Common Cause New Mexico State Director Molly Swank ("Swank Decl.") ¶¶ 3, 5–7, 9–10. Common Cause expends significant resources conducting on-the-ground voter engagement and assistance efforts, including registering qualified individuals to vote, helping voters navigate the vote-by-mail process, encouraging voters to participate, and assisting voters when they experience problems in trying to vote. *See* Swank Decl. ¶¶ 9–10, 13. The success of these efforts, especially with respect to voter registration, depends on voters' trust that, when they provide personal information to the State as part of the registration

---

[6] *See, e.g.*, Br. in Supp. of Mot. to Intervene as Defs., Exhibit No. 1, Letter from Maureen Riordan to Sec'y of State Al Schmidt (June 23, 2025), *United States v. Pennsylvania*, No. 25-cv-01481 (W.D. Pa. Oct. 9, 2025), Dkt. No. 37-1 (Pennsylvania); Mot. for Leave to File Mot. to Dismiss, Exhibit A, Letter from Michael E. Gates to Sec'y of State Jocelyn Benson (July 21, 2025), *United States v. Benson*, No. 25-cv-01148 (W.D. Mich. Nov. 25, 2025), Dkt. No. 34-3 (Michigan); Decl. of Thomas H. Castelli in Supp. of State Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Tobias Read (July 16, 2025), *United States v. Oregon*, No. 25-cv-01666 (D. Or. Nov. 17, 2025), Dkt. No. 33-1 (Oregon); Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Exhibit No. 1, Letter from Michael E. Gates to Sec'y of State Shirley Weber (July 10, 2025), *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Nov. 7, 2025), Dkt. No. 37-2 (California).

process, that information will not be abused, their privacy will be respected, and their right to participate will be honored. *See* Swank Decl. ¶¶ 10–12.

Common Cause also has more than nine thousand members and supporters in New Mexico. *See* Swank Decl. ¶ 4. Those members include New Mexico voters whose personal data will be provided to the federal government if DOJ prevails in this lawsuit. *See* Swank Decl. ¶ 6. Common Cause's members in New Mexico and the individual voters who seek to intervene in this case include voters who are at particular risk of being caught up in DOJ's efforts to remove voters from voter rolls, whether because they have a supposed "duplicate" record in the system, registered to vote by mail, have a felony conviction, and/or are naturalized citizens. *See* Swank Decl. ¶¶ 4, 6, 11–12; Ex. 3, Decl. of Claudia Medina ("Medina Decl.") ¶¶ 3–4 (New Mexico voter who is a naturalized citizen); Ex. 4, Decl. of Justin Allen ("Allen Decl.") ¶¶ 3–6 (New Mexico voter whose voting rights have been restored following felony conviction). They also may include voters whose identifying information is particularly important to keep private, for example due to their particular status as victims of domestic violence. *See* Swank Decl. ¶¶ 8, 11; *see also* N.M. Stat. §§ 40-13B-1 *et seq.* (creating substitute-address program to provide process for victims of domestic violence to protect the confidentiality of their personal information in public records); N.M. Stat. §§ 1-6C-1 *et seq.* (enabling participants in the substitute-address program to participate in elections without compromising their personal information).

Proposed Intervenor Claudia Medina is a registered New Mexico voter who has been a resident of the state for more than three decades. Medina Decl. ¶¶ 2–3. She was born in Colombia, moved to the United States to attend graduate school, and became a naturalized U.S. citizen in 1995. *Id.* The same day she was naturalized, she enthusiastically registered to vote, and she has voted regularly in local, state, and federal elections ever since. *Id.* ¶¶ 4, 7. Voting is "extremely important" to Ms.

Medina. *Id.* ¶ 5. But she is concerned about how DOJ might use her sensitive voter data, particularly in light of widely reported recent examples of the federal government's provision of data to unvetted members of the Department of Government Efficiency ("DOGE") without adequate guardrails or privacy protections. *Id.* ¶ 9. She fears that the federal government's efforts to gain voters' sensitive information will make eligible voters—especially naturalized citizens like herself— "less likely to register to vote or even just to vote." *Id.* ¶¶ 5, 8–9.

Proposed Intervenor Justin Allen is a registered New Mexico voter and lifelong New Mexico resident. Allen Decl. ¶ 2. As a young gay man, Mr. Allen's family did not accept his homosexuality, which led him to engage in "self-defeating behaviors such as substance abuse," resulting in criminal felony convictions and his incarceration. *Id.* ¶ 3. While incarcerated, he came to understand the importance of using his voice and exercising his rights, and after his release, he registered to vote when he became eligible to have his rights restored. *Id.* ¶¶ 4–6. To Mr. Allen, "the ability to vote symbolizes being a full citizen with a voice." *Id.* ¶ 9. He was a leading advocate for New Mexico's Voting Rights Act, including the provision focusing on restoration of formerly incarcerated people's right to vote. *Id.* ¶ 7. But he does not feel safe "knowing that there is a chance that the Trump Administration will have my data and the data of every other registered New Mexican voter," and he believes that formerly incarcerated people, "despite their voting rights having been restored, will either not register to vote or not vote if the Trump Administration has access to their voter registration information." *Id.* ¶ 10.

## ARGUMENT

## I. MOVANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

In the Tenth Circuit, a party is entitled to intervene as of right under Fed. R. Civ. P. 24(a) upon establishing:

(1) the application is timely;

(2) the applicant[s] claim[ ] an interest relating to the property or transaction which is the subject of the action;

(3) the applicant[s'] interest may as a practical matter be impaired or impeded; and

(4) the applicant[s'] interest is [not] adequately represented by existing parties.

*United States v. Albert Inv. Co.*, 585 F.3d 1386, 1391 (10th Cir. 2009) (quotation marks and citation omitted). The Tenth Circuit has historically taken a "liberal" approach to allowing intervention, *see, e.g.*, *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (quotation marks and citation omitted), and "the requirements for intervention may be relaxed in cases raising significant public interests." *Kane Cnty. v. United States*, 928 F.3d 877, 890 (10th Cir. 2019) ("*Kane Cnty. II*") (citations omitted). As the Tenth Circuit has summarized, "[f]ederal courts should allow intervention where no one would be hurt and greater justice could be attained." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (cleaned up). "The central concern in deciding whether intervention is proper is the practical effect of the litigation on the applicant for intervention." *Barnes v. Sec. Life of Denv. Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (citation omitted). Because Proposed Intervenors easily meet Rule 24(a)'s requirements, the Court should grant their intervention as a matter of right.

## A. The Motion to Intervene Is Timely.

Timeliness is determined "in light of all of the circumstances." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (quotation marks and citation omitted). Three non-exhaustive factors are "particularly important: (1) the length of time since the movants knew of their interests in the case; (2) prejudice to the existing parties; and (3) prejudice to the movants." *Id.* (cleaned up). *See also Clinton*, 255 F.3d at 1251 (considering "the relatively early stage of the

litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and the motion to intervene").

This motion is indisputably timely. The United States filed this suit on December 2, 2025, and, upon receiving notice of the suit, Proposed Intervenors promptly prepared this motion. *Cf. W. Energy All. v. Zinke*, 877 F.3d 1157, 1164–65 (10th Cir. 2017) (timeliness satisfied when "conservation groups moved to intervene just over two months" after the complaint was filed, resulting in a "lack of prejudice" to plaintiff); *Clinton*, 255 F.3d at 1251 (timelines satisfied even when intervenor moved to intervene three years after the start of the litigation, considering "the relatively early stage of the litigation and the lack of prejudice to plaintiffs"). Defendant Secretary Toulouse Oliver has not yet filed an answer or a motion to dismiss (and indeed, as of the date of this motion, has not yet been served), meaning that this litigation is at its earliest stages and the existing partes would not be prejudiced by intervention. *See also Clinton*, 255 F.3d at 1251 (considering "the relatively early stage of the litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and the motion to intervene"). In contrast, Proposed Intervenors will be substantially prejudiced absent intervention, given the serious threats that the United States' lawsuit poses to Proposed Intervenors' fundamental rights.

### B. Proposed Intervenors Have Concrete Interests in the Underlying Litigation.

Proposed Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"— interest in the litigation. *E.g.*, *Donaldson v. United States*, 400 U.S. 517, 531 (1971). A protectable interest is one that "would be 'impeded by the disposition of th[e] action.'" *San Juan Cnty. v. United States*, 503 F.3d 1163, 1203 (10th Cir. 2007) (en banc), *abrogated on other grounds by Hollingsworth v. Perry*, 570 U.S. 693 (2013) (*quoting Allard v. Frizzell*, 536 F.2d 1332, 1334 (10th Cir. 1976) (per curiam)). Here,

Proposed Intervenors have multiple, independently sufficient interests that support intervention as of right.

*First*, Proposed Intervenors have a right to privacy in the sensitive voter data the United States seeks. The DOJ Letter demanded that Secretary Toulouse Oliver turn over voters' full name, date of birth, residential address, and driver's license number or SSN4. DOJ Ltr. 2. This type of sensitive personal information is protected from disclosure by New Mexico law. *See* N.M. Stat. § 1-4-5.5(B) (2015); N.M. Stat. § 1-4-50 (2011); N.M. Stat § 66-2-7.1 (2025); N.M. Stat. §§ 1-6C-1, 1-6C-2, 1-6C-4 (2023); N.M. Stat. §§ 40-13B-1, 40-13B-2, 40-13B-8 (2024); N.M. Stat § 1-1-27.1 (2023). It is also protected by federal law, which prohibits the creation of a national voter database of the type that the United States is reportedly seeking to assemble with the data it seeks. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). These privacy interests are significant and inure to each of the individual voter Proposed Intervenors as well as to Common Cause's members who are New Mexico voters. Swank Decl. ¶¶ 10–13; Medina Decl. ¶¶ 8–9; Allen Decl. ¶ 10. Other voters have additional privacy interests in preventing the disclosure of their personal information because of their status as crime victims or some other sensitive designation. *See, e.g.*, Swank Decl. ¶¶ 8, 11.

*Second*, and based on DOJ's similar data requests to other States, the data DOJ seeks is likely to be used to challenge the voter registration of certain New Mexicans, including voters with felony convictions; voters who have moved within New Mexico or left the state and then returned to New Mexico (but might be deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system); voters who are naturalized citizens (who may have indicated they were not a citizen on a government form prior to naturalization); and voters who vote by mail. *See supra* 6–

7 & n.6. A number of the individual voter Proposed Intervenors as well as numerous Common Cause members fall within those categories. *E.g.*, Swank Decl. ¶¶ 11–12. For example, Proposed Intervenor Claudia Medina is concerned that the federal government will misuse data about naturalized citizens like herself to curtail their rights. Medina Decl. ¶¶ 8–9. *Cf. Selcuk v. Pate*, No. 4:24-cv-00390-SHL-HCA, 2024 WL 5054961, at *8–9 (S.D. Iowa Nov. 3, 2024) (noting a state purge program, based on database-matching, which purportedly targeted alleged noncitizens that flagged 2,176 voters, of whom at least 88% were citizens eligible to vote, many of them naturalized citizens). Proposed Intervenor Justin Allen likewise fears that formerly incarcerated people like himself are more at risk of being targeted by this Administration. Allen Decl. ¶ 10. Proposed Intervenors, especially those most likely to be targeted using the information DOJ seeks in this lawsuit, have a concrete interest in not being disenfranchised.

*Third*, Common Cause as an organization has a protectable interest at stake because its core mission as an organization will be harmed if the relief sought is granted. Common Cause's voter registration activities will be harmed because voters will be chilled from registering and participating if they believe their sensitive personal data will be provided to the federal government (and ingested into an unauthorized and illegal national database). *See, e.g.*, Swank Decl. ¶¶ 9–14. Moreover, Common Cause will be further harmed if and when the sensitive voter data sought by the United States is then used to engage in mass challenges of registered voters by "election integrity" activists wielding the power of the federal government. Such mass challenges will force Common Cause to redirect resources to educating the public about threats to voting rights and mitigating the disenfranchisement of existing voters, and away from their core activities of registering voters and engaging new voters in the democratic process. *Id.* ¶ 12. Courts routinely find that nonpartisan public interest organizations should be granted

intervention in election-related cases, demonstrating the significantly protectable interests such organizations have in safeguarding the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111–12 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874, at *1–2 (D. Kan. Dec. 12, 2013); *LaRoque v. Holder*, 755 F. Supp. 2d 156, 162 n.3 (D.D.C. 2010), *rev'd in part on unrelated grounds*, 650 F.3d 777 (D.C. Cir. 2011). This case is no exception. Indeed, in a similar case brought by the Department of Justice challenging California's refusal to turn over sensitive voter information, such organizations were granted intervention. *See* Order, *United States v. Weber*, No. 25-cv-09149, (C.D. Cal. Nov. 19, 2025), Dkt. No. 70; *see also* Op. & Order, *United States v. Oregon*, No. 25-cv-01666, (D. Or. Dec. 5, 2025), Dkt. No. 52.

### C. Disposition of this Case May Impair the Interests of Proposed Intervenors.

Not only does this lawsuit relate to Proposed Intervenors' interests, but those interests would be impaired or impeded if the United States succeeds in obtaining its requested remedies. This third element "presents a minimal burden," requiring movants to show only that "it is 'possible' that the interests they identify will be impaired." *W. Energy All.*, 877 F.3d at 1167 (quoting *WildEarth Guardians v. Nat'l Park Serv.,* 604 F.3d 1192, 1199 (10th Cir. 2010)); *Clinton*, 255 F.3d at 1253. "[W]here a proposed intervenor's interest will be prejudiced if it does not participate in the main action, the mere availability of alternative forums is not sufficient to justify denial of a motion to intervene." *Clinton*, 255 F.3d at 1254 (citation omitted).

Here, the threat of impairment is significant. The United States proposes to summarily dispose of voters' interests by obtaining an immediate order compelling the disclosure of private voter data, bypassing the normal civil litigation process and

any discovery into "the basis and the purpose" of their request, 52 U.S.C. § 20703. *See* U.S. Mot. to Compel Prod. of Records, ECF No. 2. This attempt—at the very beginning of the case—to secure the irrevocable disclosure of private voter data to actors who may misuse it in any number of ways, including by mass-challenging or otherwise attacking New Mexicans' right to vote, militates strongly in favor of allowing Proposed Intervenors into the case to represent voters' interests now.

Finally, the Tenth Circuit has recognized that "the *stare decisis* effect of the district court's judgment is sufficient impairment for intervention under Rule 24(a)(2)." *Clinton*, 255 F.3d at 1254. For example, in *Clinton*, a judgment in favor of plaintiffs challenging the designation of a national monument would have "impair[ed] the intervenor[] [environmental groups'] interests in promoting their environmental protection goals by seeking presidential designation of other national monuments in the future." *Id.* Common Cause maintains an active and ongoing interest in protecting the privacy of voters' sensitive personal data. Accordingly, a judgment in favor of the United States—endorsing their legal theories and granting their requested relief—would have a *stare decisis* effect that could harm Common Cause's ability to oppose litigation or other efforts in the future that undermine voters' privacy interests.

### D. Secretary Toulouse Oliver's Interests Are Different from Those of Proposed Intervenors.

Proposed Intervenors' burden to show that "existing parties may not adequately represent its interest" is "minimal, and it is enough to show that the representation may be inadequate." *Kane Cnty. II*, 928 F.3d at 892 (cleaned up). Proposed Intervenors meet this minimal burden here.

As the Tenth Circuit has emphasized, "the possibility of divergence of interest need not be great, and this showing is easily made when the representative party is the government." *Id.* at 894 (cleaned up). "[T]he government's representation of the

public interest generally cannot be assumed to be identical to the individual parochial interest of a particular member of the public merely because both entities occupy the same posture in the litigation. In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor. . . . This potential conflict exists even when the government is called upon to defend against a claim which the would-be intervenor also wishes to contest." *Clinton*, 255 F.3d at 1255–56.[7]

This litigation fits these circumstances precisely. As a government official, Secretary Toulouse Oliver has a generalized interest in carrying out her office's legal obligations under federal and state laws, and in minimizing burdens on governmental employees and resources. She also must consider broader public policy concerns, in particular the need to maintain working relationships with federal officials. In contrast, Proposed Intervenors bring a distinct, particular interest to this litigation, making the existing representation inadequate: the perspective of civil rights groups whose sole commitment is to ensuring access to the ballot and individual voters whose own rights are at risk. *T-Mobile Northeast LLC v. Town of Barnstable*, 969 F.3d 33, 40 (1st Cir. 2020). There may be arguments and issues that Defendant Secretary Toulouse Oliver may not raise that are critical to the individual voters or organizations like Common Cause. *See, e.g.*, Allen Decl. ¶ 7. As one example, courts have found a risk that political considerations external to the legal issues presented by a case like this can motivate elections officials to pursue a settlement that could

---

[7] *See also, e.g.*, *Kane Cnty. II*, 928 F.3d at 892–96 (interests of environmental group not adequately represented by United States); *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996–97 (10th Cir. 2009) (interests of coal company not adequately represented by United States); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307–09 (2022) (interests of political committees not adequately represented by governments defending election law); *Kobach*, 2013 WL 6511874, at *4 (voting rights organization could reasonably diverge interests from those of government defendants).

jeopardize the private information of Proposed Intervenors or of their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

These diverging perspectives—between the government's general need to balance various considerations and Proposed Intervenors' personal and particular interest in the privacy of their own data—present a classic scenario supporting intervention. *See, e.g.*, *Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 110–11 (M.D. Pa. 2011) (allowing public interest groups to intervene, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders); *Kobach*, 2013 WL 6511874, at *4 (finding that applicants who had interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of an elections agency).

Proposed Intervenors also bring a different set of perspectives and interests than the other intervenors in this case. Proposed Intervenors here include specific New Mexico voters—Claudia Medina and Justin Allen—who have unique experiences not reflected by the other proposed intervenors, including falling within several categories of particularly vulnerable voters identified in DOJ's requests, such as naturalized citizens, *see* Medina Decl. ¶¶ 3–4, and voters with felony convictions,

*see* Allen Decl. ¶¶ 3–6. These perspectives are essential to this litigation and vindicating the rights of Proposed Intervenors.

Moreover, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they will be used to create an unauthorized national database as has been reported, and whether they are a prelude to mass challenges based on faulty data-matching techniques, are highly relevant and potentially dispositive here. Proposed Intervenors' unique interest in pursuing this highly relevant line of factual inquiry and argument, as a good-government, pro-democracy organization and individual New Mexicans whose own rights are at stake, is further strong grounds to support intervention.

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Should the Court decline to grant intervention as of right, the Court should nevertheless use its broad discretion to grant permissive intervention. *See Kane Cnty. v. United States*, 597 F.3d 1129, 1135 (10th Cir. 2010) ("*Kane Cnty. I*") (citing *City of Stilwell v. Ozarks Rural Elec. Coop.*, 79 F.3d 1038, 1043 (10th Cir. 1996)). Under Rule 24, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). In exercising its discretion to grant permissive intervention, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The court may also consider "whether the would-be intervenor's input adds value to the existing litigation," "whether the petitioner's interests are adequately represented by the existing parties," and "the availability of an adequate remedy in another action."

*Lower Ark. Valley Water Conservancy Dist. v. United States*, 252 F.R.D. 687, 691 (D. Colo. 2008) (citation omitted).

For the reasons discussed *supra*, Proposed Intervenors' motion is timely, there will be no delay or prejudice to the adjudication of the existing parties' rights, and Proposed Intervenors' interests are not adequately represented by any of the existing parties. Moreover, Proposed Intervenors' defense goes directly to the issues already presented in this lawsuit, such as (1) whether federal law permits the United States to force New Mexico to give it the personal information sought; (2) whether federal and state legal protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. Proposed Intervenors' distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendant's arguments and sharpen the issues and the quality of the record, aiding the Court in resolving the issues before it.

Because of this unique perspective, district courts routinely grant permissive intervention to advocacy organizations, even when a government party defends a challenged action. *See, e.g.*, *Republican Nat'l Comm. v. Aguilar*, 2024 WL 3409860, at *1–3 (D. Nev. July 12, 2024) (permitting intervention by voter advocacy group as defendant in litigation seeking purge of voter rolls); *Tirrell v. Edelblut*, No. 24-cv-251, 2025 WL 1939965, at *3–4 (D.N.H. July 15, 2025) (allowing "a membership-based organization that represents cisgender athletes" to intervene as a defendant in a suit challenging state restrictions on transgender athletes); Order at 3, *Judicial Watch, Inc. v. Pennsylvania*, Case No. 20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 (granting permissive intervention in NVRA case to Common Cause and LWV-PA upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (internal quotation marks, citation, and footnote omitted)); *Donald J. Trump for President, Inc.*, 2020 WL 8262029, at *1 (granting

Rule 24(b) motion where voters and organizations "have an interest in the constitutionality of Pennsylvania's voting procedures, which goes to the heart of Plaintiffs' action" (internal quotation marks and citation omitted)). This Court should do the same here.

## CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendants as of right, or in the alternative, via permissive intervention.

Dated: December 18, 2025     Respectfully submitted,

                  /s Maria Martinez Sanchez

Megan C. Keenan*       Maria Martinez Sanchez
American Civil Liberties Union   American Civil Liberties Union
Foundation         Foundation of New Mexico
915 15th Street NW      P.O. Box 566
Washington, DC 20005     Albuquerque, NM 87103
(347) 714-1530        (505) 266-5915
mkeenan@aclu.org      msanchez@aclu-nm.org

Theresa J. Lee*        * application for admission pro hac vice
Sophia Lin Lakin*       forthcoming
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
slakin@aclu.org


Counsel for Intervenor Defendants Common Cause,
Claudia Medina, and Justin Allen

## CERTIFICATE OF CONFERRAL

I hereby certify, pursuant to Local Rule 7.1(a), that counsel for Common Cause, Claudia Medina, and Justin Allen sought the concurrence of Plaintiff United States. Counsel for United States informed counsel for Proposed Intervenors that the United States takes no position on this Motion. As of the filing of this motion, Defendant New Mexico Secretary of State has not yet been served or appeared in the case.

/s Maria Martinez Sanchez
Maria Martinez Sanchez

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record who have consented to electronic service. All other counsel will be served in accordance with Federal Rule of Civil Procedure 5(a).

/s Maria Martinez Sanchez
Maria Martinez Sanchez