## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   *Plaintiff*,

v.

MAGGIE TOULOUSE OLIVER, in her
official capacity as Secretary of State of New
Mexico,

   *Defendant*,

NEW MEXICO ALLIANCE FOR RETIRED
AMERICANS,

   *Intervenor-Defendant*,

and,

COMMON CAUSE, CLAUDIA MEDINA,
and JUSTIN ALLEN,

   *Intervenor-Defendants*.

Civil No. 25-cv-1193-LF-JFR

**INTERVENOR-DEFENDANT
NEW MEXICO ALLIANCE FOR
RETIRED AMERICANS'
MOTION TO DISMISS**

[ORAL ARGUMENT REQUESTED]

   Intervenor-Defendant New Mexico Alliance for Retired Americans (the "Alliance")
hereby moves, through undersigned counsel, to dismiss the Complaint with prejudice pursuant to
Rule 12(b)(6) of the Federal Rules of Civil Procedure and D.N.M.LR-CIV 7.

   In support of this Motion, the Alliance states as follows:

### INTRODUCTION

   The United States Department of Justice ("DOJ") seeks to build a nationwide voter
registration list, a scheme not authorized by Congress and contrary to federal laws assigning states
the responsibility for maintaining voter registration. To accomplish this task, DOJ has demanded
that dozens of states turn over their full, unredacted voter lists, even though state laws often shield

voter information on those lists—most notably driver's license numbers, social security numbers, and dates of birth—from disclosure. New Mexico law is no exception: among other privacy protections, it states that the "secretary of state shall not provide data or lists that include voters' social security numbers, . . . a voter's day and month of birth or voters' telephone numbers." N.M. Stat. Ann. § 1-4-5.5(B).

Because Secretary Toulouse Oliver followed New Mexico's privacy laws and refused to acquiesce to DOJ's demands, DOJ amplified its pressure campaign by filing suit, seeking to forcibly obtain the State's voter registration list. The Complaint relies on a single cause of action brought under Title III of the Civil Rights Act of 1960, which Congress enacted to combat the infringement or denial of the right to vote. Not surprisingly, these landmark civil rights laws do not support DOJ's attempt to compel New Mexico to turn over sensitive personal data of registered voters. For one, Title III requires DOJ to provide a statement identifying the "purpose" of its investigation and the "basis" for DOJ's determination that a violation of federal voting rights law may have occurred. But DOJ failed to offer any basis whatsoever for its demand, and its stated purpose—to assess New Mexico's compliance with list maintenance activities required under the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA")—is beyond the reach of Title III. Second, New Mexico law also prohibits the Secretary from furnishing certain sensitive voter data such as social security numbers or birthdates, *see* N.M. Stat. Ann. § 1-4-5.5(B), and Title III does not preempt such privacy protections. Finally, the Privacy Act prohibits unfettered governmental possession of individuals' personal information, and bars any collection of such sensitive data until the agency has implemented requisite procedural safeguards. Because DOJ has not complied with these requirements, that is an independent basis for denying its demand.

Legal errors aside, DOJ's attempt to create a federal voter registration database also runs directly contrary to the decentralized structure of our federal electoral system. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (granting states principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome." H.R. Rep. No. 107-329, pt. 1, at 32 (2001). DOJ's attempt to assert sweeping federal authority over the management of federal elections would dismantle the careful delineation of authority over American elections, as reflected by the Constitution and long-established federal laws. The Court should dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.

## BACKGROUND

I.    **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. As relevant here, Congress enacted the NVRA in 1993 to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of

3

voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict safeguards), *id.* § 20507(c)–(g). It similarly makes states the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). Further, HAVA commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, pt. 1, at 31–32.

Consistent with that principle, neither the NVRA nor HAVA tasks the federal government with compiling a national voter registration list. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the specific requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

**II.    The Department of Justice has embarked on an unprecedented nationwide campaign to amass personal voter registration data held by the states.**

In the spring of 2025, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including sensitive and personal information about each registered voter. To date, DOJ has sent demands to more than forty states, with plans to make similar demands on all fifty.[1] The vast majority of states that have received such demands—including those led by Republican officials—have responded by declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ's nationwide pressure campaign reached New Mexico on September 8, 2025, when DOJ sent Secretary Toulouse Oliver a letter demanding, among other things, New Mexico's "statewide voter registration list." Dkt. No. 2-3 at 2. DOJ insisted that the voter list "[c]ontain[] *all fields*," including driver's license numbers and the last four digits of social security numbers. *Id.* at 2–3 & n.3 (emphasis in original). The Secretary responded on September 22, explaining that New Mexico law required her "to redact certain information from the voter registration list before it is made available for inspection." Dkt. No. 2-4 at 1. This included "social security numbers, full dates of birth, driver's license numbers, and contact information of participants in the confidential address programs." *Id.* The Secretary offered to provide a copy of the list with that sensitive information redacted. *Id.* at 2. The Secretary also noted that DOJ failed to provide the basis for its

---

[1] *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Jan. 9, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information [https://perma.cc/RTG3-XAD3]; Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html [https://perma.cc/8VP4-WRXD].

[2] *See* Martinez-Ochoa, O'Connor, & Berry, *supra* note 1 (eight states have reportedly given or intend to give DOJ the information it seeks: Arkansas, Indiana, Kansas, Louisiana, Mississippi, Tennessee, Texas, and Wyoming).

demand, expressed concern about DOJ's compliance with the Privacy Act, and asked DOJ to explain the "purpose for creating this system of records, why 'all fields' are necessary to fulfill this purpose, and how DOJ intends to protect this information." *Id.* at 1–2. DOJ declined to respond to those reasonable inquiries and instead filed this lawsuit.

### III.    The Department of Justice files suit to obtain New Mexico's unredacted voter registration list.

DOJ filed its Complaint on December 2, 2025, seeking to compel New Mexico to provide its full, unredacted statewide voter registration list. *See generally* Compl. DOJ frames its demand as part of an effort to ensure that New Mexico is complying with its list maintenance obligations under the NVRA and HAVA, *id.* ¶¶ 16–23, but fails to assert any claim under either of those statutes. Instead, DOJ asserts a solitary claim under Title III of the Civil Rights Act of 1960: a law that permits DOJ to review certain voting "records and papers which come into [the Secretary's] possession," 52 U.S.C. §§ 20701–20703, for the purpose of enabling investigations "concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Notably, DOJ previously asserted claims under the NVRA and HAVA in otherwise nearly identical complaints that it brought against multiple other states in September of last year.[3] However, in the following sixteen lawsuits that it filed against states seeking the same relief (including this one against New Mexico), DOJ has abandoned its NVRA and HAVA claims.[4]

---

[3] *See* Compl., *United States v. Bellows*, No. 25-cv-468 (D. Me. Sep. 16, 2025); Compl., *United States v. Oregon*, No. 25-cv-1666 (D. Or. Sep. 16, 2025); Compl., *United States v. Weber*, No. 25-cv-09149 (C.D. Cal. Sep. 25, 2025); Compl., *United States v. Bd. of Elections of N.Y.*, No. 25-cv-1338 (N.D.N.Y. Sep. 25, 2025); Compl., *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Sep. 25, 2025); Compl., *United States v. Simon*, No. 25-cv-3761 (D. Minn. Sep. 25, 2025); Compl., *United States v. Scanlan*, No. 25-cv-371 (D.N.H. Sep. 25, 2025); Compl., *United States v. Pennsylvania*, No. 25-cv-1481 (W.D. Pa. Sep. 25, 2025).

[4] *See* Compl., *United States v. Albence*, No. 25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Amore*, No.

**LEGAL STANDARD**

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept as true all of the allegations contained in a complaint" but need not accept the complaint's "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Thus, mere 'labels and conclusions'" are insufficient. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[A] plaintiff must offer specific factual allegations to support each claim." *Id.*

**ARGUMENT**

To justify its sweeping demand for sensitive voter data, DOJ relies solely on Title III of the Civil Rights Act of 1960. *See* 52 U.S.C. §§ 20701, 20703. But DOJ's case fails for three independent reasons. First, DOJ has not complied with the basic procedural requirements contained within Title III, namely that it provide New Mexico with the "basis" and proper "purpose" of its demand for records. Second, Title III does not preempt New Mexico's privacy protections for highly sensitive personal data. And finally, DOJ's attempted collection and

---

25-cv-00629 (D.R.I. Dec. 2, 2025); Compl., *United States v. Copeland Hanzas*, No. 25-cv-903 (D. Vt. Dec. 2, 2025); Compl., *United States v. Hobbs*, No. 25-cv-6078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 25-cv-03967 (D. Colo. Dec. 12, 2025); Compl., *United States v. Nago*, No. 25-cv-00522 (D. Haw. Dec. 12, 2025); Compl., *United States v. Galvin*, No. 25-cv-13816 (D. Mass. Dec. 12, 2025); Compl., *United States v. Aguilar*, No. 25-cv-00728 (D. Nev. Dec. 2, 2025); Compl., *United States v. D.C. Bd. of Elections*, No. 25-cv-04403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Raffensperger*, No. 25-cv-00548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 25-cv-03398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-66 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-21 (D. Conn. Jan. 6, 2026).

maintenance of a database of every voter in New Mexico is prohibited by the federal Privacy Act. The Complaint should be dismissed with prejudice.

## I. DOJ failed to satisfy Title III's threshold requirements of stating a valid "basis" and "purpose" for its demand.

Governmental agencies are "not afforded 'unfettered authority to cast about for potential wrongdoing.'" *CFPB v. Accrediting Council for Indep. Colls. & Schs.* (*ACICS*), 854 F.3d 683, 689 (D.C. Cir. 2017) (quoting *In re Sealed Case (Admin. Subpoena)*, 42 F.3d 1412, 1418 (D.C. Cir. 1994)). Rather, an agency's authority to demand documents and information "is a creature of statute," *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018), and consequently, an agency's demand for information "must comply with statutory requirements," *id.* at 460. If an agency fails to follow the relevant statutory prerequisites for issuing a demand for information, courts will decline to order enforcement of the demand, *see, e.g.*, *ACICS*, 854 F.3d at 690 (declining to enforce civil investigative demand where agency failed to comply with statutory requirements).

Title III contains a key—and fundamental—requirement that DOJ failed to follow in demanding New Mexico's statewide voter registration list: the statute requires that any request for records "shall contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). The "basis" requirement ensures that the federal government will not unduly interfere in the states' traditional oversight of elections unless DOJ is able to state a concrete reason to believe that a state has denied the right to vote or otherwise violated federal voting rights law. *See Basis*, *Black's Law Dictionary* (4th rev. ed. 1968) (including definitions for "basis" such as the "groundwork," "support," or "foundation" of something). The requirement thus advances public accountability and guards against bad-faith investigations for which DOJ cannot even articulate the reason why it is seeking a State's voting records. *Cf. ACICS*, 854 F.3d at 691

8

(concluding that mere citation to statutory provisions in agency's statement, "especially considering the Bureau's failure to adequately state 'the specific conduct under investigation,'" failed to sufficiently provide "statutory basis for the Bureau's investigation").

The "purpose" requirement ensures that the government's intentions for the information sought, once acquired, are proper and just, and also allows judicial evaluation of whether the demand is sensible in light of the government's stated purpose. *See Purpose*, *Black's Law Dictionary* (4th rev. ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project"); *cf. ACICS*, 854 F.3d at 689–90 ("Because the validity of a CID is measured by the purposes stated in the notification of purpose, the adequacy of the notification of purpose is an important statutory requirement." (internal citation omitted)). In *Lynd*, for example, the government's demand was explicitly "based" on evidence in DOJ's possession that suggested racial discrimination in voting was taking place in the relevant jurisdictions. 306 F.2d at 229 n.6. The "purpose" of the demand was to determine whether such discrimination, and violations of federal voting rights law, had occurred. *Id.*

Here, because DOJ's demand was deficient on both fronts, its Title III claim should be dismissed. *See, e.g.*, *Source for Pub. Data*, 903 F.3d at 460 (declining to enforce a civil investigative demand because "[an agency] must comply with statutory requirements, and here it did not").

## A.    DOJ did not provide any statement of the "basis" for its demand.

DOJ's written demand to New Mexico did not provide *any* basis for its request for voter records. In an attempt to remedy this mistake, DOJ now alleges *in its Complaint* that the Attorney General's decision to send a letter to Secretary Toulouse Oliver seeking New Mexico's voter registration list was "[b]ased on a review of the 2024 EAVS Report." Compl. ¶ 18. Nowhere, however, does DOJ allege that this was conveyed *in the demand* that was sent to the Secretary.

*See id.* ¶ 20 (alleging DOJ stated that "[t]he *purpose* of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA," but failing to allege it stated any *basis* in its demand (first emphasis added)). That omission is critical: Title III instructs that the basis of DOJ's request must be contained in the demand itself—this requirement cannot be satisfied by post-hoc rationales advanced in litigation. *See* 52 U.S.C. § 20703 ("*This demand shall contain a statement of the basis and the purpose therefor.*" (emphasis added)).

The letter, which DOJ attached to its motion to compel, confirms that, while DOJ included a statement of its purported *purpose* for demanding New Mexico voters' private data in the demand letter that it sent to the Secretary, it contained no mention of the Attorney General's *basis* for initiating its investigation.[5] *See* Dkt. No. 2-3. Although DOJ asserts in its cause-of-action section that "[t]he written demand 'contain[ed] a statement of the basis and the purpose therefor,'" Compl. ¶ 28 (quoting 52 U.S.C. § 20703), that is a textbook example of a legal conclusion, unsupported by any factual allegation, and it cannot defeat a motion to dismiss. *Gutierrez v. Johnson & Johnson Int'l, Inc.*, 601 F. Supp. 3d 1007, 1017 (D.N.M. 2022) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." (quoting *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018)).

DOJ's omission is particularly striking since, as DOJ admits, Secretary Toulouse Oliver specifically informed DOJ that it had failed to provide a basis for its demand. Compl. ¶ 25; *see* Dkt. No. 2-4 (Secretary Toulouse Oliver's letter to DOJ, stating "the [Civil Rights Act] requires a statement of the basis and purpose" of a demand, and noting DOJ "made no attempt" to provide

---

[5] Courts may "consider documents attached to or referenced in the complaint if they are 'central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

its basis). Moreover, Secretary Toulouse Oliver was entirely justified in questioning DOJ's basis for investigating New Mexico: DOJ has made what appear to be near carbon copy demands to over 40 other states and has sued 23 of those states (as well as the District of Columbia) with complaints that contain nearly identical boilerplate claims and allegations as here. *See supra* Background §§ II, III. In no case does it appear that DOJ has asserted a basis for investigating any of these states for any violation of federal law, but rather than remedy its error and explain the basis for its investigation of New Mexico in response to the Secretary's very reasonable inquiry, DOJ jumped straight to filing this lawsuit.

The failure to provide a basis for a Title III demand is fatal to DOJ's claim. Congress expressly required DOJ to state "the basis *and* the purpose" of its request, 52 U.S.C. § 20703 (emphasis added), with the use of "and" meaning that DOJ must do both, *see Qwest Commc'ns Int'l, Inc. v. FCC*, 398 F.3d 1222, 1236 (10th Cir. 2005) ("The use of the conjunctive 'and' . . . clearly indicates that the [agency] cannot satisfy the statutory mandate by simply doing one or the other."). Courts "will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous." *United States v. Bunner*, 134 F.3d 1000, 1006 n.5 (10th Cir. 1998) (citation omitted). Moreover, the principal authority that DOJ cites in its Complaint confirms that DOJ has previously complied with this statutory requirement. In *Kennedy v. Lynd*, DOJ provided an explicit statement of *both* the "basis" *and* "purpose" of its demand, as required by Title III:

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d at 229 n.6 (internal quotation marks omitted). Other Title III cases from that period likewise contained—consistent with Title III's express requirements—an explicit statement of both a "basis" and "purpose" for DOJ's demand. *See Kennedy v. Bruce*, 298 F.2d 860, 861 (5th

Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

DOJ's failure to comply with this basic statutory requirement by failing to provide *any* statement regarding the "basis" of its demand when it sought New Mexico's voter registration list is sufficient to dismiss the Complaint. But even if DOJ had included a statement of basis before filing suit, a barebones assertion like that in the Complaint, *see* Compl. ¶ 18 ("[b]ased on a review of the 2024 EAVS Report"), would not be sufficient. That statement does not indicate that DOJ has any reason to believe that New Mexico has infringed the right to vote or violated any federal law at all—much less a voting rights law—nor does it even indicate the specific conduct under investigation. *See ACICS*, 854 F.3d at 691.

## B.    DOJ did not provide a proper "purpose" for its demand.

Separate and independent from its failure to provide any basis for its demand, DOJ's claim must also be dismissed because its demand failed to articulate a proper purpose. While Congress enacted the record retention provisions of Title III "to secure a more effective protection of the right to vote," *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote"), DOJ *admits* that it is not seeking New Mexico's statewide voter registration list for that reason. Rather, DOJ seeks to "ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." Compl. ¶ 20. That purpose, however, is beyond the scope of Title III.

In interpreting the "purpose" requirement, the Court should "account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v.*

*Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989))). The term "purpose" must be read in the specific context of the Civil Rights Act of 1960—a law designed to buttress DOJ's enforcement and protection of voting rights. *See* H.R. Rep. No. 86-956, at 3 (finding that while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"). Indeed, throughout its Complaint, correspondence, and motion to compel, DOJ has yet to cite a single instance in the 65 years of Title III's existence in which a court read Title III to require the production of records in response to a demand that did not relate to "infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228.

Consistent with these principles of statutory interpretation, multiple district courts have in just the past few months quashed records demands when DOJ sought to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, 17 (E.D. Pa. Nov. 21, 2025) (striking DOJ subpoena that "invoke[d] sweeping needs" for the information, which had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 237 (D. Mass. 2025) (quashing subpoena when DOJ "failed to show proper purpose" under

the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review").[6]

Further, even if ascertaining New Mexico's compliance with the NVRA and HAVA were permissible grounds for invoking Title III, collecting uniquely sensitive information of every registered New Mexico voter is entirely unnecessary for that purpose. Both the NVRA and HAVA grant states broad discretion in list maintenance: State efforts under the NVRA must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State," *id.* § 21085. The Secretary responded to DOJ's letter by offering "access to a redacted voter file." Dkt. No. 2-4 at 1. But DOJ never explained why the data the Secretary offered was insufficient—or why it believes it requires particularly sensitive information about voters. Instead, DOJ went straight to the Court, *see supra* Background § II. Yet even in its Complaint, it still fails to advance any reasonable basis or purpose that could justify its fishing expedition into New Mexico's compliance with the NVRA and HAVA. *See In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *17; *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 237.

## II.    Title III does not prohibit the redaction of sensitive voter information.

Secretary Toulouse Oliver explained to DOJ that, before she can produce the State's voter registration list, New Mexico law requires her to redact sensitive personal information, "including social security numbers, full dates of birth, driver's license numbers, and contact information of

---

[6] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, those cases involved circumstances where Title III was being used for its intended purpose—investigations into the potential denial of voting rights—and are fundamentally different than the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two *other* statutes.

participants in the confidential address programs such as victims of domestic violence and public officials." Dkt. No. 2-4 at 1. She offered, however, to provide DOJ with a redacted copy of the list that removes that information made confidential under state law. DOJ does not dispute that New Mexico law facially prohibits the Secretary from producing the sensitive information withheld. Accordingly, for DOJ to be entitled to this information, it must show that Title III preempts those state laws enacting privacy protections for its citizens. It does not.

Because Title III contains no *express* preemption provision, *see* 52 U.S.C. § 20703, DOJ's argument rests on the idea that New Mexico's privacy protections *impliedly* conflict with Title III. *See Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1240 (10th Cir. 2011), *aff'd*, 569 U.S. 614 (2013) (discussing express versus implied preemption). The Tenth Circuit and the Supreme Court have "recognized a presumption against implied conflict preemption." *Id.* at 1242; *see* Antonin Scalia & Brian A. Garner, *Reading Law* 290 (2012) ("It is a reliable canon of interpretation . . . to presume that a federal statute does not preempt state law."). Although the presumption against preemption "does not hold when Congress acts under the Elections Clause, which empowers Congress to 'make or alter' state elections regulations," *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 51–52 (1st Cir. 2024) (citation modified) (quoting *Inter Tribal Council of Ariz., Inc.*, 570 U.S. at 14), or when Congress otherwise regulates the mechanics of the voting process, Title III addresses only the retention, maintenance, and disclosure of records; it does not target any state election regulations or practices, nor does it implicate any voting requirements. Accordingly, the presumption applies here. *See Tarrant Reg'l Water Dist.*, 656 F.3d at 1242 ("In all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996))).

Title III does not evince a "clear and manifest purpose" that Congress intended to preempt state privacy laws that protect highly sensitive information. To the contrary, in the principal case DOJ cites in its Complaint, the Fifth Circuit explained that Title III is intended to reach *only* "public records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not of the type ordinarily "open to legitimate reasonable inspection," *id.*; rather, DOJ seeks obviously sensitive information that enjoys strong privacy protection under both federal and state law, *see, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; N.M. Stat. Ann. §§ 1-4-5.5(B), 1-6C-4.

Further confirmation that Title III does not preempt New Mexico's privacy protections may be found in the judicial consensus that a similar statute—the NVRA—likewise does *not* preempt state laws protecting the same highly sensitive categories of information that DOJ seeks here. Both Title III and the NVRA require disclosure of certain records relating to voter registration, and they employ similar language to do so. *Compare* 52 U.S.C. § 20703 (Title III: covered voting records held by a state election official "shall, upon demand in writing by the Attorney General . . . be made available for inspection"), *with* 52 U.S.C. § 20507(i) (NVRA: requiring that states "shall make [covered voting records] available for public inspection"). Because Title III and the NVRA both touch upon closely related subjects (disclosure of state records relating to voting) and because Congress used markedly similar language in crafting those enactments, the two statutory provisions should be interpreted similarly. *See, e.g.*, *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); Scalia & Garner, *supra*, at 252 ("[L]aws dealing with the same subject . . . should if possible be interpreted harmoniously."). DOJ and the New

Mexico Alliance for Retired Americans are in accord on this point. Like the Alliance, DOJ recognizes that this principle means that Title III and the NVRA should be interpreted to have the same scope of relief. *See* Dkt. No. 2-2, at 11 n.3 (DOJ stating: "[a]lthough this Motion to Compel Production is made under [Title III], the United States notes that the NVRA includes a similar requirement for production of Federal election records," and citing *Smith* for the proposition that courts should presume that two similar statutes "have the same meaning" (citation omitted)).

A straightforward application of that principle dooms DOJ's claim. Multiple courts—including the Tenth Circuit last November—have held that the NVRA does *not* prohibit States from redacting precisely the information that DOJ seeks. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."). Indeed, the Tenth Circuit specifically cited N.M. Stat. Ann. § 1-4-5.5(B), the same provision that prohibits Secretary Toulouse Oliver from providing DOJ with the sensitive information here, as an example of a state statute *not* preempted by the NVRA. *Id.*

The Tenth Circuit's decision in *Voter Reference Foundation* is no outlier. It follows a similar and recent decision of the First Circuit. *See Bellows*, 92 F.4th at 56 ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."). Many other courts also have reached the same conclusion. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact social security numbers before disclosure under NVRA); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper

redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers). Because (as DOJ agrees) the NVRA and Title III should be interpreted similarly with respect to demands for the information at issue, Title III should not be read to preempt state privacy laws such as N.M. Stat. Ann. § 1-4-5.5(B) that prohibit the disclosure of highly sensitive voter information.

This conclusion is reinforced by analyzing the choices Congress made when it enacted the NVRA and HAVA. Recall that DOJ's stated purpose for its demand for personal and highly sensitive voter information is purportedly to evaluate New Mexico's compliance with its list maintenance obligations under those statutes. Compl. ¶ 20. But if Congress had thought that it was necessary or desirable for DOJ to have access to a database containing highly sensitive information about every voter in a state so that DOJ would be able to ensure that the state was complying with its list maintenance obligations, it would have done so in *the NVRA and HAVA themselves*. Congress did not do so. In fact, Congress created a *different* mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision, located at 52 U.S.C. § 20507(i). Congress "envisioned" this inspection to allow for "critical scrutiny and public audits of voter data"—but nonetheless permitted the redaction of sensitive voter data. *Voter Reference Found.*, 160 F.4th at 1082 & 1083 n.14. Indeed, Congress specified that records subject

to inspection under that provision must include the "names and addresses" of certain voters, 52 U.S.C. § 20507(i)(2), but stopped short of requiring states to go beyond that and disclose sensitive voter information. *See supra* at 16–18. As for HAVA, it contains no disclosure provision at all, and instead explicitly confirms that voter registration lists must be "maintained" and "administered at the State level"—not by the federal government. 52 U.S.C. § 21083(a)(1)(A). In short, it simply makes no sense to say that Congress intended Title III to preempt state privacy laws protecting highly sensitive information so that the federal government could assess compliance with voter list maintenance under the NVRA and HAVA, when the text of those statutes reflect a congressional judgment *not* to preempt such laws.

**III.    DOJ has failed to comply with the Privacy Act, which independently requires dismissal.**

The Privacy Act, codified at 5 U.S.C. § 552a, *et seq.*, "offers substantial protection[] regarding governmental use and retention of identifiable personal information." *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3501, 2025 WL 3198970, at *1 (D.D.C. Nov. 17, 2025). It does so in part by "adopt[ing] procedural safeguards when the records maintained by a federal agency, *i.e.*, a 'system of records,' are changed or used in a new way." *Id.* at *2 (quoting 5 U.S.C. § 552a(a)(5), (e)). In its rush to sweep up the sensitive information of every registered voter in New Mexico, DOJ overlooked the Privacy Act's basic procedural requirements. As a result, the Privacy Act independently prohibits DOJ from obtaining New Mexico's statewide voter registration list.

The Privacy Act imposes certain obligations on any agency that "maintains" a "system of records." *See* 5 U.S.C. § 552a(e). Both of those terms are given specific definitions by the statute. A "system of records" is defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number,

symbol, or other identifying particular assigned to the individual." *Id.* § 552a(a)(5); *see also id.* § 552a(a)(4) (defining "record" to include "any item, collection, or grouping of information about an individual that is maintained by an agency . . . that contains his name, or the identifying number . . . or other identifying particular assigned to the individual"). New Mexico's statewide voter registration list, which contains the names of all registered voters in the state as well as their voter registration identifiers and other identifying information, plainly qualifies as a "system of records" under the Privacy Act. The term "maintain" is defined to include "maintain, collect, use, or disseminate." 5 U.S.C. § 552a(a)(3). Accordingly, if DOJ were to "collect," "use," or "maintain" New Mexico's statewide voter registration list, the obligations imposed by subsection (e) are triggered. *See id.* § 552a(e)(4).

Most relevant here, "when an agency 'establish[es] or revis[es]' any 'system of records,' it must 'publish in the Federal Register . . . a notice of the existence and character of the system of records,' *i.e.*, a System of Records Notice (SORN)." *League of Women Voters*, 2025 WL 3198970, at *2 (alterations in original) (quoting 5 U.S.C. § 552a(e)(4)). A SORN must include, among other things, the name and location of the system, the categories of individuals on whom records are maintained in the system, the categories of records maintained in the system, and all "routine uses" to which the system can be put as well as the "categories of users and the purpose of such use." *Id.*

DOJ does not appear to dispute that the Privacy Act is applicable here, nor that DOJ must publish a SORN that would apply to New Mexico's statewide voter registration list. To the contrary, the Complaint specifies the specific SORN that DOJ apparently believes provides authority for it to collect New Mexico's voter registration list, identifying it as "JUSTICE/CRT – 001," the "Central Civil Rights Division Index File and Associated Records." Compl. ¶ 23; *see*

*also id.* ¶ 22 (stating that DOJ told Secretary Toulouse Oliver "that the requested records will be maintained consistent with Privacy Act protections").

That SORN, however, does not extend to a record such as a statewide voter registration list. It notifies the public that the categories of individuals covered by the system may include "[s]ubjects of investigations, victims, [and] potential witnesses," in addition to other categories not relevant here. *Privacy Act of 1974; System of Records*, 68 Fed. Reg. 47610, 47611 (Aug. 11, 2003). It simply is not plausible to understand that language to countenance the collection of personally identifying information of *every* registered voter in New Mexico (and, if DOJ gets its way, every registered voter in the country). Similarly, the SORN describes the categories of records in this system to "consist of case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* While this language would seemingly cover run-of-the-mill files maintained for specific Civil Rights Division investigations and litigation matters, it would be a startling construction of these terms to find that they extend to a statewide (or nationwide) voter registration list that has never before been compiled by the federal government, as DOJ presses here.[7]

To hold that this SORN is sufficient under the Privacy Act to allow DOJ to collate sensitive information about every registered voter in New Mexico (or the country) would nullify the statute's "procedural safeguards" that "Congress enacted to . . . permit an individual to determine what records pertaining to him are collected, maintained, used, or disseminated by federal agencies" and to "ensure adequate safeguards are provided to prevent misuses of such

---

[7] DOJ also cites two other notices in the Federal Register, but they are irrelevant. The first simply adds an additional, allowable "routine use" to the SORN that is not applicable here. *See* 70 Fed. Reg. 43904, 43904 (July 20, 2005). The second adds a blanket routine use to all DOJ SORNs that is relevant in the event of a data breach. *See* 82 Fed. Reg. 24147 (May 25, 2017).

information." *League of Women Voters*, 2025 WL 3198970, at \*2 (citation modified). If DOJ wishes to take such a radical step and compile a federal database of the registered voters in the United States, the Privacy Act requires (at a minimum) that DOJ give the public adequate notice about its intention to do so, by publishing a SORN that accurately discloses the system of records it intends to create and the uses to which it will put that information. *Pippinger v. Rubin*, 129 F.3d 519, 527 (10th Cir. 1997) (noting the Privacy Act "requir[es] publication of the establishment and existence of a government-maintained 'system of records'" and that agencies "publish in the Federal Register notice of revisions in the *character* of existing systems of records" (emphasis in original) (citation omitted)); *see* 5 U.S.C. § 552a(e)(4); *id.* § 552a(e)(11) (requiring a 30-day notice period "of any new use or intended use of the information in the system," to "provide an opportunity for interested persons to submit written data, views, or arguments to the agency").

Finally, there is no impediment to the Court dismissing the Complaint based on DOJ's failure to comply with the Privacy Act. Even if the Court construes this argument as an affirmative defense, the Court may still consider it on a motion to dismiss "when the facts establishing the affirmative defense are apparent on the face of the complaint." *Raja v. Ohio Sec. Ins. Co.*, 305 F. Supp. 3d 1206, 1239 n.10 (D.N.M. 2018). Here, the Complaint explicitly references the SORN that DOJ intends to rely on. Compl. ¶ 23. For the reasons stated above that SORN cannot justify DOJ's collection and maintenance of New Mexico's voter registration list. And because the SORN that DOJ identifies does not cover the system of records it intends to maintain, the Privacy Act prohibits DOJ from collecting New Mexico's statewide voter registration list.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: January 13, 2026

Justin R. Kaufman
Caren I. Friedman
Molly H. Samsell
**DURHAM, PITTARD & SPALDING, LLP**
125 Lincoln Avenue, Suite 402
Santa Fe, NM 87501
Telephone: (888) 998-6688
jkaufman@dpslawgroup.com
cfriedman@dpslawgroup.com
msamsell@dpslawgroup.com

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Joshua C. Abbuhl*
Omeed Alerasool*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
unkwonta@elias.law
jabbuhl@elias.law
oalerasool@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
wmckusick@elias.law

* Appearance by association pursuant to
D.N.M.LR-Civ. 83.3(a).

*Counsel for Intervenor-Defendant New Mexico Alliance for Retired Americans*

## CERTIFICATE OF CONFERRAL

The undersigned hereby certifies, pursuant to D.N.M.LR-CIV 7.1(a), that counsel for the New Mexico Alliance for Retired Americans sought the concurrence of the parties. Defendant Secretary of State and Intervenor-Defendants Common Cause, Claudia Medina, and Justin Allen consent to this Motion. Plaintiff is opposed.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies, pursuant to D.N.M.LR-CIV 7.1(b), that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta