IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,<br><br>    *Defendant*,<br><br>NEW MEXICO ALLIANCE FOR RETIRED AMERICANS,<br><br>    *Intervenor-Defendant*,<br><br>and,<br><br>COMMON CAUSE, CLAUDIA MEDINA, and JUSTIN ALLEN,<br><br>    *Intervenor-Defendants*. | Civil No. 25-cv-1193-LF-JFR<br><br>**RESPONSE OF INTERVENOR-DEFENDANT NEW MEXICO ALLIANCE FOR RETIRED AMERICANS IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF RECORDS**<br><br>[ORAL ARGUMENT REQUESTED] |

## INTRODUCTION

    The Federal Rules of Civil Procedure lay out the typical lifecycle of a civil action: start with Rule 12(b) motions and then—if a Plaintiff states a claim and establishes jurisdiction—proceed to discovery, summary judgment, and trial if necessary. Throughout that process, a defendant has multiple opportunities to test the legal and factual bases of the plaintiff's claims and to build any necessary record. The Federal Rules also provide familiar governing standards for courts to apply at each step, all with an eye toward the ordered and efficient resolution of disputes.

    The U.S. Department of Justice ("DOJ") asks this Court to sweep all that aside and to instead put the onus on the *defendants* to resist a "motion to compel production of records" at the

very start of the case, which would immediately grant DOJ the final relief it seeks in this action. That is not how civil litigation works. Nothing in the Federal Rules or the statutes underlying DOJ's claims authorize this departure from the regular course of proceeding or permit DOJ to short-circuit the Rules for its own convenience. And contrary to DOJ's suggestion, Title III of the Civil Rights Act of 1960 does not "displace" the Rules or create a "special statutory proceeding" when DOJ demands voting records. Indeed, the term "special statutory proceeding" appears nowhere in the Civil Rights Act, which merely states that district courts "shall have jurisdiction by appropriate process" to grant relief under that law. 52 U.S.C. § 20705. Finding nothing in the text of Title III to support this theory, DOJ relies instead on a lone, out-of-circuit case from 1962—but that case is distinguishable many times over, is displaced by intervening Supreme Court authority, and, in any event, cannot trump the Federal Rules.

The Court should reject DOJ's effort to leapfrog the prescribed stages of litigation it apparently finds bothersome and allow the action to unfold as prescribed by the governing Federal Rules—starting by resolving the pending motions to dismiss.

## BACKGROUND[1]

DOJ filed this suit on December 2, 2025, seeking to compel New Mexico to turn over its full statewide voter registration list without redacting sensitive information protected from disclosure by state law. *See* Compl. ¶ 3, Dkt. No. 1. DOJ's complaint contains a single cause of action under Title III of the Civil Rights Act of 1960, and it also cites the National Voter Registration Act ("NVRA") and the Help America Vote Act ("HAVA"). However, *none* of these

---

[1] The Alliance's Motion to Dismiss further explains the background of this litigation and DOJ's wide-ranging demands for sensitive voter information in New Mexico and throughout the country.

2

statutes support DOJ's sweeping and novel demand, as the Alliance explains more thoroughly in its motion to dismiss. *See* Mot. Dismiss, Dkt. No. 32 ("Alliance Mot.").

With respect to Title III, DOJ's reliance on that statute fails many times over. First, DOJ failed to comply with the statute's basic procedural requirement that it give notice to New Mexico of the basis of its demand. *See* Alliance Mot., Argument § I.A. Nor can Title III be used as a blank check to permit the federal government to broadly demand the private data of every single voter in the state purportedly to "investigate" the state's compliance, not with the Civil Rights Act at all (which DOJ does not allege has been violated), but the NVRA and HAVA—entirely different federal statutes. *See* Alliance Mot., Argument § I.B. Further, Title III does not preempt New Mexico laws that prohibit the Secretary of State from disclosing highly sensitive voting information. *See* Alliance Mot., Argument § II. And even setting aside those obstacles, the federal Privacy Act prohibits DOJ from collecting New Mexico's statewide voter registration list, at least absent certain procedural safeguards that DOJ ignored. *See* Alliance Mot., Argument § III.

DOJ asks the Court to effectively disregard all of that (and the Federal Rules that govern civil litigation in federal court) and "[o]rder Secretary Toulouse Oliver to produce an electronic copy of the New Mexico Statewide Voter Registration List," including all the sensitive fields DOJ demands. Mot. Compel Produc. at 3, Dkt. No. 2. In support, DOJ claims that the "[Civil Rights Act] displaces the Federal Rules of Civil Procedure" and instead authorizes a "special statutory proceeding" in which "Secretary Toulouse Oliver . . . must produce the voter-registration lists and other Federal election records demanded by the Attorney General." Mem. Supp. Mot. Compel Produc. ("DOJ Mem.") at 11, Dkt. No. 2-2. In other words, DOJ appears to believe that it should

be immediately entitled to the ultimate, dispositive relief that it seeks in this action based solely on its so-called "motion to compel production."

## ARGUMENT

The Federal Rules of Civil Procedure govern this civil action and provide a roadmap for how this case—like nearly all other civil actions—must proceed. Nothing in the statutory text or the Rules themselves support DOJ's contention that Title III "displaces" the Rules or authorizes a "special statutory proceeding." DOJ Mem. at 5. Nor does anything in the Rules authorize courts to award dispositive relief—and effectively final judgment—via an "order to produce records." The Court should thus deny DOJ's motion and permit this litigation to unfold under the normal course—starting with resolving motions to dismiss DOJ's baseless claims.

### I. The Federal Rules govern DOJ's claims, including under Title III of the Civil Rights Act.

The Court should reject DOJ's request to sweep aside the Federal Rules in this case. The Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). This case is just such an action. While Rule 81 sets out a narrow set of prescribed cases that are exempt from the ordinary rules—such as certain admiralty or bankruptcy actions—none involve the Civil Rights Act of 1960. *See* Fed. R. Civ. P. 81(a). Indeed, Rule 81(a)(5) affirms that the Federal Rules generally apply to actions involving a subpoena, "except as otherwise provided by statute, by local rule, or by court order in the proceedings"—a limited exception that does not apply here because the statutes underlying DOJ's claims do not authorize it to issue subpoenas for compliance. Fed. R. Civ. P. 81(a)(5). Congress knows how to create subpoena power and special proceedings to enforce those subpoenas, *see, e.g.*, 29 U.S.C. § 161(1)–(2) (authorizing National Labor Relations Board to issue subpoenas and seek "court aid" in compelling compliance under threat of contempt), but it did not

4

do so for the NVRA, HAVA, or Title III. And, in any event, DOJ itself does not cite Rule 81(a)(5) in support of its motion for a show cause order. Accordingly, based on the plain text of Rule 1, this action is governed by the Federal Rules of Civil Procedure, just like all other civil actions that lack special carveouts in statutes or the Federal Rules themselves.

Nothing in the statutes DOJ cites supports departing from the Federal Rules. The NVRA, for example, authorizes the Attorney General to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter," 52 U.S.C. § 20510(a), but it makes no mention of exempting those actions from the Federal Rules. The same goes for HAVA. *See* 52 U.S.C. § 21111 (authorizing the Attorney General to "bring a civil action against any State or jurisdiction in an appropriate United States District Court" for declaratory or injunctive relief under certain sections of HAVA). Indeed, district courts regularly hear NVRA and HAVA cases under the Federal Rules. *See, e.g.*, *Voter Reference Found., LLC v. Torrez*, 727 F. Supp. 3d 1014 (D.N.M. 2024), *aff'd*, 160 F.4th 1068 (10th Cir. 2025); *Common Cause of Colo. v. Buescher*, 750 F. Supp. 2d 1259, 1267 (D. Colo. 2010). Despite the large volume of such cases in federal district courts, DOJ does not identify *any* that have been resolved outside of the Federal Rules.[2] The Alliance is aware of none.

DOJ pins its request on Title III of the Civil Rights Act of 1960, claiming that the statute "displaces" the Federal Rules and creates a "special statutory proceeding." DOJ Mem. at 11. But Title III does no such thing. To the contrary, the statute merely assigns jurisdiction to hear Title III disputes to "[t]he United States district court for the district in which a demand is made," and

---

[2] Since courts hearing NVRA claims consistently apply the Federal Rules to such claims, DOJ's suggestion that the NVRA must be read in conjunction with the Civil Rights Act of 1960, *see* DOJ Mem. at 11 n.3, cuts *against* their request for a special statutory proceeding for their Civil Rights Act claim.

5

provides that such courts may "by appropriate process" compel the production of covered records. 52 U.S.C. § 20705. Nothing in that unremarkable grant of jurisdiction says that Title III cases are exempt from the Federal Rules or immune from searching judicial review, as DOJ insists. Nor does the term "summary proceeding" appear anywhere in the law.

DOJ relies solely on a Fifth Circuit opinion from 1962 that describes an action to enforce Title III of the Civil Rights Act of 1960 as a "special statutory proceeding" with minimal judicial involvement. DOJ Mem. at 11 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). But *Lynd*'s conclusion on that score finds no support in the statutory text and is fundamentally out of step with modern jurisprudence. Just two years after *Lynd*, the Supreme Court squarely rejected the Fifth Circuit's reasoning in *United States v. Powell*, which concerned a government request for a district court to enforce a tax subpoena under a statute materially similar to Title III. *See* 379 U.S. 48, 57–58 (1964). The Supreme Court held that to invoke the powers of a federal court to enforce the subpoena, the government must show its investigation "will be conducted pursuant to a legitimate purpose" and that "the inquiry may be relevant to the purpose," notwithstanding broad statutory language underlying the subpoena in that case. *See id.* As *Powell* explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 (noting "an abuse would take place if the summons had been issued for an improper purpose"). *Lynd*'s refusal to engage in judicial review of government document requests is thus simply not the law.[3]

---

[3] The procedure and facts before *Lynd* also differ starkly from those here. To start, that appeal consolidated five separate cases from two different states and two judicial districts. *Lynd*, 306 F.2d at 225. The precise procedures—whether pursuant to the Federal Rules or not—are not detailed for each case, nor did the Fifth Circuit question them. There is nothing in *Lynd* that supports the procedural maneuver DOJ tries here. *Lynd* also had no reason to doubt that DOJ invoked Title III for a valid purpose. As the court explained, Title III's "clearest purpose" is to permit investigations

For the same reasons, *Powell* also rebuffed the government's attempt to depart from the Federal Rules, holding instead that because the statute at issue "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." 379 U.S. at 58 n.18 (emphasis added). The jurisdictional provision in the subpoena statute interpreted by *Powell* closely parallels Title III. *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court for the district in which such person resides or is found *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data[.]" (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States district court for the district in which a demand is made . . . or in which a record or paper so demanded is located, *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)). In other words, the Supreme Court made clear that claimants cannot evade the Federal Rules under such a provision.

The reasoning of *Powell*—which, unlike the Fifth Circuit's in *Lynd*, binds this Court—forecloses any notion that Title III's simple jurisdictional grant and reference to "appropriate process" requires departing from the Federal Rules for some non-existent summary or special proceeding of DOJ's own invention. Indeed, since *Powell*, courts—including the circuit court that issued *Lynd*—have regularly engaged in meaningful judicial review of government document requests under the Rules. *E.g.*, *United States v. Edwards*, 172 F. App'x 844, 846 (10th Cir. 2006) (discussing *Powell* and observing that a summons recipient may rebut government's prima facie

---

"concerning infringement or denial of . . . voting rights." 306 F.2d at 228. In *Lynd*, DOJ was doing just that: demanding voter records from counties in Mississippi and parishes in Louisiana "based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction." *Id.* at 229 n.6. And *Lynd* emphasized that the DOJ in the case before it did *not* seek "confidential, private" records, *id.* at 231, whereas DOJ here demands sensitive voter information protected from disclosure under New Mexico law, *see* N.M. Stat. Ann. § 1-4-5.5(B).

7

case); *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458–60 (5th Cir. 2018) (reversing order to enforce civil investigative demand after inquiry into the sufficiency of the purpose and basis of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (quotation omitted)).

And nothing in DOJ's recently filed notice of supplemental authority changes that conclusion. In its notice, DOJ submitted a recent order from a federal court in Connecticut that instructs the Secretary to show cause as to why the court should not order the release of the state's voter registration list to DOJ. *See* Dkt. No. 31. But DOJ omits the fact that the court did not require Connecticut officials to turn over *any* data; it merely set a briefing schedule in a brief order that contains no legal analysis that could aid this Court. *See* Dkt. No. 31-1 (Order, *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 8, 2026), Dkt. No. 10); *see also BKV Barnett, LLC v. Elec. Drilling Techs., LLC*, No. 23-CV-00139, 2024 WL 4833776, at *1 (D. Colo. Nov. 20, 2024) ("show cause order was not a final order"). Nor does the order find that DOJ has adequately stated a claim for relief under the Civil Rights Act—never mind proven such a claim. Indeed, despite DOJ having now sued 24 states for private voter data, not a single court nationwide has yet found DOJ's claims to be legally viable.

The Connecticut order is also an outlier that flips the burden onto Defendants to explain why DOJ should not prevail on its claims. Other courts have proceeded with Rule 12 motions: defendants' and intervenors' motions to dismiss are fully briefed in California, Oregon, and

8

Michigan, with Maine and Pennsylvania to follow within the week.[4] These courts have had the benefit of advocacy on the question of what rules apply to this case, as well as on the merits. In the Connecticut case, the state has not yet appeared (indeed, it was only served days after the Court's order to show cause was issued), and a motion to intervene is still pending, meaning that the court lacked adversarial briefing on the propriety of issuing its order. *See, e.g.,* Mot. to Intervene, *Thomas*, No. 3:26-CV-00021 (D. Conn. Jan. 9, 2026), Dkt. No. 12; Summonses Returned Executed, *id.* (D. Conn. Jan. 12, 2026), Dkt. Nos. 20–21. Since briefing is already underway before this Court, there is no reason to change course and stray from the procedures provided by the Federal Rules.

This Court should thus reject DOJ's suggestion that Title III "displaces the Federal Rules of Civil Procedure," DOJ Mem. at 11, and should instead apply those Federal Rules as it does in nearly every other civil action. That starts with resolving the parties' motions to dismiss before proceeding to any necessary discovery period and summary judgment briefing.

**II.     The pending motions to dismiss are the proper vehicle for either resolving this case or proceeding to any needed discovery.**

Consistent with the above, the Court can and should resolve this case via the pending motions to dismiss, not through a "motion for an order to produce records" that is not sanctioned by the Federal Rules or any statute. The Federal Rules provide for motions to dismiss for a simple and sound reason: to test the sufficiency of the complaint. *See Harrell v. Lira*, No. 24-8011, 2025 WL 251832, at *4 (10th Cir. Jan. 21, 2025) ("A motion to dismiss, however, tests the allegations

---

[4] *See* Mins. of Mot. Hr'g, *United States v. Weber, et al.*, No. 2:25-CV-09149 (C.D. Cal. Dec. 4, 2025), Dkt. No. 97; Scheduling Order, *United States v. Oregon, et al.*, No. 6:25-CV-01666 (D. Or. Dec. 5, 2025), Dkt. No. 54; Reply in Support of Mot. Dismiss, *United States v. Benson*, No. 1:25-CV-01148 (W.D. Mich. Jan. 9, 2026), Dkt. No. 58; Scheduling Order, *United States v. Bellows*, No. 1:25-CV-00468 (D. Me. Nov. 21, 2025), Dkt. No. 38; Resp. in Opp'n to Mot. Dismiss, *United States v. Schmidt*, No. 2:25-CV-01481 (W.D. Pa. Jan. 12, 2026), Dkt. No. 103.

of the complaint." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))). Motions to dismiss thus serve "an important function," guarding against legally defective claims. *San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, No. 1:23-cv-00903-KWR-JFR, 2025 WL 2939378, at *7 (D.N.M. Oct. 15, 2025). The Federal Rules likewise set an early deadline for motions to dismiss because they are "used to expedite the disposition of litigation . . . [and] permit trial courts to terminate lawsuits 'that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity.'" *Payne v. Equal Emp. Opportunity Comm'n*, No. 1:99-cv-00270-LFG-KBM, 1999 WL 35808329, at *1 (D.N.M. Nov. 24, 1999) (quoting *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993)). Accordingly, Rule 12(b)(6) motions are meant to "weed[] out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

Following the Federal Rules and seeking to weed out DOJ's unmeritorious claim, Defendants have timely moved to dismiss DOJ's complaint under Rule 12(b)(6). As explained more fully in those motions, DOJ has no statutory basis for its unprecedented attempt to invoke Title III to seek unredacted copies of statewide voter registration lists. *See* Alliance Mot., Argument §§ I–III. In light of the fatal legal deficiencies in DOJ's complaint, resolving its motion to compel first would get things backwards, depriving Defendants of their opportunity to test the legal sufficiency of DOJ's claims at the outset, as the Rules envision. The motions to dismiss are thus the proper vehicle to resolve DOJ's claims.

Even if the Court denies the motions to dismiss in whole or in part, the next step would be to permit discovery on DOJ's claims, including its assertions regarding its intended uses of the data it seeks—which are contradicted by public reporting, *see* Alliance Mot., Background § II— and its dubious allegation that it would abide by federal privacy laws. Granting DOJ the final relief

it seeks before discovery occurs would be premature. *See Serna v. Andrade*, No. 2:23-cv-00076-MLG-GJF, 2024 WL 964240, at *2 (D.N.M. Mar. 6, 2024) ("[I]t is generally inadvisable to grant summary judgment before the parties have engaged in meaningful discovery.").

## CONCLUSION

For the foregoing reasons, the Court should deny DOJ's motion to compel production.

Dated: January 13, 2026

Justin R. Kaufman
Caren I. Friedman
Molly H. Samsell
**DURHAM, PITTARD & SPALDING, LLP**
125 Lincoln Avenue, Suite 402
Santa Fe, NM 87501
Telephone: (888) 998-6688
jkaufman@dpslawgroup.com
cfriedman@dpslawgroup.com
msamsell@dpslawgroup.com

Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Joshua C. Abbuhl*
Omeed Alerasool*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
unkwonta@elias.law
jabbuhl@elias.law
oalerasool@elias.law

Walker McKusick*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
Telephone: (206) 656-0177
wmckusick@elias.law

* Appearance by association pursuant to D.N.M.LR-Civ. 83.3(a).

*Counsel for Intervenor-Defendant New Mexico Alliance for Retired Americans*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies, pursuant to D.N.M.LR-CIV 7.1(b), that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

                                            */s/ Uzoma N. Nkwonta*
                                            Uzoma N. Nkwonta