**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

         *Plaintiff*,

v.

                                    Case No. 1:25-cv-01193-LF-JFR

MAGGIE TOULOUSE OLIVER, in her
Official capacity as Secretary of State of New
Mexico,

         *Defendant*,

and                                  [ORAL ARGUMENT REQUESTED]

NEW MEXICO ALLIANCE FOR RETIRED
AMERICANS, COMMON CAUSE,
CLAUDIA MEDINA, and JUSTIN ALLEN,

         *Intervenor Defendants*.

**DEFENDANT NEW MEXICO SECRETARY OF STATE MAGGIE TOULOUSE
OLIVER'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE 12(b)(6) AND
MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

I.    STATEMENT OF FACTS ................................................................................. 2

    A.    New Mexico has implemented a system for maintaining an accurate voter registration list. ........................................................................................ 2

        1.    Title III of the Civil Rights Act of 1960, the National Voter Registration Act, and Help America Vote Act set forth minimum requirements for states' maintenance, revision, and inspection of voter registration lists..................................................................... 3

        2.    New Mexico's system for maintaining its voter registration list is created through statutes and regulations consistent with the State's Title III, NVRA, and HAVA obligations. ......................................... 5

    B.    In recent months, multiple federal agencies and officials have announced plans to create a nationwide voter database for purposes unrelated to federal election law enforcement. ................................................................ 7

    C.    The instant litigation is the latest attempt by the DOJ to obtain unredacted personal voter information from Secretary Toulouse Oliver since August 2025.................................................................................................................. 9

II.    LEGAL STANDARD ...................................................................................... 10

III.    ARGUMENT ................................................................................................... 12

    A.    The DOJ cannot establish that its demand is authorized by the plain language of or consistent with the legislative purpose of Title III of the Civil Rights Act of 1960. .................................................................................12

        1.    The DOJ has not satisfied Title III's requirement that the agency provide a written statement of "the basis and the purpose" for a demand............................................................................................... 12

        2.    Title III does not authorize DOJ's demand or disclosure of the data it seeks........................................................................................... 17

    B.    Compliance with the DOJ's demand for all voter data stored in SERVIS, including PII, would be illegal under multiple federal privacy protection

statutes .................................................................................................. 18

1.    The Privacy Act of 1974 bars the DOJ from gathering, let alone
      using, information about an individual's exercise of First
      Amendment rights ...................................................................... 19

      a.    The DOJ's demand is a federal agency request for data about the
            exercise of New Mexico voters' First Amendment rights. ..... 20

      b.    The DOJ cannot establish any exemption from or exception to
            the Privacy Act. ..................................................................... 21

      c.    The DOJ has not met the Privacy Act's public and inter-agency
            notice prerequisites for collecting or using data that is
            identifiable by individual. ...................................................... 23

2.    The DOJ has not conducted a privacy impact assessment, as required by
      the E-Government Act prior to collecting information like that
      requested. ......................................................................................... 25

CONCLUSION .................................................................................................. 26

# TABLE OF AUTHORITIES

**CASES**

*State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) .......................... 16, 17

*Albright v. United States*, 631 F.2d 915 (D.C. Cir. 1980). ........................................................... 21

*Albuquerque Cab Co., Inc. v. Lyft, Inc.*, 460 F. Supp. 3d 1215 (D.N.M. 2020) ........................... 15

*Arizona v. Inter Tribal Council of Ariz., Inc.,* 570 U.S. 1 (2013) ................................................... 1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................... 10-11, 11, 14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 11

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ..................................................................... 22

*Boyd v. Sec'y of the Navy*, 709 F.2d 684 (11th Cir. 1983) ........................................................... 21

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ...................................................... 20

*Bufkin v. Collins*, 604 U.S. 369 (2025). ....................................................................................... 13

*Dinkens v. Atty. Gen.*, 285 F.2d 430 (5th Cir. 1961) ................................................................... 16

*Duprey v. Twelfth Jud. Dist. Ct.*, 760 F. Supp. 2d 1180 (D.N.M. 2009). .................................... 11

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017). ................................................................................................................................. 25

*Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018) ............................................... 11

*Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284 (9th Cir. 2019) ...................................... 23

*Gerlich v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1 (D.D.C. 2009) ............................................. 21

*Frost v. ADT, LLC*, 947 F.3d 1261 (10th Cir. 2020) .................................................................... 11

*Hibbs v. Winn*, 542 U.S. 88 (2004) .............................................................................................. 15

*Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ................... 20-21

*In re Mallo*, 774 F.3d 1313 (10th Cir. 2014) ............................................................................... 15

*In re Malul*, 614 B.R. 699 (Bankr. D. Colo. 2020) ...................................................................... 12

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................................................. 13-14, 15, 17

*Khalik v. United Air Lines*, 671 F.3d 1188 (10th Cir. 2012). ................................................. 11, 14

*MacPherson v. I.R.S.*, 803 F.2d 479 (9th Cir. 1986). ................................................................ 21

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ...................................... 17

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025). .......................................... 22

*Pulsifer v. United States*, 601 U.S. 124 (2024) ...................................................................... 13

*Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990) .......................................................... 21

*Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243 (D. Colo. 2022) ...................................... 11

*Steelcase, Inc. v. United States*, 165 F.3d 28 (6th Cir. 1998) ................................................ 17

*Tashjian v. Repub. Party of Conn.*, 479 U.S. 208 (1986) ......................................................... 1

*Thomas v. U.S. Dep't of Energy*, 719 F.2d 342 (10th Cir. 1983) ............................................ 19

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) .............................................................. 16

*Vigil v. Doe*, 405 F. Supp. 3d 1058 (D.N.M. 2019) ................................................................ 11

*Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068 (10th Cir. 2025) ............................. 17

*Williams v. Rhodes*, 393 U.S. 23, 30 (1968) .......................................................................... 20


**NEW MEXICO STATUTES**

N.M. Stat. Ann. § 1-1-27.1 (2023) .................................................................... 3, 10, 17, 19

N.M. Stat. Ann. § 1-4-2 (2019) ..................................................................................... 2

N.M. Stat. Ann. § 1-4-5.4 (2019) .............................................................................. 2, 3

N.M. Stat. Ann. § 1-4-5.5 (2019) ................................................................... 3, 10, 17, 19

N.M. Stat. Ann. § 1-4-22 (2019) ..................................................................................... 6

N.M. Stat. Ann. § 1-4-24 (2023) ..................................................................................... 6

N.M. Stat. Ann. § 1-4-25 (2009) ..................................................................................... 6

N.M. Stat. Ann. § 1-4-28 (2019) ..................................................................................... 6

N.M. Stat. Ann. § 1-4-30 (2011) ..................................................................................... 6

N.M. Stat. Ann. § 1-4-34 (2023) ..................................................................................... 6

N.M. Stat. Ann. § 1-4-38 (2019) ........................................................... 6

N.M. Stat. Ann. § 1-4-47 (2023) ........................................................... 3

N.M. Stat. Ann. § 1-5-3 (2005) ............................................................. 5

N.M. Stat. Ann. § 1-5-30 (2019) ........................................................... 2

N.M. Stat. Ann. § 1-6C-3 (2019) ........................................... 3, 10, 17, 19

N.M. Stat. Ann. § 1-6C-4 (2019) ........................................... 3, 10, 17, 19

N.M. Stat. Ann. § 40-13B-3 (2023) ....................................................... 3

N.M. Stat. Ann. § 66-2-7.1 (2025) ........................................................ 3

## NEW MEXICO CODE

N.M. Code R. §§ 1.10.8.12 (2001) ........................................................ 6

N.M. Code R. § 1.10.35.8 (2025) ..................................................... 2, 3, 6

N.M. Code R. § 1.10.35.9 (2025) ........................................................ 5, 6

## UNITED STATES CODE, TITLE

5 U.S.C. §§ 552a ................................................................................ 19

5 U.S.C. §§ 552a(a)(3) .......................................................... 19, 20, 21

5 U.S.C. §§ 552a(e)(4) .......................................................... 19, 23, 24

5 U.S.C. §§ 552a(a)(5) ............................................................... 19, 23

5 U.S.C. §§ 552a(e)(7) ...................................................... 19, 21, 22, 23

5 U.S.C. §§ 552a(f) ......................................................................... 19

5 U.S.C. §§ 552a(r) ......................................................................... 23

52 U.S.C. § 20501 ............................................................................. 4

52 U.S.C. § 20501(a)(2) ..................................................................... 4

52 U.S.C. § 20507(a)(4) .................................................................. 4, 22

52 U.S.C. § 20507(i) ................................................................................................ 5, 14, 22

52 U.S.C. § 20510 ...................................................................................................... 14, 22

52 U.S.C. § 20701 ............................................................................................................. 4

52 U.S.C. § 20703 ......................................................................................................... 4, 12

52 U.S.C. § 21083(a)(1)(A) ............................................................................................... 5

52 U.S.C. § 21083(a)(2)(B) ............................................................................................... 5

52 U.S.C. § 21083(a)(2)(B)(i) ........................................................................................... 5

52 U.S.C. § 21083(a)(2)(B)(ii) .......................................................................................... 5

52 U.S.C. § 21083(a)(4) ................................................................................................... 22

52 U.S.C. § 21083(a)(4)(A) ............................................................................................... 5

52 U.S.C. § 21085 ......................................................................................................... 5, 22

52 U.S.C. § 21111 ...................................................................................................... 14, 22


E-Government Act, Pub. L. No. 107–347, § 208(b), 116 Stat. 2899 (2002) ................................ 25

E-Government Act, Pub. L. No. 107–347, § 208(b)(1)(A)–(B) .................................................. 25

E-Government Act, Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II) ................................................ 26

## FEDERAL RULES OF CIVIL PROCEDURE

F.R.C.P. 12(b)(6) ............................................................................................... 1, 2, 10, 11

## EXECUTIVE ORDERS & REGULATIONS

Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar. 25, 2025) ...................................................... 7

68 Fed. Reg. 47610-01 (Aug. 11, 2003) .............................................................................. 24

70 Fed. Reg. 43904-01 (July 29, 2005) ............................................................................... 25

82 Fed. Reg. 24147-01 (May 25, 2017)......................................................................... 25

90 Fed. Reg. 48948-01 (Oct. 31, 2025) ........................................................................ 8

OMB, Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, M-03-22 (Sept. 26, 2003) .................................................................................................. 26


**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 4, cl. 1......................................................................................... 1


**OTHER AUTHORITIES**

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. ................................................................................................... 8

*ERIC Project FAQs*, N.M. Sec'y of State, https://www.sos.nm.gov/voting-and-elections/voter-information-portal-nmvote-org/eric-project-faqs/ (last visited Jan. 12, 2026) ............................ 6

Julia Goldberg, *NM Secretary of State signs letter to feds about voter roll data*, Source NM (Nov. 20, 2025), https://sourcenm.com/2025/11/20/nm-secretary-of-state-signs-letter-to-feds-about-voter-roll-data/ ...................................................................................................... 9

*How ERIC Works*, ERIC, https://ericstates.org/how-does-it-work/ (last visited Jan. 12, 2026)..... 6

H.R. Rep. No. 86-956 (1959)...................................................................................... 16

Judge J. Michelle Childs, *Voting Rights: Mechanism for Social Change*, 76 Ala. L. Rev. 603 (2025)........................................................................................................................ 16

Sarah N. Lynch, *US Justice Dept considers handing over voter roll data for criminal probes, documents show*, Reuters (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09 ................. 8

Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/basis (last visited Jan. 11, 2026) ........................................................................................................... 13

OMB, Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, M-03-22 (Sept. 26, 2003 ................................................................................................. 26

Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/ ........................................................................................................................ 8

*Technology & Security Overview*, ERIC, https://ericstates.org/security/ (last visited Jan. 12, 2026) ......................................................................................................................... 6-7

Colin Wood, *DHS lookup tool may expose sensitive data of hundreds of millions of Americans, Secretaries of State warn*, StateScoop (Dec. 2, 2025), https://statescoop.com/dhs-save-elections-secretaries-state-letter/ ................................................................................................... 9

Defendant Maggie Toulouse Oliver, in her official capacity as New Mexico Secretary of State, respectfully moves this Court to dismiss Plaintiff United States' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has not alleged facts stating a claim for relief under Title III of the Civil Rights Act of 1960. Additionally, the Complaint and appended material show Plaintiff's request for personally identifying information about New Mexico's registered voters, and compliance with it, is unlawful under federal and state privacy laws, warranting dismissal based on the affirmative defense of illegality. The grounds for this Motion are set forth as follows. Secretary Toulouse Oliver requests oral argument on this motion.

## INTRODUCTION

"[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives.'" *Tashjian v. Repub. Party of Conn.*, 479 U.S. 208, 217 (1986) (quoting U.S. Const. art. I, § 4, cl. 1). This "broad power" includes the authority to regulate voter registration and maintain voter rolls. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8–9 (2013) (Elections Clause's grant of power to States "embrace[s] authority to provide a complete code for congressional elections" (citation modified)). Thus, as a default matter, the Constitution assigns the responsibility for determining voter eligibility and maintaining voter lists to the states. *See id.* at 17.

In May 2025, the U.S. Department of Justice ("DOJ") began sending letters to election officials in dozens of states and the District of Columbia, demanding entire, unredacted copies their voter registration rolls. New Mexico Secretary of State Maggie Toulouse Oliver ("Secretary Toulouse Oliver") offered the DOJ access to a redacted copy with personally identifiable information removed, as required under state and federal law. Since then, the DOJ has, to date,

1

selectively filed suit against the District of Columbia and twenty-three states, including New Mexico, that did not provide the list as demanded, alleging that that the agency requires the voter lists to assess list-maintenance practices. The DOJ brought the pending suit pursuant to Title III of the Civil Rights Act of 1960, seeking a court order compelling production of the data it seeks.

Defendant Secretary Toulouse Oliver respectfully requests the Court dismiss the DOJ's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff DOJ has not identified facts or legal authority demonstrating that Title III authorizes its demand or that Secretary Toulouse Oliver acted unlawfully by offering only a redacted voter registration list. In addition, compliance with the demand, whether voluntary or pursuant to Court order, would be illegal under various federal and state privacy laws. Thus, dismissal is also warranted based on the affirmative defense of avoidance of illegality.

## I.    STATEMENT OF FACTS

### A.  New Mexico has implemented a system for maintaining an accurate voter registration list.

In New Mexico, voter data is kept in a specialized, secure database known as SERVIS (the State Elections, Registration & Voting Integrity Systems) that is maintained by the Secretary of State's Office ("Office"). This database contains personally identifiable information ("PII") for each of New Mexico's 1,396,404 voters. *See* N.M. Stat. Ann. § 1-5-30 (2019) (establishing electronic voter registration management system). SERVIS receives PII from completed voter registration application forms submitted in person, by mail, or online. *Id.* §§ 1-4-5.4 (2019) (describing contents and use of voter registration forms), 1-4-2(A) (2019) (explaining methods for submission); N.M. Code R. § 1.10.35.8 (2025) (describing procedures for processing and verifying submissions).

The data fields in SERVIS include the voter's name, gender, physical address, mailing address, phone number (at the voter's option), email address (at the voter's option), current party affiliation, date of birth, date of registration, and history of all state and local elections in which the voter has participated. N.M. Stat. Ann. §§ 1-4-5.4(B), 1-4-47(B) (2023); N.M. Code R. § 1.10.35.8(A)(4). Each registration record also includes the voter's driver's license number, nondriver identification card number, or full social security number, which the state uses for identity verification. N.M. Stat. Ann. §§ 1-4-5.4(B); 1-4-47(B); N.M. Code R. § 1.10.35.8(A)(4).

The Secretary of State can generate registration information in list form but is prohibited from publishing certain voter information, particularly PII. New Mexico law provides that social security numbers, dates of birth, and driver's license numbers must be redacted before release of any voter registration list. N.M. Stat. Ann. § 1-4-5.5(B) (2015); 66-2-7.1 (2025). State law provides additional privacy protection for participants in confidential address programs, such as victims of domestic violence and public officials. *Id.* §§ 1-6C-3 (2019), 1-6C-4 (2019), 1-1-27.1 (2023); 40-13B-3 (2023). Thus, New Mexico's publicly disclosed voter registration lists include only a registrant's full name, gender, address (if not confidential), birth year, phone number (only if permitted by the voter), political party affiliation, registration date, voting history, and voting county, precinct, and district information. *See id.* §§ 1-4-5.5(B), 1-6C-3, 1-6C-4, 1-1-27.1.

1. **Title III of the Civil Rights Act of 1960, the National Voter Registration Act, and the Help America Vote Act set forth minimum requirements for states' maintenance, revision, and inspection of voter registration lists.**

The DOJ invokes three inapposite federal statutes to support its nationwide campaign to compile voters' sensitive personal information in a centralized federal database. First is Title III of the Civil Rights Act of 1960 ("CRA"), a civil rights-era tool that allows the U.S. Attorney General

to demand inspection of election records when necessary to *enforce* voting rights. This statute creates a limited duty for designated state election officials "to retain and preserve" certain federal election records. 52 U.S.C. § 20701. That duty involves the preservation, "for a period of twenty-two months from the date of any general, special, or primary election" for federal offices, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." *Id*. To enforce this limited duty for state election officials, the CRA's Title III grants proportional—that is, limited—investigative authority to the DOJ. The DOJ may request and receive from states "any record or paper required [to be maintained] by section 20701," provided that it furnishes a written demand setting forth a "statement of the basis and the purpose therefor." *Id.* § 20703. A state custodian's willful failure to comply with this provision can result in imposition of a fine and/or up to one year in prison. *Id.* § 20701.

The National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., requires states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters [by reason of death or change in residence] from the official lists of eligible voters." *Id.* § 20507(a)(4). The NVRA is intended to facilitate "the duty of the Federal, State, and local governments to promote the exercise" of the fundamental right to vote. *Id.* § 20501(a)(2). Subject to certain restrictions to protect voters from being wrongfully purged from voting lists, the NVRA preserves individual states' traditional authority for administering elections, permitting states flexibility and autonomy to design and operate a list-maintenance program within the NVRA's general parameters. *See id.* § 20507(a)(4). In contrast to Title III, the NVRA's inspection clause requires states to "maintain for at least 2 years and . . . make available for public inspection and,

where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," excepting certain records not relevant to the instant dispute. *Id.* § 20507(i).

Finally, HAVA requires states to adopt "a system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters." *Id.* § 21083(a)(4)(A). HAVA also directs states to "implement, in a uniform and nondiscriminatory manner, a single, uniform, official, . . . computerized statewide voter registration list . . . that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." *Id.* § 21083(a)(1)(A). The statute further requires that state programs for maintaining voter registration lists "be conducted in a manner that ensures that . . . only voters who are not registered or who are not eligible to vote are removed from the computerized list; and duplicate names are eliminated from the computerized list." *Id.* § 21083(a)(2)(B), (B)(i), (B)(ii). Within this framework, the "specific choices on the methods of complying with the requirements of [HAVA] shall be left to the discretion of the State." *Id.* § 21085.

**2. New Mexico's system for maintaining its voter registration list is created through statutes and regulations consistent with the State's Title III, NVRA, and HAVA obligations.**

In New Mexico, the Office uses SERVIS to maintain the official voter registration list as required by federal law. *See, e.g.,* N.M. Stat. Ann. § 1-5-3 (2005) (establishing voter records system pursuant to HAVA); N.M. Code R. § 1.10.35.9 (2025) (regulating file maintenance pursuant to the NVRA). In each county, a Board of Registration is charged with reviewing the list of eligible voters by mid-March following a general election and with directing the County Clerk to cancel the

registration of any voter who has failed to respond to a mailed confirmation notice and has failed either to appear to vote or to confirm in writing a change in residence. N.M. Stat. Ann. §§ 1-4-28(E) (2019), -34 (2023), -38 (2019). New Mexico state law sets forth the scenarios in which state officials must cancel registrations, including death, change in residence, and, under certain limited circumstances, by request of a voter. *Id.* §§ 1-4-22 (2019), -24 (2023), -25 (2009), -28, -30 (2011). State regulations contain detailed instructions for confirming the accuracy of its voter registration list, including through the use of duplicate searches and confirmation mailings to voters to verify residence, comparison of the voter registration list against state and federal felony incarceration records to confirm eligibility, and reliance on New Mexico Department of Health records to identify deceased voters. N.M. Code R. §§ 1.10.35.8, 1.10.35.9, 1.10.8.12 (2001).

New Mexico also participates in the Electronic Registration Information Center ("ERIC"), which stores voter data from multiple states in an encrypted and non-identifiable form. *See ERIC Project FAQs*, N.M. Sec'y of State, https://www.sos.nm.gov/voting-and-elections/voter-information-portal-nmvote-org/eric-project-faqs/ (last visited Jan. 12, 2026). ERIC continuously compares New Mexico's voter data with myriad other data sources to flag potentially inaccurate registrations. *See How ERIC Works*, ERIC, https://ericstates.org/how-does-it-work/ (last visited Jan. 12, 2026). ERIC helps the Office identify registrants who have moved or died, or who have duplicate records in the voter list. *See id.*

Notably, the data New Mexico transmits to ERIC is fundamentally different from the voter data sought by the DOJ through this litigation and its underlying demands to Secretary Toulouse Oliver. Prior to transmission to ERIC, voter data is encrypted into deterministic character strings called "hashes." *Technology & Security Overview*, ERIC, https://ericstates.org/security/ (last

visited Jan. 12, 2026). The hashing process allows ERIC to determine whether the transmitted data

match data from other sources, including data from other participating states, without having to

specifically identify the individual whose data is under review. *Id.* The data the DOJ currently

seeks, *i.e.*, unencrypted voter PII, is simply not available in or via ERIC.

**B.  In recent months, multiple federal agencies and officials have announced plans to create a nationwide voter database for purposes unrelated to federal election law enforcement.**

In March 2025, President Trump issued an Executive Order ("EO") titled "Preserving and

Protecting the Integrity of American Elections." Exec. Order No. 14,248, 90 Fed. Reg. 14005 (Mar.

25, 2025). In addition to attempting to create a requirement of documentary proof of citizenship—

a provision since enjoined by multiple federal courts—the EO directed federal agencies to analyze

state voter-list data. *Id.* § 2(a), (b). Specifically, the EO stated that

> the Department of Homeland Security, in coordination with the
> DOGE Administrator, shall review each State's publicly available
> voter registration list and available records concerning voter list
> maintenance activities as required by 52 U.S.C. 20507, alongside
> Federal immigration databases and State records requested,
> including through subpoena where necessary and authorized by
> law, for consistency with Federal requirements.

*Id.* §2(b)(iii).

Two months later, the DOJ began demanding detailed and comprehensive voter registration

data from states. To date, the DOJ has directed at least forty-three states and the District of

Columbia to supply their complete voter registration lists. In a private meeting with the National

Association of Secretaries of State in August 2025, Deputy Attorney General Michael Gates stated

that the DOJ would eventually make such requests to all fifty states and that the resulting federal

list would include at least partial Social Security numbers for every registered voter in the country.

7

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

In September 2025, the DOJ was in talks with the DHS about a partnership in which DOJ would compile the voter data that the DOJ had collected from states and transfer it to the DHS "for use in criminal and immigration-related investigations." Sarah N. Lynch, *US Justice Dept Considers Handing Over Voter Roll Data for Criminal Probes, Documents Show*, Reuters (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

In October 2025, the DHS issued a Systems of Records Notice ("SORN") describing a significant expansion to the Systematic Alien Verification for Entitlements ("SAVE") Program. "Department of Homeland Security/U.S. Citizenship and Immigration Services (USCIS)-004 Systematic Alien Verification for Entitlements Program (SAVE)," 90 Fed. Reg. 48948-01 (Oct. 31, 2025). The SAVE program, operated by DHS, tracks immigration status for all noncitizens who live in or have traveled to the United States. *Id.* at 48949. Earlier last year, DHS had altered the SAVE system to capture state voter rolls if uploaded to the system and to draw upon Social Security records, to enhance DHS' ability to confirm any individual's immigration status. Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, Stateline (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security/.

"Deeply concerned" over reports about the sharing of voter information between the DOJ and DHS, Secretary Toulouse Oliver, along with Secretaries of nine other states, sent a letter to the U.S. Attorney General and the Secretary of Homeland Security in mid-November requesting

8

information about the intended use of the voter data sought from their states. Julia Goldberg, *NM Secretary of State Signs Letter to Feds About Voter Roll Data*, Source NM (Nov. 20, 2025), https://sourcenm.com/2025/11/20/nm-secretary-of-state-signs-letter-to-feds-about-voter-roll-data/. The Secretaries expressed concern that the DOJ intended to use state voter data for immigration enforcement purposes. *Id.* To date, neither the Attorney General nor the Secretary of Homeland Security has provided any written response.

On December 1, 2025, Secretary Toulouse Oliver and Secretaries from eleven other states submitted a public comment on SAVE's expansion, stating their opposition to the expansion of the SAVE program on grounds that its use to verify voter eligibility is likely to misidentify eligible voters as non-citizens and to chill participation by eligible voters. Colin Wood, *DHS Lookup Tool May Expose Sensitive Data of Hundreds of Millions of Americans, Secretaries of State Warn*, StateScoop (Dec. 2, 2025), https://statescoop.com/dhs-save-elections-secretaries-state-letter/.

**C. The instant litigation is the latest attempt by the DOJ to obtain exhaustive, unredacted personal voter information from Secretary Toulouse Oliver since August 2025.**

By letter dated August 14, 2025, Assistant Attorney General for Civil Rights Harmeet Dhillon sent Secretary Toulouse Oliver a demand for New Mexico's voter registration list containing "all fields," which include the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number." Remarkably, the letter stated that the DOJ had already "received New Mexico's statewide voter registration list," even though the Secretary of State's Office had not sent the federal agency a voter registration list at any point during 2025. Secretary Toulouse Oliver responded on August 19, 2025, noting as much and asking how the agency had obtained the list. DOJ provided no

explanation and, three weeks later, reiterated its request for a voter registration list with "all fields." Pl.'s Mot. Compel Ex. 1, at 1, Dkt. No. 2-3. On September 22, 2025, Secretary Toulouse Oliver replied, offering access, either electronically or in-person, to a publicly available, redacted voter registration list.[1] Pl.'s Mot. Compel Ex. 2, at 1. This redacted voter registration list includes each voters' registration date, name, year of birth, residential and mailing addresses (if not confidential), party affiliation, voting district information, telephone number (if not prohibited by the voter), and election participation history. *See* N.M. Stat. Ann. §§ 1-4-5.5(B), 1-6C-3, 1-6C-4, 1-1-27.1. Secretary Toulouse Oliver explained that the state was legally precluded from providing the full voter registration list without the redactions, adding that the NVRA – which the DOJ cited as part of the basis for its investigative demand – does not require disclosure of PII. Pl.'s Mot. Compel Ex. 2, at 1. While the DOJ also invoked Title III as authorizing its demand, Secretary Toulouse Oliver pointed out that the statute required the DOJ to provide "a statement of the basis and purpose" for the demand. The DOJ had stated that "[t]he purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA," but had not identified any basis for the request such as alleged anomalies in the voter list or deficiencies in the state's list-maintenance program. Pl.'s Mot. Compel Ex. 1, at 2. The DOJ did not respond and instead filed this action almost three months later.

## II.    LEGAL STANDARD

A defendant is entitled to dismissal under Rule 12(b)(6) where a complaint's allegations, even if true, fail to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] For the Court's clarity, the only letter sent by Secretary Oliver to the DOJ in September 2025 was dated September 22, 2025. Pl.'s Mot. Compel Ex. 2, at 1. The DOJ's references to a September 23, 2025, letter all appear to refer to the letter sent on the 22nd. *See* Compl. ¶¶ 25–26.

662, 678 (2009) (citation modified). Because "a formulaic recitation of the elements of a cause of action" will not suffice, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable," *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). A plaintiff cannot avoid dismissal under Rule 12(b)(6) where a complaint is "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 662 (citation modified). On such a motion, a court may consider "[f]acts subject to judicial notice," as well as "documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Duprey v. Twelfth Jud. Dist. Ct.*, 760 F. Supp. 2d 1180, 1193 (D.N.M. 2009).

The Court also may grant a motion to dismiss based on an affirmative defense, "where the facts establishing the affirmative defense are apparent on the complaint's face." *Vigil v. Doe*, 405 F. Supp. 3d 1058, 1067 (D.N.M. 2019); *see also Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (permitting dismissal of a claim if "the complaint itself admits all the elements of the affirmative defense"). "[W]here there is no disputed issue of fact raised by an affirmative defense, or the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense it is appropriate and expedient to dispose of a claim by a motion to dismiss under Rule 12(b)." *Frost v. ADT, LLC*, 947 F.3d 1261, 1267 (10th Cir. 2020) (quotation marks and citation omitted). Illegality is one such affirmative defense, whether the illegality arose in plaintiff's conduct giving rise to the asserted legal claim or would arise in in the relief requested. *See, e.g.*, *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1260–61 (D. Colo. 2022) (considering illegality

affirmative defense on motion to dismiss where, among other things, requested relief would involve directing defendants to engage in unlawful conduct); *In re Malul*, 614 B.R. 699, 708 (Bankr. D. Colo. 2020) (evaluating motion to dismiss based on affirmative defense that note sought to be enforced by plaintiff was "intrinsically illegal").

## III.    ARGUMENT

Here, dismissal of Plaintiff's Complaint is warranted because the DOJ has not and cannot establish entitlement to the voter information it seeks. First, Title III of the CRA does not grant the DOJ affirmative authority to collect or review the individual-level voter information described in the Complaint or in its underlying demand to Secretary Toulouse Oliver. Having failed to identify any alternate basis for its data demand, the DOJ has not plausibly alleged any entitlement to relief or that Secretary Toulouse Oliver has unlawfully withheld the information requested. Second, the DOJ's demand would require the state to violate the Privacy Act of 1974 and state privacy laws. Similarly, the demand violates the procedural mandates of the E-Government Act. The DOJ has not shown that its demand is exempted from or otherwise not subject to these statutes.

**A. The DOJ cannot establish that its demand is authorized by the plain language of or consistent with the legislative purpose of Title III of the Civil Rights Act of 1960.**

**1. The DOJ has not satisfied Title III's requirement that the agency provide a written statement of "the basis and the purpose" for a demand.**

Title III of the CRA states that, when exercising authority to review or reproduce federal election records pursuant to its provisions, the DOJ's written "demand *shall* contain a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphases added). The statutory provision's use of the term "shall" indicates that provision of the statement is compulsory and not optional.

*E.g., Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("[T]he word 'shall' imposes a mandatory command."). Further, the use of the term "and" in this directive means that the DOJ must set forth both the "basis" and the "purpose," not one or the other. *See Pulsifer v. United States*, 601 U.S. 124, 133 (2024) ("[I]n grammatical terms," the term "and" "is of course a conjunction—a word whose function is to connect specified items."). "Purpose" is the "intention" behind or "reason" for the demand. *See Purpose*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/purpose (last visited Jan. 11, 2026). In contrast, "basis" is "something on which" the demand "is established or based." *See Basis*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/basis (last visited Jan. 11, 2026).

In its Complaint, the DOJ's sole allegation concerning this Title III mandate simply parrots the statutory language. Referencing its September 8, 2025, correspondence to Secretary Toulouse Oliver, the DOJ writes only, "The written demand 'contain[ed] a statement of the basis and the purpose therefor.' 52 U.S.C. § 20703." Compl. ¶ 28. The Complaint does not, however, identify any purpose for the DOJ's demand, and neither did the September 8 letter. At most, that letter states that "[t]he purpose of this request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." Pl.'s Mot. Compel Ex. 1, at 2. However, this goal cannot, as a matter of law, satisfy the "purpose" precondition for an exercise of the DOJ's Title III records inspection authority.

First, the NVRA and HAVA were enacted long after Title III of the CRA. Therefore, Congress could not possibly have intended for NVRA and HAVA enforcement to be part of the inspection authority it vested in the DOJ through Title III. *Cf. Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) (explaining that the United States Attorney General "is entitled to inspect and copy

13

all of the voter papers and records as defined" "in fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and 1960"). Congress's inclusion of separate records inspection provisions and enforcement mechanisms in the NVRA in 1993 and HAVA in 2002 provides further evidence that Title III's inspection or enforcement authority was not a general grant of power to the DOJ for all election law-related matters. *See* 52 U.S.C. §§ 20507(i), 20510, 21111. Had that been the case, Congress would not have needed to create NVRA- and HAVA-specific measures.

Even if this statement satisfies the letter and spirit of Title III's mandate that the DOJ state the *purpose* for its demand, the agency cannot dispute that it has failed to set forth the *basis*. While the Complaint states that, "Based on a review of the 2024 [Election Administration and Voting Survey (EAVS)], the Attorney General, acting through her representative, the Assistant Attorney General for Civil Rights, sent a letter to Secretary Toulouse Oliver on September 8, 2025, seeking information regarding New Mexico's compliance with federal election law," Compl. ¶ 18, this allegation cannot by itself satisfy pleading requirements. "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Khalik*, 671 F.3d at 1191. While this paragraph of the Complaint cites the September 8 letter, that letter itself makes no reference to a 2024 EAVS Report. *See* Pl.'s Mot. Compel Ex. 1. Similarly, the (unsigned) declaration of Senior Counsel to the Assistant Attorney General of the Civil Rights Division Maureen Riordan also contains no statement of the "basis" for the DOJ's investigative demand, let alone any mention of the 2024 EAVS Report.[2] *See* Riordan Decl., Dkt. No. 2-1.

---

[2] The *Lynd* court's recitation of language found sufficient for Title III's "basis and purpose" mandate in is illustrative. In that case, the DOJ's statement of basis and purpose was as follows:

In fact, in at least six of its lawsuits against states to obtain unredacted voter registration lists pursuant to Title III, the DOJ has used virtually identical, boilerplate language omitting any "basis" for its demands.[3] To find that such mechanical, copy-and-paste statements satisfy Title III's "statement of basis and purpose" requirement would effectively render that statutory provision meaningless. *See Albuquerque Cab Co., Inc. v. Lyft, Inc.,* 460 F. Supp. 3d 1215, 1224 (D.N.M. 2020); *In re Mallo*, 774 F.3d 1313, 1317 (10th Cir. 2014) (courts must construe a statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004))).

---

> This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction.
>
> The purpose of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred."

306 F.2d at 229 n.6 (citation modified). As reflected in the passage above, the DOJ made two separate statements: one providing the basis and one providing the purpose. Furthermore, the statement of the basis contained an allegation of the factual grounds underpinning the demand.

[3] In many demand letters, DOJ stated, in identical verbiage, that "[t]he purpose of this request is to ascertain [the state's] compliance with the list maintenance requirements of the NVRA and HAVA." The complaint allegations across its lawsuits against different states demanding voter registration lists are also identical and without explanation: "[t]he written demand 'contain[ed] a statement of the basis and the purpose therefor.'" N.M. Compl. ¶¶ 20, 28; Vt. Compl. ¶¶ 20, 28, *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Md. Compl. ¶¶ 25, 29, *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); R.I. Compl. ¶¶ 20, 28, *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Del. Compl. ¶¶ 23, 29, *United States v. Albence,* No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Wash. Compl. ¶¶ 22, 27, *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025). In fact, the Complaint against New Mexico appears to have copied and pasted verbatim from demands and lawsuits directed at other states. For example, the DOJ referred to a "Secretary Hanzas"—the Secretary of State of Vermont—when it presumably meant to refer to Secretary Oliver. *See* Mem. Supp. Mot. Compel 11, Dkt. No. 2-2.

Title III's mandate that the DOJ explain an investigative demand is a substantive requirement, not mere formality, based on the statute's plain text as well as its purpose. Congress enacted Title III to give the DOJ the power to protect the franchise, not engage in fishing expeditions to chill electoral participation or use voter data for objectives unrelated to review of a state's system for maintaining voter registration lists. More specifically, Congress's grant of Title III investigative authority to the DOJ was for the purpose of investigating potential violations of the right to vote by state actors, particularly along racially discriminatory lines. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Atty. Gen.*, 285 F.2d 430 (5th Cir. 1961) ("Title III provides . . . an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."); *United States v. Lynd*, 301 F.2d 818, 819 (5th Cir. 1962) ("The basis of the government's appeal . . . is its contention that it has been completely frustrated in an effort to obtain an order of the trial court putting an end to alleged racially discriminatory acts and practices."); H.R. Rep. No. 86-956, at 7 (1959) ("The purpose of Title III is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race."); *see also* Judge J. Michelle Childs, *Voting Rights: Mechanism for Social Change*, 76 Ala. L. Rev. 603, 609 (2025) ("[T]he Civil Rights Act of 1960 aimed to address rampant voter suppression and racially discriminatory restrictions on voting."). Title III was enacted to fill a gap in the DOJ's investigatory power under the Civil Rights Act of 1957, which gave the DOJ no suitable avenue for "access to voting records during the course of an investigation." *See* H.R. Rep. No. 86-956, at 7 (1959). Title III's authority assists the DOJ "during any investigation it may conduct on complaints of a denial to vote because of race." *Id.* This history

"leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote." *Rogers*, 187 F. Supp. at 853. DOJ admits its demand for New Mexico's voter list is not to further the kind of investigation into racially discriminatory voting practices for which Title III was created.

### 2. Title III does not authorize DOJ's demand or disclosure of the data it seeks.

The DOJ cites Title III as the sole authority for its voter information demand. However, the statute does not require or even enable states to disclose information whose release or collection is prohibited by other state or federal laws. Title III also does not prohibit redaction of information when a list is released. *E.g., Steelcase, Inc. v. United States*, 165 F.3d 28, 4 (6th Cir. 1998) ("[I]t would . . . be inappropriate for this Court to read into the statute phantom requirements that the plain language does not begin to support."); *Lynd*, 306 F.2d at 231 (Title III investigation only reached "public records which ought ordinarily to be open to legitimate reasonable inspection," not "confidential, private papers and effects"). New Mexico law requiring the redaction of certain sensitive and confidential information before any release of voter registration list information, *see, e.g.*, N.M. Stat. Ann. §§ 1-4-5.5(B), 1-6C-3, 1-6C-4, 1-1-27.1, is thus consistent with Title III.

DOJ's purported "purpose" here is to investigate New Mexico's compliance with federal election laws, including the NVRA and HAVA. Compl. ¶¶ 18, 20. But courts have held that the disclosure provision of the NVRA does not prevent redaction to protect voter privacy and comply with state law. *See Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1083 n.14 (10th Cir. 2025) ("To the extent the State wishes to redact appropriate personal information before providing the voter data, the NVRA does not prohibit that limitation."); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (same). HAVA has no provision requiring the public

disclosure of records at all, let alone a provision precluding states from redacting confidential and sensitive information.

Thus, even if the DOJ were entitled to the records it seeks using its Title III authority, personal identifying information, including social security numbers and driver's license numbers, must be redacted. This is especially true where the DOJ has not explained (through a statement of basis and purpose) how every data field in SERVIS about registered voters, let alone the PII that New Mexico ordinarily redacts, is relevant to any investigation into list maintenance practices. Likewise, the DOJ has not explained any connection between its purported purpose (ensuring compliance with NVRA and HAVA) and its sweeping data demand. As discussed in Section I.A.1 *supra*, the NVRA and HAVA require only that states implement a "general program" that "makes a reasonable effort" to remove voters who have moved or died. Neither a single, point-in-time snapshot of a statewide voter list nor the confidential portions of that list are relevant to assessing the *procedures* employed by the Secretary of State's Office to maintain the registration list.

**B. Compliance with the DOJ's demand for all voter data stored in SERVIS, including PII, would be illegal under multiple federal privacy protection statutes.**

The DOJ invokes Title III and only Title III as authority for its demand for New Mexico's comprehensive and unredacted voter registration list. However, disclosure of this information is substantively and procedurally barred by the Privacy Act of 1974 and the E-Government Act. As discussed in Section III.A.2. *supra*, no provision of Title III exempts DOJ from other federal statutes governing disclosure, maintenance, and use of the information contained in these records. Thus, Secretary Toulouse Oliver's refusal to acquiesce to the DOJ's demand is justified by the lack of any legal basis for the request, as well as avoidance of committing illegal acts to the extent

disclosure would violate the aforementioned federal laws.[4] Because the DOJ also has not pointed to any equitable or legal authority that would render a Court order compelling production of the requested data lawful under these statutes, the DOJ requests relief that would be illegal. Accordingly, DOJ's Complaint must be dismissed based on the affirmative defense of illegality.

1. **The Privacy Act of 1974 bars the DOJ from gathering, let alone using, information about an individual's exercise of First Amendment rights.**

The Privacy Act of 1974, 5 U.S.C. § 552a, "'protect[s] the privacy of individuals identified in information systems maintained by Federal agencies' by preventing the 'misuse' of that information" through procedural safeguards and substantive limitations on collection and use of data about individuals. *Thomas v. U.S. Dep't of Energy*, 719 F.2d 342, 345–46 (10th Cir. 1983) (quoting Privacy Act). The statute's legislative history "indicates that Congress was concerned predominantly with the increasing use of computers and sophisticated information systems and the potential abuse of such technology." *Id.* at 345. Accordingly, the statute bars federal agencies from "maintaining, collecting, using, or disseminating records" "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained." 5 U.S.C. §§ 552a(e)(7), (a)(3). Even where First Amendment rights are not implicated, the Act requires federal agencies to follow certain procedures before they "maintain, collect, use, or disseminate" any compilation of records that is searchable by individual. *Id.* §§ 552a(a)(3), (a)(5), (e)(4), (f). The DOJ's demand for voter

---

[4] Voluntary compliance or a court order directing Secretary Oliver to produce the requested unredacted records would also result in willful violation of *state* laws that compel redaction of certain sensitive and confidential data prior to public disclosure. *See, e.g.*, N.M. Stat. Ann. §§ 1-4-5.5(B), 1-6C-3, 1-6C-4, 1-1-27.1.

information is subject to the former substantive prohibition and latter procedural precondition. Given the DOJ's failure to identify facts that could establish an exception to or satisfaction of these Privacy Act provisions, the Complaint must be dismissed on the affirmative defense of illegality.

### a. The DOJ's demand is a federal agency request for data about the exercise of New Mexico voters' First Amendment rights.

A "record" subject to the Privacy Act is "any item, collection, or grouping of information about an individual that is maintained by [a federal] agency . . . and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(3). The DOJ has demanded New Mexico produce a voter registration list by name and with other personal identifiers and therefore is covered by the statute. *See* Compl. ¶ 20. Further, the requested records reveal an individual's exercise of rights and conduct protected by the First Amendment. If New Mexico were to disclose "all fields" in its voter registration database SERVIS, the DOJ would obtain each registered voter's electoral activity and political party affiliation. Both reveal how each individual exercised their right to political expression or speech, freedom of association, and the right to petition the government—each of which carry First Amendment protections. Whether an individual casts a ballot in a given election year can be a form of political protest, much the same as whether an individual chooses to register to vote. *See Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (registration history implicates First Amendment exercise because declining to register can constitute political protest). As for whether an individual opts to affiliate with a political party, "the right of individuals to associate for the advancement of political beliefs" is a quintessential example of "freedom of association . . . protected by the First Amendment." *Williams v. Rhodes*, 393 U.S. 23, 30 (1968); *see also Ill. State Bd. of Elections v.*

*Socialist Workers Party*, 440 U.S. 173, 184 (1979) (voting allows individuals to "express their political preferences"); *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 (1990) (First Amendment protects "freedom to believe and associate, or to not believe and not associate").

Thus, if the DOJ obtains the information it has requested, whether via Secretary Toulouse Oliver's voluntary production or as a result of court order, the federal agency will be "maintain[ing]" a group of records covered by the Act. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" as including "maintain, collect, use, or disseminate"). Courts are clear that the Privacy Act's prohibition precludes the DOJ's mere collection of First Amendment exercise information, even if the agency does not use or distribute it, *see, e.g.*, *Gerlich v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1, 13 (D.D.C. 2009), and regardless whether the agency incorporates it into any system of records or references a covered individual's name, *see, e.g., MacPherson v. I.R.S.*, 803 F.2d 479, 481 (9th Cir. 1986); *Boyd v. Sec'y of the Navy*, 709 F.2d 684, 687 (11th Cir. 1983).

**b.  The DOJ cannot establish any exemption from or exception to the Privacy Act.**

The Privacy Act's bar against federal agency collection or use of information about an individual's exercise of First Amendment rights is subject to three exceptions: express statutory authorization, consent of the individual in question, or when the collection or use is "pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). The allegations presently before the Court cannot establish that any of these "very circumscribed" exceptions apply. *Albright v. United States*, 631 F.2d 915, 919 (D.C. Cir. 1980).

First, the DOJ has not identified any law that authorizes it to collect or use New Mexico's unredacted voter registration list.  Second, it has certainly not received authorization to do so from the over one million voters in New Mexico. Third, the DOJ's asserted purpose in requesting New

21

Mexico's voter registration list is to obtain "information regarding New Mexico's compliance with federal election law," Compl. ¶ 18, or, more specifically, "compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 20. However, as explained in Section III.A above, Title III does not authorize collection of the data requested, let alone use to enforce the NVRA or HAVA. The DOJ has not invoked the NVRA's or HAVA's enforcement mechanisms, 52 U.S.C. §§ 20507(i), 20510, 21111. Thus, the DOJ's activity is not "within the scope of an *authorized* law enforcement activity" under Title III. 5 U.S.C. § 552a(e)(7) (emphasis added).

Finally, even if the DOJ's demand was for an "authorized law enforcement activity," a static snapshot of all data maintained about New Mexico's registered voters is not pertinent to or within the scope of an investigation into New Mexico's list-maintenance practices. Congress has left "the methods of complying" with the NVRA's and HAVA's list-maintenance obligations to state discretion. 52 U.S.C. §§ 21085, 20507(a)(4). The DOJ's enforcement role is to evaluate if New Mexico has a "general program" and "makes a reasonable effort" to remove voters who have relocated or died. *Id.* § 20507(a)(4) (NVRA), § 21083(a)(4) (HAVA); Compl. ¶¶ 12, 15 (citing NVRA and HAVA); *Bellitto v. Snipes*, 935 F.3d 1192, 1202–03 (11th Cir. 2019). This reasonable effort "need not be perfect, or even optimal, so long as it remains within the bounds of rationality." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025). The dataset requested—one that does not reveal any changes in the registration list over time—simply has no bearing on whether New Mexico's list-maintenance procedures "make a reasonable effort" to remove ineligible voters. Similarly, the ordinarily redacted portions of the voter registration list are unrelated to the reasonableness of the state's list-maintenance procedures. Because the records requested by the DOJ have "at best only speculative relevance to an unstated law enforcement

purpose," this exception is not satisfied. *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1299 (9th Cir. 2019). Neither the DOJ's Complaint nor any appended exhibits indicate it has even asked Secretary Toulouse Oliver to explain New Mexico's list-maintenance procedures, the natural first step in analyzing whether New Mexico makes "a reasonable effort" to remove ineligible voters. Because the DOJ is not acting for any purpose authorized by Title III, it cannot rely on any Section 552a(e)(7) exception. Given the illegality of the DOJ's demand under the Privacy Act, the Court should dismiss the Complaint.

### c. The DOJ has not met the Privacy Act's public and inter-agency notice prerequisites for collecting or using data that is identifiable by individual.

Even if the DOJ were entitled to access the voter information it seeks, it has not complied with the stringent procedural mandates of the Privacy Act. Before establishing or revising a "system of records," the Act requires an agency to publish a detailed notice (a "System of Records Notice" or "SORN") in the Federal Register to alert the public. 5 U.S.C. § 552a(e)(4). The agency must also notify the Office of Management and Budget ("OMB") and Congress. *Id.* § 552a(r). A "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or" other individual identifier. *Id.* § 552a(a)(5). The unredacted voter registration list requested by the DOJ is a group of records that can be queried based on individual identifiers and therefore triggers the SORN requirement. However, the DOJ has not identified in the Complaint or any correspondence with Secretary Toulouse Oliver any SORN specific to this request or any notice it provided to OMB and Congress concerning this data demand.

The DOJ's claim that its demand falls under the SORN titled "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01 (Aug. 11, 2003), Compl. ¶ 23, fails as a matter of law. Crucially, a SORN must include certain details that identify the system of records covered, such as the system's "name and location," the "categories of individuals on whom records are maintained in the system," "the categories of records maintained in the system," "each routine use of the records contained in the system, including the categories of users and the purpose of such use," and "the categories of sources of records in the system." *Id.* § 552a(e)(4)(A)–(D), (I). Additionally, the SORN must include policies and procedures regarding storage, access, management, and retention of the system of records. *Id.* § 552a(e)(4)(E)–(H).

None of the details listed in the Central Civil Rights Division Index File SORN give adequate notice as to the system of records at issue here. This SORN was issued in connection with proposed routine uses of records in the Civil Rights Division regarding specific investigations, not the sweeping collection of voter data in a state without any factual basis for the request. First, the SORN's categories of covered individuals are only a subset of individuals represented in the voter registration list, such as "subjects of investigations," "victims," and "potential witnesses." 68 Fed. Reg. 47610–01 at 47611. Second, the SORN describes the categories of covered records as "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." *Id.* None of these record types can reasonably be read to include a statewide voter registration database that includes PII such as drivers' license information or Social Security numbers. Further, the unredacted voter registration list is not related to the *valid* enforcement of civil rights laws or other duty of the Civil Rights Division, as explained in Section III.A. Third,

24

the SORN states that the possible sources of covered information "may be an agency or person who has or offers information related to the law enforcement responsibilities and/or other statutorily-mandated duties of CRT." *Id.* at 47613. None of these is sufficient to put a reasonable person on notice of the DOJ's instant effort to collect the entirety of New Mexico's voter registration list, with every data field stored in SERVIS. The subsequent amendments to this SORN cited in the DOJ's Complaint do not cure its inapplicability to the information it demands. 70 Fed. Reg. 43904-01 (July 29, 2005) (adding routine uses not relevant here); 82 Fed. Reg. 24147-01 (May 25, 2017) (same).

DOJ's failure to allege facts demonstrating compliance with the Privacy Act's SORN publication and inter-agency notice requirements establishes that compilation of unredacted voter registration information is impermissible under the Privacy Act. Because the DOJ's demand is unlawful, dismissal of the Complaint is warranted based on the affirmative defense of illegality.

### 2. The DOJ has not conducted a privacy impact assessment, as required by the E-Government Act prior to collecting information like that requested.

The DOJ's demand for New Mexico's unredacted voter registration list also violates the E-Government Act, Pub. L. No. 107–347, § 208(b), 116 Stat. 2899 (2002). The E-Government Act requires a federal agency, including the DOJ, to conduct a "privacy impact assessment" ("PIA") prior to "initiating a new collection of information" using information technology, that includes "any information in an identifiable form permitting the physical or online contacting of a specific individual" provided that identical questions have been posed to ten or more people. *Id.* § 208(b)(1)(A)–(B); *see also Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017). The names, addresses, and additional sensitive

voter information in the unredacted registration list requested by the DOJ constitute personal information protected by the Act. *See* Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II); OMB, Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, M-03-22 (Sep. 26, 2003) (explaining that "information in identifiable form" includes information "that directly identifies an individual (*e.g.*, name, address, social security number [or other identifier])"); Compl. ¶ 20 (requesting "all fields"). However, the DOJ has failed to allege that it conducted any related PIA in its Complaint or underlying correspondence with Secretary Toulouse Oliver.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court grant the motion with prejudice.

Dated: January 13, 2026                        Respectfully Submitted,

**RAÚL TORREZ**
**ATTORNEY GENERAL**
**NEW MEXICO DEPARTMENT OF**
**JUSTICE**

*/s/ James Grayson*
James Grayson
Chief Deputy Attorney General
Anjana Samant
Deputy Counsel for Impact Litigation
Olivia den Dulk
Bailey Quinn Colfax
Assistant Attorneys General
408 Galisteo Street
Santa Fe, NM 87501
Tel. (505) 490-4060
jgrayson@nmdoj.gov
asamant@nmdoj.gov
odendulknmdoj.gov
bcolfax@nmdoj.gov

*Counsel for Defendant Secretary*
*Maggie Toulouse Oliver*

## **CERTIFICATE OF CONFERRAL**

Pursuant to D.N.M.LR-Civ.-7.1(a), counsel for Defendant contacted counsel for Plaintiff and Intervenor Defendants via email on January 12, 2026, to seek their position on the motion. Plaintiff opposes this motion; Defendant Intervenors do not oppose.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system causing all counsel of record to be electronically served.

*/s/ James Grayson*
James Grayson