IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,<br><br>        Defendant. | Case No. 1:25-cv-1193 (LF) (JFR) |

**BRIEF OF AMICUS CURIAE THE DEMOCRATIC NATIONAL COMMITTEE**

      Federal law authorizes the Attorney General to demand voter registration records, but she cannot do so based on pretext or a misrepresentation. Rather than disclosing "the basis and the purpose" for its demand for the complete, unredacted New Mexico voter file—as Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20703, requires—the Department of Justice suggests it is engaged in routine enforcement of federal civil rights laws. To the contrary, the Justice Department intends to transfer the personally identifying information and party affiliation of every registered voter in New Mexico to the Department of Homeland Security and is reportedly consolidating state databases into a national voter file. This pretext and deception invalidates the Title III demand. A Department of Justice that cannot be forthright with state officials cannot be trusted with the personal information of every registered voter in New Mexico, including more than 570,000 registered Democrats. The Democratic National Committee submits this amicus brief to protect the privacy interests of its members and the interests of its candidates and campaigns in free and fair elections and respectfully requests that this Court grant Defendants' motion to dismiss.

1

**I.      INTEREST OF AMICUS CURIAE**

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States. Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democratic candidates nationwide, including by organizing citizens to register to vote and to cast ballots in favor of Democratic candidates. The DNC represents millions of voters, including over 570,000 registered Democrats in New Mexico.

The U.S. Department of Justice (DOJ) has demanded a copy of New Mexico's complete, unredacted voter registration list. This demand forces Democrats to choose between democratic participation and the privacy and security of their personal information. Conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). The concerns of ordinary Democrats are amplified by uncertainty as to the intended use of their data. In turn, the DNC has a significant protectable interest in the success of Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest. *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020).

**II.     BACKGROUND**

In June 2025, DOJ began sending letters to state officials demanding complete, unredacted copies of state voter files, and a senior official eventually acknowledged that DOJ intends to send demands to all 50 states. *See* Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline, Aug. 1, 2025 (Ex. 1). Early letters indicated that the files would be used to oversee "HAVA compliance" or "full compliance with the NVRA." *E.g.*, Let. from Maureen Riordan,

U.S. Dep't of Justice, to Steve Simon, Minn. Sec'y of State (June 25, 2025) (Ex. 2); Let. from Michael E. Gates, U.S. Dep't of Justice, to Deirdre Henderson, Lt. Gov. of Utah (July 15, 2025) (Ex. 3). However, DOJ has publicly confirmed that it is sharing lists it receives with the Department of Homeland Security (DHS), and reporting indicates that DOJ is developing a national voter file. *See* Tr. 120:6-121:2, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Dec. 12, 2025) (Ex. 4); Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025 (Ex. 5) (quoting DOJ and DHS statements); Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025 (Ex. 6).

In July 2025, Justice Department officials from both the Criminal Division and the Civil Rights Division reached out to New Mexico Secretary of State Maggie Toulouse Oliver to discuss a "potential information sharing agreement" concerning voter registration records. Julia Goldberg, *Federal Officials Want New Mexico Voter Rolls*, Source NM, Aug. 28, 2025 (Ex. 7). On September 8, DOJ sent a formal letter to New Mexico Secretary Toulouse Oliver demanding an unredacted copy of New Mexico's statewide voter registration list, pursuant to Section 11 of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20510; Section 401 of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 41111; and Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701-06. *See* Sept. 8 Let., ECF No. 2-3. The letter indicated that the requested copy of the statewide voter registration list "should contain *all fields*," including "the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number," and represented that "the purpose of the request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 1-2. On September 22, 2025, Secretary Toulouse Oliver offered to

3

provide a redacted voter file and requested further information concerning Privacy Act compliance and the intended use of the data before providing "an unredacted electronic copy of voter records." Sept. 22 Let., ECF No. 2-4.

On December 2, the United States filed suit against Secretary Toulouse, demanding production of the unredacted New Mexico voter file. *See* Compl., ECF No. 1. That same day, the United States filed a "Motion [to] Compel Production of Records." Mot. to Compel, ECF No. 2. On January 13, Secretary Toulouse Oliver moved to dismiss and filed a brief in opposition to the motion to compel. N.M. Mot., ECF No. 35; N.M. Opp., ECF No. 37.[1]

### III. APPLICABLE LAW

Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701–06, dictates that "every officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election], all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" or transfer such materials to another officer of election or designated custodian. 52 U.S.C. § 20701. In turn, "[a]ny record or paper required by [Title III] to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having

---

[1] DOJ has thus far sued 23 states and the District of Columbia for unredacted voter files. *See* U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025) (Ex. 8); U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025) (Ex. 9); U.S. Dep't of Justice, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 3, 2025) (Ex. 10); U.S. Dep't of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025) (Ex. 11); U.S. Dep't of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025) (Ex. 12); U.S. Dep't of Justice, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (Jan. 6, 2026) (Ex. 13). DOJ has also obtained or is obtaining another 15 states' complete, unredacted voter files through voluntary disclosures or memoranda of understanding. *See* Ex. 4, Weber Tr. 88:24-90:18.

custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." *Id.* § 20703. "This demand shall contain a statement of the basis and the purpose therefor." *Id.* "The United States district court for the district in which a demand is made pursuant to [Title III], or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

IV. **ARGUMENT**

DOJ has no legal basis to obtain the complete, unredacted New Mexico voter file, including voters' dates of birth, Social Security numbers, driver's license numbers, and partisan affiliations. By offering mere pretext rather than an honest statement of "the basis and the purpose" for the demand, the Attorney General has forfeited Title III authority. 52 U.S.C. § 20703. Title III requests are subject to "appropriate process," 52 U.S.C. § 20705, scrutiny the instant request cannot bear. Because the United States' complaint does not state a claim upon which relief can be granted, this Court should grant Secretary Toulouse Oliver's motion to dismiss.

A. **DOJ Has Obscured the True Basis and Purpose for Its Voter File Demand.**

DOJ's claim seeking the complete, unredacted New Mexico voter file should be dismissed because the voter file demand did not state "the basis and the purpose therefor." 52 U.S.C. § 20703; *see also* N.M. Mot 12-17; N.M. Opp. 18-19. Title III requires candor between federal officials and state and local election administrators who safeguard voters' sensitive personal information. *See* 52 U.S.C. § 20703; *see also CFPB v. Accrediting Council for Independent Colleges & Secondary Schs. (ACICS)*, 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigating demand "is measured by the stated purpose," making notification of purpose "an important statutory requirement"). Yet DOJ has provided New Mexico and its

5

citizens less than a half-truth. DOJ told Secretary Toulouse Oliver that the "purpose of the request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." Sept. 8 Let. at 2. However, DOJ has publicly confirmed that it is sharing voter files with DHS—the names, addresses, and other sensitive personally identifiable information of registered voters—and reporting indicates that DOJ is compiling a national voter file for its own use. *See DOJ Is Sharing State Voter Roll Lists with Homeland Security*, *supra*; *Trump Administration Quietly Seeks to Build National Voter Rolls*, *supra*. Neither action is related to NVRA and HAVA enforcement.[2]

Title III demands a statement of "*the* basis and *the* purpose" for the demand, not merely *a* basis and *a* purpose. 52 U.S.C. § 20703 (emphasis added). By twice using the definite article, Title III requires the Attorney General to offer "a discrete thing": the complete basis and purpose of the request and not merely one basis and purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between definite and indefinite article). Without a complete statement of the basis and the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [Justice Department] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III requests cannot be "used without restraint"). Ultimately, "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be . . .

---

[2] DOJ similarly invoked the NVRA and HAVA when requesting records from Fulton County, Georgia related to the 2020 Presidential election, even while claiming its actual interest was "transparency." Oct. 30 Let. (Ex. 14). Repeat demands for records based on pretextual invocation of the NVRA and HAVA further undercut purported reliance on those statutes here.

misrepresentations." *Universal Health Servs. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016); *cf. Dep't of Commerce v. New York*, 588 U.S. 752, 781-85 (2019) (setting aside agency action due to pretextual invocation of the Voting Rights Act). Thus, DOJ's refusal to be forthright with state officials and registered voters about the intended use of sensitive personal information is fatal to the demand.

DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA and HAVA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority). Even if DOJ were only interested in comparing the New Mexico voter file with DHS data—which might not require transferring voter data to DHS custody—such database matching would not advance NVRA and HAVA enforcement. The NVRA's affirmative list maintenance mandate concerns only deceased registrants and those who are no longer eligible based on a change of address. *See* 52 U.S.C. § 20507(a)(4); *see also, e.g.*, *Am. Civ. Rights Union v. Phila. City Comm'rs* (*ACRU*), 872 F.3d 175, 182 (3d Cir. 2017) ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away."). HAVA specifies that appropriate officials must remove voters from statewide voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters . . . consistent with the [NVRA]," *id.* § 21083(a)(4)(A), and this provision does not "broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *see also ACRU*, 872 F.3d at 184-85 (rejecting contention that HAVA "augment[s]" NVRA list maintenance requirements); 52 U.S.C. § 21083(a)(2)(B) (guidelines for list maintenance); 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA). Federal data concerning deaths and changes of address are held by the Social Security

7

Administration and the U.S. Postal Service respectively, not DHS. *See* 42 U.S.C. § 1306c(d) (defining the Social Security Death Master File); 52 U.S.C. § 20507(c)(1) (describing use of Postal Service address information by election officials); *see also* 39 C.F.R. § 122.2(b) (providing for prompt transmission of change-of-address information to election officials); Exec. Order. No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (ensuring that the Social Security Administration allows election officials to access the Death Master File). Thus, DHS data is not relevant to NVRA and HAVA enforcement.

Adding the complete, unredacted New Mexico voter file to a DOJ national voter database also does not advance even the pretextual purpose of investigating New Mexico's NVRA and HAVA compliance. The NVRA requires that states conduct only a "reasonable effort to remove the names of ineligible voters by reason of the death of the registrant[] or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). With respect to movers, the "reasonable effort" requirement can be met using Postal Service data alone. *See id.* § 20507(c)(1). In any case, joining the New Mexico voter file to another state's voter file—a file New Mexico does not possess and is not legally required to obtain—does not help DOJ determine whether New Mexico has met the "reasonable effort" requirement. *Cf. id.* § 21083(a)(2)(A)(ii) (requiring voter file coordination with in-state databases on felony status and records of death).[3] HAVA merely reiterates the NVRA's list maintenance requirements, *see, e.g.*, *Bellitto*, 935 F.3d at 1202; *ACRU*, 872 F.3d at

---

[3] Through the Electronic Registration Information Center—a membership organization made up of 24 states and the District of Columbia—New Mexico obtains cross-state mover reports based on voter registration and motor vehicle data. *See* Electronic Registration Information Center, *FAQ's* (Ex. 15); *see also* Electronic Registration Information Center, *Technology & Security Overview* (Ex. 16). However, 25 states that register voters do not participate in this exchange, and federal law does not mandate interstate comparison of voter registration records.

184-85, and comparison to another state's database has no bearing on database design mandates, such as consolidation of duplicate registration records, *see id.* § 21083(a)(2)(B)(iii).

Even if Title III required the Attorney General's representative to provide only "a purpose" and not "the purpose" of a demand—and it does not—DOJ's demand for the complete, unredacted New Mexico voter file is unrelated to "New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." Sept. 8 Let. at 2.[4] For nearly two decades, DOJ has neither demanded nor required a complete, unredacted voter file to investigate NVRA violations or oversee compliance with a remedy. *See, e.g.*, Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements*, July 5, 2018 (Ex. 17) (describing 2017 letters to all 44 states covered by the NVRA requesting list maintenance information but not demanding voter files). And with good reason. As noted above, the NVRA's affirmative list maintenance mandate requires only a "reasonable effort" to remove deceased registrants and movers. *See* 52 U.S.C. § 20507(a)(4); *see also id.* § 20507(c)(1) (allowing the requirement concerning movers to be met as a matter of law using safe harbor procedures). DOJ has recognized this flexible standard since the Act's passage. *See, e.g.*, U.S. Dep't of Justice, *The National Voter Registration Act of 1993* (last updated Nov. 1, 2024) (Ex. 18); U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 2024) (Ex. 19).

---

[4] In other states, DOJ asserted that the purpose of obtaining the unredacted voter file is to ascertain compliance only with the NVRA or only with HAVA. *See, e.g.*, Aug. 18 Let., *United States v. Scanlan*, 1:25-cv-371 (D.N.H. Sept. 30, 2025), ECF No. 6-9 (HAVA only); Aug. 21 Let., *United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Nov. 7, 2025), ECF No. 37-2, at 24 (NVRA only). DOJ has also incorporated a demand for the unredacted voter file as a purported oversight measure in a recent consent decree. *See* Consent Decree ¶ 11, *United States v. N.C. State Bd. of Elections*, No. 5:25-cv-283 (E.D.N.C. Sept. 8, 2025), ECF No. 72. The Attorney General's assertion of varying purposes for identical voter file demands suggests that the claimed enforcement aims here are mere pretext. *Cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 478 U.S. 252, 267 (1977) (deeming departures from substantive and procedural norms to be evidence of pretext).

Thus, state and local procedures establish compliance; voter files that result from those procedures do not. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624-26 (6th Cir. 2025), *petition for cert. pending*, No. 25-437 (filed Oct. 7, 2025) (defining "reasonable effort" as "a serious attempt that is rational and sensible" and rejecting any "quantifiable, objective standard"); *Bellitto*, 935 F.3d at 1205 (finding a "reasonable effort" based on safe harbor procedures alone). Even if DOJ could identify movers and deceased voters on the registration rolls, this would not indicate that actions to remove such voters did not meet the "reasonable effort" requirement. *See Benson*, 136 F.4th at 626-27 (rejecting identification of "27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of an NVRA violation); *see also Judicial Watch v. Griswold*, 554 F. Supp. 3d 1091, 1108 (D. Colo. 2021) (recognizing that certain procedures may be reasonable as a matter of law); 52 U.S.C. § 20507(d)(1) (limiting removal of movers). Ultimately, the NVRA places responsibility for voter registration list maintenance with the States and does not authorize the Justice Department to search for individual registrants that federal officials suspect may not meet state eligibility requirements.[5]

HAVA enforcement also does not require or use complete, unredacted voter files. Although HAVA requires that statewide voter registration databases have specific list maintenance capabilities, *see* 52 U.S.C. § 21083(a)(2), (a)(4), these requirements are implemented pursuant to state discretion, *id.* § 21085. DOJ previously recognized as much when it entered a consent decree requiring "reasonable steps" to identify possible duplicate registrations and movers and "review"

---

[5] In 2006, DOJ sought and obtained a state voter registration file, including Social Security numbers, for the ostensible purpose of assessing NVRA compliance. *See* Compl. ¶ 9, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006); *see also* Consent Decree, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 30, 2006). DOJ did not pursue an enforcement action based on the file, *see* U.S. Dep't of Justice, *Cases Raising Claims under the National Voter Registration Act* (Ex. 20), and for the next 19 years abandoned attempts to use voter files to assess NVRA compliance.

of registrants previously identified "as potentially deceased"—not perfect removal of ineligible registrants and consolidation of duplicate records. Consent Decree ¶¶ 4, 8-9, *United States v. State of New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006) (Ex. 21); *see also* U.S. Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11-14 (July 2005) (Ex. 22) ("recogniz[ing] the fallibility of databases" and prioritizing "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters"). And once a HAVA-compliant system was in place, the decree required reporting of list maintenance statistics but did not demand copies of complete, unredacted voter files. *See* N.J. Consent Decree ¶ 11. Ultimately, HAVA list maintenance requirements are no more prescriptive than the NVRA, *see Bellitto*, 935 F.3d at 1202; *ACRU*, 872 F.3d at 185, and complete, unredacted voter files do not assist bona fide HAVA enforcement.

**B.      Title III Requests Are Subject to Ordinary Judicial Oversight.**

DOJ cannot avoid judicial scrutiny of "the basis and the purpose" for its Title III request. *See* N.M. Opp. 11-17. In its complaint and its contemporaneous motion to compel, DOJ relies on the 1962 decision of the U.S. Court of Appeals for the Fifth Circuit in *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), to claim that the Civil Rights Act of 1960 authorizes a "special statutory proceeding." Compl. ¶ 3 (quoting *Lynd*, 306 F.2d at 225); DOJ Mem. 5-6, ECF No. 2-2 (same). To be sure, *Lynd* indicated that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment." 306 F.2d at 226 (quoting former 42 U.S.C. § 1974b). But *Lynd* was decided in the early 1960s, an era of racist disenfranchisement and massive resistance to civil rights efforts, even within the federal judiciary, *see, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962) (reversing dismissal in conflict with controlling law), and "history did not end in 1965."

11

*Shelby Cnty. v. Holder*, 570 U.S. 529, 532 (2013). The Title III cases DOJ cites uniformly predate enactment of the Voting Rights Act, which removed the exigency that might have justified such paltry process by suspending disenfranchising tests and devices that Title III had been used to investigate and imposing preclearance on states that had used them. Compl. ¶¶ 1, 3-4; DOJ Mem. 4-7, 9, 11-12, ECF No. 2-2; *see also South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966) (describing case-by-case use of Title III); *id.* at 319, 333-34 (upholding suspension of tests and devices). Six decades since DOJ last litigated a contested Title III action, basic principles of federal law dictate that the requisite statement of the basis and the purpose for a Title III request is subject to ordinary judicial oversight.

DOJ's attempt to shield its voter file request from judicial scrutiny is foreclosed by Federal Rule of Civil Procedure 81(a)(5), which applies the Federal Rules of Civil Procedure to subpoena enforcement actions. Specifically, Rule 81(a)(5) now establishes that the Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute . . . ." These rules protect the rights of a party that has received a federal document request and guarantee that "an adversary hearing, if requested, is made available." *Becker v. United States*, 451 U.S. 1306, 1308 (1981). Indeed, just two years after the Fifth Circuit decided *Lynd*, the Supreme Court held that the IRS Commissioner bears the burden to establish statutory requirements before a tax subpoena may be enforced. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964). Even after a federal official has met that burden, the recipient of a summons or subpoena must be afforded the opportunity to rebut the government's prima facie case or establish that the IRS lacks "institutional good faith." *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019). Such due process is the prerequisite to judicial enforcement of a records request issued by another branch

of the federal government. *See, e.g.*, *Trump v. Mazars USA, LLP*, 591 U.S. 848, 862-63 (2020) (addressing whether a subpoena was "related to, and in furtherance of, a legitimate task of the Congress").[6]

The text of Title III does not insulate the sufficiency of the requisite "statement of the basis and the purpose" of a demand from judicial review. 52 U.S.C. § 20703; *cf.* Fed. R. Civ. P. 81(a)(5) (allowing exclusion from the Federal Rules as "provided by statute"). Rather, Title III's jurisdictional provision authorizes only "appropriate process to compel the production" of documents. *Id.* § 20705. The statutory requirement that the Attorney General must offer "the basis and the purpose" for a Title III request would serve no purpose if—as DOJ contends—federal courts may adjudicate only whether a demand has been made and the custodian of documents has received notice of the proceeding. DOJ Mem. 6 (*citing Lynd*, 306 F.2d at 226). It remains possible that an "assertion that the demand was made for the purpose of investigating possible violations of a Federal statute" could meet the basis and purpose requirement, *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963), but only when the assertion is both complete and accurate. And while DOJ might ordinarily be presumed to be acting in good faith, "appropriate process" requires an opportunity to prove otherwise. *See In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (ascribing good faith to Title III request "unless otherwise shown"); *see also, e.g.*, *LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 187 n.29 (D.D.C. 2025) (describing misrepresentation in recent election litigation). Indeed, in recent months, district courts have repeatedly "identified serious defects in the government's explanations and representations . . . prompting judges to

---

[6] The recent order of the U.S. District Court for the District of Connecticut in related voter file litigation merely expedited litigation. *See* Order to Show Cause, ECF No. 31-1. The Order did not insulate "the basis and the purpose" of the voter file request from judicial scrutiny, as DOJ demands here. *See id.* at 2 (setting full briefing schedule).

13

discount government submissions, compel expedited discovery, and withhold the presumption [of regularity]." Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Nov. 20, 2025) (collecting cases) (Ex. 23); *see also, e.g.*, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971) (recognizing that the presumption of regularity does not shield official actions "from a thorough, probing, in-depth review"). Applying appropriate process, this Court should conclude that Title III provides no basis for DOJ's request for the unredacted New Mexico voter file.

## V. CONCLUSION

For the reasons set out above, this Court should grant Secretary Toulouse Oliver's motion to dismiss.

Respectfully submitted,

Dated: January 14, 2026                                              Respectfully submitted,

*/s/ Gretchen Elsner*                                                */s/ Daniel J. Freeman*
Gretchen Elsner                                                      Daniel J. Freeman*
Elsner Law and Policy LLC                                            Democratic National Committee
314 S. Guadalupe Street, Suite 123                                   430 South Capitol Street SE
Santa Fe, NM 87501                                                   Washington, DC 20003
(505) 303-0980                                                       (202) 863-8000
gretchen@elsnerlaw.org                                               freemand@dnc.org

* Application for Admission Pro Hac Vice
  Forthcoming