IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br>　　　v.<br>MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,<br><br>　　　　　　　　Defendant. | No. 1:25-cv-01193-JCH-JFR |

**REPLY IN SUPPORT OF MOTION TO DISMISS OF
INTERVENOR DEFENDANTS COMMON CAUSE,
CLAUDIA MEDINA, AND JUSTIN ALLEN**

The Complaint fails to plausibly plead that the Attorney General set forth in writing "the basis and the purpose" of her unprecedented demand for sensitive personal information of New Mexico voters. 52 U.S.C. § 20703. Since Intervenors filed their motion to dismiss, two courts have rejected materially identical suits seeking to compel the production of private information contained in state voter registration files, dismissing without leave to amend. *See United States v. Weber*, — F. Supp. 3d —, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 16, 2026); *United States v. Oregon*, No. 6:25-cv-1666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026). At the same time, Department of Justice ("DOJ") admissions in court and in public have made it even more evident that its requests are "intend[ed] to create a nationwide database of confidential voter information and use it in unprecedented ways, including immigration enforcement efforts." *Oregon*, 2026 WL 318402, at *13.

The DOJ's opposition to the motions to dismiss, *see* Dkt. No. 51 ("Opp."),

rehashes arguments properly rejected in *Weber* and *Oregon*, none of which is persuasive. The DOJ casts this Court's role as a rubber stamp, claiming Title III entitles it to whatever it wants, whenever it wants, no matter how thin of a justification it gins up. This is not the law, particularly here, where the DOJ seeks to pervert the CRA to weaponize voters' data against them on the basis of a facially-deficient pleading. This Court should dismiss.

## ARGUMENT

### I. THE DOJ'S REQUEST IS SUBJECT TO KEY PROCEDURAL SAFEGUARDS, INCLUDING SCRUTINY UNDER RULE 12.

The DOJ stumbles straight out of the gate, arguing that core procedural protections under the Federal Rules of Civil Procedure, including motions under Rule 12, are categorically unavailable in Title III proceedings. *See, e.g.*, Opp. at 8, 12. Precedent and the Rules themselves say otherwise. "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 2026 WL 118807, at *8.

Start with the text of the Rules. Title III provides that when the Attorney General makes a demand for voting-related records or papers, the federal district court where such demand is made "shall have jurisdiction *by appropriate process* to compel the production of such record or paper." 52 U.S.C. § 20705 (emphasis added). This "appropriate process" is set forth in the Federal Rules of Civil Procedure, which "govern the procedure in *all* civil actions and proceedings in the United States district courts," Fed. R. Civ. P. 1 (emphasis added), subject to a narrow set of express

exceptions which does not include Title III requests, Fed. R. Civ. P. 81. *See Navajo Nation v. Dalley*, 896 F.3d 1196, 1213 (10th Cir. 2018) ("[E]xpression of one item of an associated group or series excludes another left unmentioned." (quoting *NLRB v. SW Gen. Inc.*, 580 U.S. 288, 302 (2017)) (citation modified)). The Rules—including their processes for taking discovery and testing the sufficiency of pleadings—apply.

Binding precedent is in accord. "[T]he Federal Rules apply to proceedings to compel . . . production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute . . . ." *Becker v. United States*, 451 U.S. 1306, 1307–08 (1981) (cleaned up) (enumerating additional exceptions not relevant here). The DOJ cites *United States v. Powell*, 379 U.S. 48 (1964), analogizing its authority under Title III to the investigatory powers of the IRS Commissioner and other executive agencies. *See* Opp. at 9 n.7 (noting the former "fall[s] comfortably within this paradigm"). Indeed, the IRS statute at issue in *Powell* and *Becker* is virtually identical to Title III. *Compare* 26 U.S.C. § 7604(a) ("[T]he United States district court . . . *shall have jurisdiction by appropriate process* to compel such attendance, testimony, or production of books, papers, records, or other data." (emphasis added)), *with* 52 U.S.C. § 20705 ("The United States district court . . . *shall have jurisdiction by appropriate process* to compel the production of such record or paper." (emphasis added)). However, the DOJ omits that *Becker* and *Powell* held that the IRS statute did not authorize any special proceedings that deviate from the Federal Rules. *See Becker*, 451 U.S. at 1307–08; *Powell*, 379 U.S. at 57–58 & n.18; *see also Oregon*, 2026

3

WL 318402, at *8 ("The Supreme Court's holding in *Powell* squarely rejects Plaintiff's contention and reliance on *Lynd*."); *Weber*, 2026 WL 118807, at *8 n.15 (citing *Powell* for the idea "that courts should apply standard civil procedures in ensuring [statutory] prerequisites are satisfied under a similarly worded statute"). So too here.

Throughout its brief, the DOJ relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) and other cases from the early 1960s—all of which predate *Becker* and *Powell* and, unlike those cases, are not binding on this Court—to argue that it is entitled to summary proceedings. *See, e.g.*, Opp. at 3–4, 6–7, 11–12. However, *Lynd* cannot be divorced from its context, namely, the Jim Crow South in the early 1960s, with massive and undeniable racial disparities in registration and voting in the counties at issue. The county registrar defendants in *Lynd* spent eighteen months filing "a series of motions, motions to dismiss, opposing substitution motions for more definite statement and briefs and repeated extended oral arguments thereon," all "with no clear-cut ruling, no indication that this interminable proceeding would ever come to an end, and certainly never an order for production." 306 F. 2d at 227. *This* is why the Fifth Circuit emphasized the need for summary resolution of the Title III requests, and found that further "judicial review or ascertainment" was not warranted. *Id.* at 226. Nothing remotely analogous exists with this request.

Notably, *Lynd* and the other early cases the DOJ relies on were decided before sensitive personal identifying information, such as a Social Security number ("SSN") or driver's license number, became widely collected as part of a person's voter registration record, and before the passage of landmark federal statutes protecting

4

such information.[1] Even then, *Lynd* explicitly noted that the records at issue were not sensitive or private. 306 F.2d at 231 ("[W]e are not discussing confidential, private papers and effects. We are, rather dealing with public records which ought ordinarily to be open to legitimate reasonable inspection . . . ."). More generally, these early cases recognized limits on the DOJ's authority. Even though Title III grants the DOJ a "right of free examination of official records," it is qualified, subject to "exception[s]," for example, where the "purpose is speculative, or from idle curiosity." *In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). This case presents something altogether more ominous, given the evidence of the DOJ's plans for the requested records. Judicial scrutiny is required.

The text of the Rules and cases interpreting the CRA and materially similar statutes point in the same direction: "Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures." *Weber*, 2026 WL 118807, at *8.

## II. THE DOJ'S REQUEST IS LEGALLY DEFICIENT, BECAUSE IT OFFERS AN INADEQUATE AND PRETEXTUAL STATEMENT OF ITS BASIS AND PURPOSE.

Because the Federal Rules apply in full force, the Complaint must plead facts sufficient to survive a motion to dismiss. It fails to do so, because it does not plausibly allege that the Attorney General set forth in writing "the basis and the purpose" of

---

[1] *E.g.*, Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 (1974); Driver's Privacy Protection Act of 1994, Pub. L. No. 103-322, 108 Stat. 1796 (1994), *codified at* 18 U.S.C. §§ 2721 *et seq.*; E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (2002); Federal Information Security Modernization Act of 2014, Pub. L. No. 113-283, 128 Stat. 3073 (2014), *codified at* 44 U.S.C. §§ 3351 *et seq.* (2014).

her unprecedented demand for sensitive voter information. 52 U.S.C. § 20703. The basis and purpose requirement is a "critical safeguard that ensures the request is legitimately related to the purpose of the statute," and prevents the statute from being used for a "fishing expedition" to obtain records. *Weber*, 2026 WL 118807, at *9. The DOJ's failure to abide by this requirement is fatal to its claim.

### A.   The DOJ's Statement of Its Basis and Purpose Is Inadequate.

The Complaint asserts that the written demand sent September 8, 2025, satisfies Title III's basis and purpose requirement. See Compl. ¶¶ 27–28. That letter cites Title III itself, as well as the National Voter Registration Act ("NVRA") and Help America Vote Act ("HAVA"), as the bases for the request, and gives "ascertain[ing] New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA" as the purpose. *See* Letter of Harmeet K. Dhillon to Maggie Toulouse Oliver at 2 (Sept. 8, 2025), Dkt. No. 2-3. This is patently insufficient.

The basis for a Title III request is a statement as to why the United States believes there is some relevant violation of law. *See Lynd*, 306 F.2d at 229 n.6; *accord Weber*, 2026 WL 118807, at *9 ("The basis is the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law."). The DOJ's conclusory invocation of Title III and HAVA come nowhere close to satisfying this standard. Title III cannot itself provide the basis: if the DOJ could cite Title III as a basis for its request under Title III, it would *by definition* satisfy the statute's requirements. This tautology would functionally erase the statutory requirement. The DOJ's arguments

with respect to HAVA, including that "[t]he federal statute itself supplies the basis for the request," Opp. at 11, fare no better. HAVA contains no authority to demand records; its enforcement provision merely authorizes the Attorney General to bring a civil action to enforce HAVA's requirements, not to obtain documents outside standard discovery rules. *See* 52 U.S.C. § 21111. In short, the Complaint (and the documents it incorporates by reference) give no basis to conclude why the United States thinks New Mexico's list maintenance procedures might violate HAVA.

As to the purpose, the DOJ must show how the requested records would help it in "investigating violations of individuals' voting rights." *Oregon*, 2026 WL 318402, at *10; *accord Lynd*, 306 F.2d at 229 n.6. As explained in Intervenors' opening brief, the DOJ provides no explanation why the full and unredacted New Mexico voter file is necessary to investigate the state's compliance with the NVRA and HAVA. *See* Mot. to Dismiss, Dkt. No. 34, at 11–12. For one, the state voter file shows a single snapshot in time, so it cannot shed light on whether a state has procedures in place that constitute "reasonable effort" to remove ineligible voters under the NVRA. 52 U.S.C. § 20507(a)(4)(A)–(B). For another, the DOJ provides no explanation as to why it needs an unredacted version of the state registration list, replete with voters' private information, to investigate New Mexico's list maintenance programs. The DOJ plainly fails to satisfy Title III's basis and purpose requirement.

    **B.**    **The DOJ's Stated Basis and Purpose Is Pretextual.**

The DOJ's allegations regarding the basis and purpose of its request are legally insufficient for an additional reason: they do not actually provide "*the* basis and *the*

7

purpose" for the request. 52 U.S.C. § 20703 (emphasis added). This Court "is not obliged to accept a contrived statement and purpose," *Weber*, 2026 WL 118807, at *10, particularly when the DOJ's statements are contradicted by a growing body of judicially-noticeable evidence regarding its actual intentions.

The DOJ says that only "third-party hearsay" supports the idea that there is anything untoward about its request, Opp. at 14, but it is the DOJ's own actions and statements that undercut its representations. *Cf.* Fed. R. Evid. 801(d)(2). It is a matter of public record that the DOJ has sued 24 states and the District of Columbia to force the production of complete and unredacted voter registration lists. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated Feb. 6, 2026), https://perma.cc/Q3R9-CQ77 (collecting court filings); *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1298 (10th Cir. 2025) ("[C]ourts can take judicial notice of court records in related proceedings[.]"). The DOJ has also admitted to sharing state voter roll information with outside advocacy groups for purposes of identifying (non-existent) voter fraud. In a recent court filing, made on behalf of the Social Security Administration ("SSA"), it stated:

> [I]n March 2025, a political advocacy group contacted two members of SSA's ["Department of Governmental Efficiency" ("DOGE")] Team with a request to analyze state voter rolls that the advocacy group had acquired. The advocacy group's stated aim was to find evidence of voter fraud and to overturn election results in certain States. In connection with these communications, one of the DOGE team members signed a "Voter Data Agreement," in his capacity as an SSA employee, with the advocacy group. He sent the executed agreement to the advocacy group on March 24, 2025.

Notice of Corrs. to the Record at 5, *Am. Fed'n of State, Cnty. & Mun. Emps. v. Soc. Sec. Admin.*, No. 1:25-cv-596-ELH (D. Md. Jan. 16, 2026), Dkt. No. 197. DOJ officials have publicly claimed that "[they've] checked 47.5 million voter records" as part of efforts with the SSA and found "several thousand non-citizens who are enrolled to vote," although public reporting indicates that these efforts are producing false positives—i.e., flagging U.S. citizens as being non-citizens who are ineligible to vote.[2] President Trump has recently called for Republicans to "take over" federal elections, and saying that "the Republicans ought to nationalize the voting."[3]

Perhaps most alarmingly, on January 24, 2026, Attorney General Pamela Bondi wrote a letter to Minnesota Governor Tim Walz, purporting to discuss DHS's "Operation Metro Surge" activities in the Twin Cities amidst ongoing violence by federal agents against the civilian population there. *Read Bondi's Letter to Minnesota's Governor*, N.Y. TIMES, Jan. 24, 2026, https://perma.cc/H5GY-ZKBS. The letter purports to set out three actions that Minnesota—which is one of the states DOJ has sued to try to obtain sensitive voter data—should take to "restore the rule of law, support ICE officers, and bring an end to the chaos in Minnesota," one of which is to "allow the Civil Rights Division of the Department of Justice to access voter rolls

---

[2] Asst. Att'y Gen. Harmeet Dhillon (@AAGDhillon), X (December 5, 2025, at 13:02 ET), https://perma.cc/WA3N-9T7W; *see also* Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR, Dec. 10, 2025, https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens.

[3] Reid J. Epstein & Nick Corasaniti, *Trump, in an Escalation, Calls for Republicans to 'Nationalize' Elections*, N.Y. TIMES, Feb. 3, 2026, https://perma.cc/H6UB-ARF3.

to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960." *Id.* at 2–3.

In light of this evidence, *Weber* and *Oregon* reached the inevitable conclusion: "It appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." *Weber*, 2026 WL 118807, at *10; *accord Oregon*, 2026 WL 318402, at *11, *13. Contra the DOJ's suggestion, *see* Opp. at 10-12, this Court plays a vital role under Title III, and it must determine whether the Complaint provides a sufficient—and truthful—statement of the basis and the purpose of the United States' request. It does not.

### III. THE DOJ'S COUNTERARGUMENTS REGARDING VOTERS' KEY PRIVACY INTERESTS FAIL.

Finally, the DOJ asserts that voters' important privacy interests, and federal and state protections of them, pose no barrier to its request for New Mexico's voter file. *See* Opp. at 12-21. The DOJ says "it goes without saying" that it will "strictly" abide by statutory limitations on use of records. Opp. at 19. This is cold comfort because, as noted above, the DOJ has recently admitted to lapses in its handling of voter data on the part of DOGE actors and third-party groups. *See* Notice of Corrs. to the Record, *supra*, at 6 (acknowledging that DOGE actors shared social security data on an unapproved third-party server in a "manner [that] is outside SSA's security protocols"). It is precisely because of these risks that federal and state law impose stringent privacy protections on voter information. The DOJ offers only scattershot and inapposite legal authority to evade them.

For example, the DOJ points to two examples of states' producing voter registration data including drivers' license numbers and partial SSNs. *See* Opp. at 21 (discussing *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006), and a memorandum of understanding between the United States and Texas, filed at Dkt. No. 51-6). However, the DOJ admits that both of these disputes were resolved through mutual agreement very early on in litigation. *See id.* at 21 n.17. Other states' choices with respect to their voters' information shed no light on the requirements of New Mexico law or the DOJ's entitlement to private information under Title III.

The DOJ also asserts that private parties have been given "even more detailed voter data" than it requests here, citing *Coalition for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025). *See* Opp. at 21. *Scanlan* is a challenge to a New Hampshire law requiring proof of citizenship to register to vote, and review of the state voter file was extremely relevant in determining the impact of the challenged law. But *Scanlan* proves Intervenors' point. There, the produced voter file did not include sensitive information like SSNs or driver's license numbers, and was produced in discovery subject to numerous, severe restrictions, including a scrupulous protective order which designates the file as "highly confidential," restricts its use to the present litigation, restricts viewing to only a tight circle of designated personnel using "air-gapped computers," and mandates destruction of the data after the case is closed. *See* Protective Order at 4, 13–17, Sched. A at 2–3, *Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE (D.N.H. June 18, 2025), Dkt. Nos. 87 & 87-1. Far from supporting the DOJ, *Scanlan* shows how production of sensitive

11

information, when truly necessary to advance voting rights, should be handled.

## CONCLUSION

The DOJ's request is supported by a legally insufficient statement of its basis and purpose, one that is flatly contradicted by the DOJ's own statements elsewhere. "The presumption of regularity that has been previously extended to [the United States] that it could be taken at its word—with little doubt about its intentions and stated purposes—no longer holds." *Oregon*, 2026 WL 318402, at *11. New Mexico voters have no assurance that their private information will be handled appropriately and for the honorable purposes that motivated the passage of Title III. The motion should be granted and the Complaint dismissed.

Dated: February 10, 2026

Respectfully submitted,

/s/ Maria Martinez Sanchez
Maria Martinez Sanchez
American Civil Liberties Union
Foundation of New Mexico
P.O. Box 566
Albuquerque, NM 87103
(505) 266-5915
msanchez@aclu-nm.org

Theresa J. Lee*
William Hughes*
Ethan Herenstein*
Sophia Lin Lakin*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
tlee@aclu.org
whughes@aclu.org
eherenstein@aclu.org
slakin@aclu.org

* *admitted pro hac vice*

Counsel for Intervenors Common Cause, Claudia Medina, and Justin Allen

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record.

/s/ Maria Martinez Sanchez
Maria Martinez Sanchez