# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

MAGGIE TOULOUSE OLIVER, in her official capacity as Secretary of State of New Mexico,

    *Defendant*,

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS,

    *Intervenor-Defendant*,

and,

COMMON CAUSE, CLAUDIA MEDINA, and JUSTIN ALLEN,

    *Intervenor-Defendants*.

Civil No. 25-cv-1193-JCH-JFR

**REPLY OF INTERVENOR-DEFENDANT NEW MEXICO ALLIANCE FOR RETIRED AMERICANS IN SUPPORT OF ITS MOTION TO DISMISS**

## INTRODUCTION

The consolidated brief filed by the U.S. Department of Justice ("DOJ") in opposition to all Defendants' motions to dismiss[1] merely confirms that the complaint fails to adequately allege a claim under Title III of the Civil Rights Act of 1960.[2] *See* Dkt. No. 51 ("Opp."). Indeed, in the last month, multiple federal courts have dismissed DOJ's equivalent suits in their respective states, holding for reasons similar to those set forth in the motions to dismiss that DOJ failed to state a claim under Title III. *See, e.g.*, *United States v. Weber*, --- F. Supp. 3d ---, No. 2:25-CV-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026). This Court should do the same.

Title III requires an explicit "statement of the basis and the purpose therefor," 52 U.S.C. § 20703, but DOJ has failed to provide *any* basis for its demand, and its purported purpose—to "ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA," Dkt. No. 2-3 at 3—is not valid under Title III. Accepting DOJ's claims here would grant the federal government unprecedented power to invade a traditional domain of the states on nothing more than a whim, and to employ the federal judiciary to do so. This is not what Congress authorized.

The plain text of Title III settles this matter, but there are several other reasons why this suit must be dismissed. For one, New Mexico's own privacy laws prevent disclosure, and none of

---

[1] Motions to dismiss have been filed by both sets of Intervenor-Defendants—the New Mexico Alliance for Retired Americans, Dkt. No. 32 ("Alliance Mot."), and Common Cause and two individuals, Dkt. No. 34—and by Defendant Secretary of State Toulouse Oliver, Dkt. No. 35.

[2] DOJ's memorandum references its "HAVA and NVRA claims," Opp. at 2 n.2, but this appears to be an error. While DOJ asserted claims under these statutes in the first wave of otherwise virtually identical lawsuits it filed against other states, *see* Alliance Mot. at 6, it did not do so here.

1

the federal laws that DOJ invokes preempt them. For another, the federal Privacy Act prohibits unfettered governmental acquisition of sensitive personal information and requires agencies to implement procedural safeguards before doing so. Because DOJ has not complied with these requirements, it is barred from collecting the sensitive voter data that it seeks.

In an attempt to sidestep the fatal defects in its complaint, DOJ insists that Rule 12(b) does not even apply. But the Federal Rules of Civil Procedure are clear that they "govern the procedure in *all* civil actions," Fed. R. Civ. P. 1, including this one, absent an express exemption. And nothing in the text of Title III allows DOJ to ignore the Federal Rules. Rule 12(b) motions serve an important gatekeeping function "for weeding out meritless claims," *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014), and because DOJ's complaint does not state a claim for relief, the Court should grant those motions.

## ARGUMENT

**I.     Rule 12(b) motions are appropriate vehicles to test the sufficiency of the complaint.**

DOJ leads by arguing that a motion to dismiss is procedurally improper in a Title III proceeding. Opp. at 8-10. In support, DOJ relies on *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), and a handful of other out-of-circuit cases from the 1960s. Opp. at 8-10. But as the Alliance has explained, and two federal courts have now found in considering this exact argument from DOJ, those cases are irreconcilable with the Supreme Court's subsequent decision in *Powell*. Alliance MTC Opp. at 6-8 & n.3, Dkt. No. 33; *see also United States v. Powell*, 379 U.S. 48 (1964); *Weber*, 2026 WL 118807, at *8, n.15; *Oregon*, 2026 WL 318402, at *8.

The relevant text of the statute construed in *Powell* was *identical* to the language in Title III—both provide that district courts "shall have jurisdiction by appropriate process to compel" the

2

production of the records the government seeks. *See* 26 U.S.C. § 7604(a); 52 U.S.C. § 20705. *Powell* held that because 26 U.S.C. § 7604(a) "contain[ed] no provision specifying the procedure to be followed in invoking the court's jurisdiction, *the Federal Rules of Civil Procedure apply*." 379 U.S. at 58 n.18 (emphasis added). The same must be true of Title III's identical text. Yet despite the Alliance's extensive discussion of the ramifications of *Powell*, DOJ entirely fails to discuss it (except for citing it once in a footnote for an unrelated point, *see* Opp. at 9 n.7).

In light of *Powell*, the authorities relied on by DOJ—which are not binding on this Court—have been entirely displaced, and the Alliance's motion to dismiss is procedurally proper. *See Weber*, 2026 WL 118807, at *8 (holding DOJ's parallel lawsuit was governed by the Federal Rules before proceeding to evaluate and grant motions to dismiss); *Oregon*, 2026 WL 318402, at *7-8 (same).³

**II.     DOJ did not state any "basis" or a proper "purpose" for its Title III demand.**

Before a government agency may validly demand information pursuant to an authorizing statute, it first "must comply with statutory requirements." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 460 (5th Cir. 2018). For Title III, that means DOJ must issue a written demand for covered records that "contain[s] a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Under basic principles of statutory interpretation, and as recently confirmed by two federal courts, that provision means "DOJ is required to offer a written statement of *both* the purpose and basis for its demands." *Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402,

---

³ DOJ includes a stray citation to Rule 81, which identifies certain types of proceedings for which the Federal Rules do not apply. But as the Alliance explained, Rule 81 does not apply to Title III, *see* Alliance MTC Opp. at 4-5, and DOJ does not contend otherwise, *see* Opp. at 10 (noting Rule 81 discusses "*other* federal claims" to which the Federal Rules do not apply (emphasis added)).

at *9. This requirement is "not merely perfunctory—it is a critical safeguard." *Weber*, 2026 WL 118807, at *9. As the Alliance explained in its motion, DOJ fails to provide *any* basis for its demand, and its stated purpose is not proper. *See* Alliance Mot. at 8-14. DOJ fails to rebut these showings, either one of which is sufficient to dismiss the complaint.

### A.  DOJ failed to provide *any* "basis" for its demand.

Contrary to DOJ's suggestions, *see* Opp. at 10-12, there is no way to read its September 8 letter to contain any statement of the "basis" for its demand for New Mexico's unredacted voter registration list. The letter states: "The *purpose* of the request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." Dkt. No. 2-3 at 3 (emphasis added). But a "*purpose*" for DOJ's request is not the same as the "*basis*" for the request. Those are different words, with different meanings. *Compare Basis*, *Black's Law Dictionary* (4th rev. ed. 1968) (including definitions such as the "groundwork," "support," or "foundation" of something), *with Purpose*, *Black's Law Dictionary* (4th rev. ed. 1968) (defining "purpose" to include "an end, intention, or aim, object, plan, project").

In stating that it would use New Mexico's voter list to evaluate the State's compliance with list maintenance obligations, DOJ has stated what it purportedly intends to *do* with the voter list, *i.e.*, its "purpose" in requesting it. But in no way can DOJ be said to have explained its *basis* for requesting the list, *i.e.*, why DOJ is *justified* in demanding that New Mexico produce sensitive information. *See Oregon*, 2026 WL 318402, at *9 ("Reading 'basis in the way [DOJ] suggests collapses its meaning with that of 'purpose.' Title III explicitly requires a statement of 'the basis *and* the purpose.'" (citation omitted)). DOJ has previously understood how to comply with this requirement: in *Lynd*, for example, DOJ explained that its basis for demanding records under Title

4

III was that it had "information . . . tending to show" that racial discrimination in voter registration had occurred in the target jurisdiction. 306 F.2d at 229 n.6. DOJ's letter to Secretary Toulouse Oliver says nothing remotely analogous. It does not identify any anomalies, provide any reason to suspect—*or even express any concern*—regarding New Mexico's list maintenance efforts. In short, DOJ's demand letter does not contain a "basis" for its request—it simply is not there. *See Weber*, 2026 WL 118807, at *9 ("DOJ may have stated a purpose for its request, . . . however, in no circumstances has the DOJ established the basis for its request." (cleaned up)); *Oregon*, 2026 WL 318402, at *8-9.

In response, DOJ essentially asks the Court to read the "basis" requirement out of the statute. To that end, DOJ quotes a decades-old opinion from the Fifth Circuit for the proposition that "a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible violations* of a Federal statute." Opp. at 11 (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963)). But that statement, by its terms, speaks only about how DOJ may satisfy the *purpose* requirement, it says nothing about how DOJ would satisfy Title III's separate *basis* requirement. Besides, the Fifth Circuit was merely quoting a single legislator's discussion of Title III, and the actual text of Title III is plain: it requires a statement of "basis *and* . . . purpose." 52 U.S.C. § 20703 (emphasis added). To hold that stating a "purpose" was sufficient to satisfy Title III's requirement to state a "basis *and* . . . purpose," *id.* (emphasis added), would be an impermissible reading of the statute, since the term "basis" would be rendered "meaningless, redundant, [and] superfluous." *United States v. Bunner*, 134 F.3d 1000, 1006 n.5 (10th Cir. 1998).

DOJ next argues that "[t]he federal statute itself supplies the basis for the request," and contends that DOJ can satisfy the "basis" requirement merely by *referencing* a statute, rather than

5

stating a reason to believe that New Mexico might be *violating* a statute. Opp. at 11. But such a rule would drain Title III's "basis" requirement of any practical meaning, making it an unacceptable construction of the statute. *See Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nickels*, 150 F.4th 1260, 1273 (9th Cir. 2025) (courts "cannot adopt a statutory reading which . . . will sap the interpreted provision of all practical significance").

DOJ's proposed interpretation of the statute should also be rejected because it requires a tortured reading of the term "basis," contrary to its standard usage. *But see, e.g.*, *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) ("When interpreting a statute, we must give words their 'ordinary or natural' meaning." (citation omitted)). Consider the following analogy. A police officer watches two cars drive by. The first drives within the lines, under the speed limit, and appears to be acting entirely safely. The second car is speeding, periodically drifts into other lanes before sharply returning, and it nearly hits several other cars. State law makes it illegal to drive under the influence. Although the obligation to avoid drunk driving applies equally to both drivers, plainly the police officer would have a "basis" under that law to pull over *only* the second driver. That is because the police officer can articulate facts that gave reason to suspect that the second driver might be intoxicated. In contrast, no reasonable speaker of English would say that the officer had any "basis" to demand that the first (entirely safe) driver pull over and take a breathalyzer test. Yet that is how DOJ proposes to interpret the word "basis" in Title III: it contends that the mere *existence* of a legal obligation (HAVA list maintenance requirements) gives DOJ a "basis" to demand New Mexico's voter list, even though DOJ has not articulated any reason to believe that the State might not be complying with those requirements. The Court should reject that implausible understanding of

6

Title III's use of the term "basis." *See Oregon*, 2026 WL 318402 at *8-9; *Weber*, 2026 WL 118807, at *9.

Finally, DOJ retreats to its maximalist position that any statement of its basis is wholly immune from judicial scrutiny. Opp. at 12. As the Alliance has explained, that startling contention is plainly wrong. *See supra* Part I; Alliance MTC Opp. at 4-11. But it is worth repeating that two federal courts have rejected this precise argument within the last month, *Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *7-8, and the Supreme Court held just the opposite when construing identical language as that contained in Title III, *see Powell*, 379 U.S. at 58 & n.18.

**B.     DOJ failed to state a proper "purpose" for its demand.**

In its motion to dismiss, the Alliance explained that Congress's purpose in enacting Title III was to protect federal voting rights, and that Title III has nothing to do with investigating administrative voter registration list requirements, which were enacted decades later in the NVRA and HAVA. *See* Alliance Mot. at 12-14 (discussing context in which Title III was enacted, its early enforcement history, and contemporaneous precedent discussing the statute's purpose). The Alliance further explained that courts will not enforce a document demand when made for a purpose that is far removed from that of the authorizing statute. *See, e.g.*, *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, 17 (E.D. Pa. Nov. 21, 2025); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 236-39 (D. Mass. 2025). DOJ does not rebut these points. *See* Opp. at 10-12. Accordingly, the fact that DOJ's stated reason for demanding New Mexico's voter list is disconnected from Title III's purpose is an independent ground upon which the Court can dismiss DOJ's complaint, as two federal courts have already done. *See Oregon*, 2026 WL 318402, at *10 (concluding DOJ failed to state a Title III claim because its stated purpose

7

"lacked any reference or relation to the purposes for which Title III was enacted"); *Weber*, 2026 WL 118807, at *9 (holding that NVRA and HAVA compliance could not be a sufficient purpose for Title III demand).

### III.    DOJ failed to demonstrate that it is entitled to unredacted records.

Even if DOJ's request did not fall outside of Title III (and for the reasons discussed, it plainly does), DOJ still would not be entitled to the records it seeks because Title III reaches only public documents, not "confidential, private" information. *Lynd*, 306 F.2d at 231. New Mexico's state law protects sensitive voter data, and nothing in Title III can be read to preempt those laws. Nor would it make any sense to conclude that Title III preempts state privacy laws to allow DOJ to evaluate a State's compliance with the NVRA and HAVA, when the NVRA and HAVA express congressional intent *not* to preempt those same laws. Alliance Mot. at 16-19. DOJ does not grapple directly with these points, *see* Opp. at 18-21, and nothing in its response provides any reason to conclude that Title III preempts state laws prohibiting the disclosure of highly sensitive personal information.[4]

---

[4] The Alliance also explained in its motion that the presumption against preemption applies to New Mexico privacy laws, notwithstanding the fact that Title III concerns the production of voter registration records. Alliance Mot. at 15. In the background section of its brief, DOJ states that Title III was passed pursuant to the Elections Clause, Opp. at 3-4, in an attempt to show that the presumption against preemption does *not* apply here. But contemporary caselaw recognizes that Title III was enacted pursuant to the Fifteenth Amendment. *See Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853-54 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961); *see also In re Wallace*, 170 F. Supp. 63, 66 (M.D. Ala. 1959). That understanding is more appropriate because Title III is a document preservation and production law; it does not make or alter state election regulations, nor does it implicate voting requirements. Accordingly, the presumption against preemption applies here. But even if it did not, Title III still would not conflict with New Mexico privacy protections for the reasons stated herein.

For instance, DOJ contends that because Title III allows for "inspection, reproduction, and copying" of covered records, 52 U.S.C. § 20703, the statute must be read to reach *unredacted* covered records, including highly sensitive information contained with them. Opp. at 19. But in like manner, the NVRA requires states to "make available" covered records "for public inspection" and "photocopying," 52 U.S.C. § 20507(i)(1), and yet courts have uniformly held that the NVRA does not prohibit states from withholding sensitive voter information before the records may be inspected or photocopied. Alliance Mot. at 16-18.

DOJ next argues that Title III must be read to reach sensitive information contained within voter files because otherwise Section 304 of the Civil Rights Act—which limits the instances in which DOJ may "disclose" records it receives pursuant to a Title III demand—would "have no purpose." Opp. at 19; *see* 52 U.S.C. § 20704. It contends that Section 304 "obviously contemplates that the United States will have sensitive information," opining that the presence of this "is why it limits the disclosure of that information." Opp. at 19. But DOJ forgets its history. Some of the most sensitive information protected by New Mexico laws (*e.g.*, social security numbers) were not required to be included in state registration records until HAVA was enacted decades after Title III. Clearly, then, Congress did not "obviously contemplate" in 1960 that state voter records would contain such sensitive information. Moreover, *Lynd* observed in 1962 that Title III was intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," and that it did *not* reach "confidential, private papers and effects." 306 F.2d at 231. The fact that Congress nonetheless chose to limit further dissemination of records obtained through Title III says nothing about whether the law preempts state laws protecting highly sensitive information. Indeed, it is not unusual for Congress to place restrictions on the *government's* ability

9

to disclose information even when the same data could be held and shared freely by private parties. The Privacy Act, for example, does just that. *See* 5 U.S.C. § 552a, *et seq.*

DOJ then turns to policy arguments, complaining it would "eviscerate" Title III to hold that it did not reach sensitive voter information, and that DOJ would not be able to "meaningfully investigate" a state's list maintenance efforts under HAVA and the NVRA without "access to the voter identification numbers." Opp. at 20. But there is nothing to "eviscerate"—there is no indication whatsoever that Congress ever meant for DOJ to be able to "investigate" a state's compliance with HAVA or the NVRA using Title III—indeed, both HAVA and the NVRA were passed long after the Civil Rights Act. Again, HAVA and the NVRA indicate that Congress did *not* intend for DOJ to access (or to even need) this type of private information. Alliance Mot. at 18-19. Nor would the unredacted voter file meaningfully assist DOJ in evaluating whether New Mexico has complied with the NVRA and HAVA, since the list itself cannot tell anything about New Mexico's list maintenance *procedures*, and the data within it would become outdated almost immediately.

Nor is there any merit to DOJ's contention that it should be handed the sensitive information it seeks because "private parties have been granted access to even more detailed voter data than what the United States has requested." Opp. at 21. To the contrary, in the case that DOJ cites, the court *excluded* social security numbers and other confidential information, and entered a protective order strictly limiting who can view the limited information that was produced, how they can view it, and for what purposes.[5] *See* Protective Order & Schedule A, *Coal. for Open*

---

[5] DOJ has been informed about these restrictions in several other cases, including in briefs filed nearly three months before DOJ filed its brief here, *see, e.g.*, Reply Br. Supp. Mot. Intervene,

*Democracy v. Formella*, No. 1:24-CV-00312-SE-TSM (D.N.H. June 18, 2025), Dkt. Nos. 87 & 87-1. Similarly, that the government has previously obtained statewide voter registration lists does nothing for DOJ's legal arguments here. As DOJ concedes, the two examples it points to—in Georgia and Texas—were resolved via a consent decree and a memorandum of understanding, and thus the questions raised here were not contested in those litigations. Opp. at 21 & n.17; *see Oregon*, 2026 WL 318402 at *10 n.3.

## IV. DOJ's collection of New Mexico's voter list would violate the Privacy Act.

DOJ's memorandum demonstrates a fundamental misunderstanding of how the Privacy Act operates. For example, DOJ contends that the Privacy Act applies only to federal agencies' internal management of "their own systems of records," and thus has no applicability to DOJ collecting data from sources outside the government. Opp. at 15. That is wrong. Many of the Privacy Act's protections are triggered whenever an agency "collects" or "maintains" any "system of records"—and the statute makes no distinctions based on the *source* of the records. Alliance Mot. at 19-20; *see* 5 U.S.C. § 552a(a)(3)-(4), (e). DOJ does not dispute that New Mexico's voter registration list is a "system of records," and therefore by attempting to "collect" the list from New Mexico and to "maintain" it on government servers, the Privacy Act is implicated.

DOJ also is wrong to say that the Privacy Act "simply require[s]" that protected information "be securely stored and not be subject to unauthorized dissemination or use." Opp. at 13. In fact, the statute requires much more, including that the government give the public notice and publish detailed disclosures whenever an agency "establish[es] or revise[s]" a system of

---

*United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 3, 2025), Dkt. No. 31; Reply Br. Supp. Mot. Intervene, *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Dec. 16, 2025), Dkt. No. 22, but DOJ persists in repeating this false claim.

11

records. 5 U.S.C. § 552a(e)(4), (11). Namely, the agency must publish a Systems of Record Notice ("SORN") that discloses the name and location of the system, the categories of records maintained in it, and all "routine uses" to which the system can be put, among other things. *Id.* § 552a(e)(4). The agency must also "provide an opportunity for interested persons to submit written data, views, or arguments to the agency." *Id.* § 552a(e)(11).

In any event, DOJ "does not dispute that the requirements of the Privacy Act . . . apply here." Opp. at 12. That means DOJ cannot collect or maintain New Mexico's voter list unless there is a SORN that covers that system of records. 5 U.S.C. § 552a(e)(4). Although DOJ cited three Federal Register notices containing SORNs in an attempt to show compliance with that requirement, *see* Compl. ¶ 23, the Alliance explained that none of the cited SORNs could be read to cover DOJ's unprecedented attempt to maintain a statewide voter list. *See* Alliance Mot. at 21-22. DOJ does not dispute that analysis, nor does it identify any other SORN that could conceivably cover this system of records. *See Weber*, 2026 WL 118807 at *18 ("[N]one of the SORN[s] identified give sufficient notice to the American public as required under the Privacy Act."). Consequently, until DOJ complies with the Privacy Act's procedural requirements by publishing an appropriate SORN and allowing for public comment, the Privacy Act bars it from collecting and maintaining New Mexico's voter list. *Id.* at *18 ("Because the DOJ has not fulfilled its requirements under the Privacy Act, it cannot collect the sensitive, unredacted voting records of millions of Californians.").

## CONCLUSION

For all of the foregoing reasons, and for the reasons stated in the Alliance's motion, the Court should dismiss the complaint with prejudice under Rule 12(b)(6).

Dated: February 10, 2026                                   Respectfully submitted,

/s/ Uzoma N. Nkwonta

Justin R. Kaufman                                          Uzoma N. Nkwonta*
Caren I. Friedman                                          Joshua C. Abbuhl*
Molly H. Samsell                                           Omeed Alerasool*
**DURHAM, PITTARD & SPALDING, LLP**                        **ELIAS LAW GROUP LLP**
125 Lincoln Avenue, Suite 402                              250 Massachusetts Ave NW, Suite 400
Santa Fe, NM 87501                                         Washington, DC 20001
Telephone: (888) 998-6688                                  Telephone: (202) 968-4490
jkaufman@dpslawgroup.com                                   unkwonta@elias.law
cfriedman@dpslawgroup.com                                  jabbuhl@elias.law
msamsell@dpslawgroup.com                                   oalerasool@elias.law

                                                           Walker McKusick*
                                                           **ELIAS LAW GROUP LLP**
                                                           1700 Seventh Avenue, Suite 2100
                                                           Seattle, WA 98101
                                                           Telephone: (206) 656-0177
                                                           wmckusick@elias.law

                                                           * Appearance by association pursuant to
                                                           D.N.M.LR-Civ. 83.3(a).

*Counsel for Intervenor-Defendant New Mexico Alliance for Retired Americans*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, pursuant to D.N.M.LR-CIV 7.1(b), that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta
