# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.

MAGGIE TOULOUSE OLIVER, in her Official capacity as Secretary of State of New Mexico,

    *Defendant*,

and

NEW MEXICO ALLIANCE FOR RETIRED AMERICANS, COMMON CAUSE, CLAUDIA MEDINA, and JUSTIN ALLEN,

    *Intervenor Defendants*.

Case No. 1:25-cv-01193-JCH-JFR

**DEFENDANT NEW MEXICO SECRETARY OF STATE MAGGIE TOULOUSE OLIVER'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

    I.       This Court has authority to review the DOJ's Title III records demand in an ordinary proceeding governed by the Federal Rules of Civil Procedure. ............... 1

    II.      The DOJ has not met Title III's statutory requirement that the DOJ provide a "statement of the basis and the purpose" of its demand. ........................................ 5

    III.     The DOJ is not entitled to New Mexican voters' unredacted election records under Title III of the CRA. ................................................................................................ 8

    IV.     Compliance with the DOJ's demand for New Mexico's voter data would be illegal under the Privacy Act. ............................................................................................. 9

           A.      The DOJ has not met the Privacy Act's notice requirements for establishing or revising a system of records. ................................................................... 9

           B.      The Privacy Act's protection of records pertaining to First Amendment rights bars the DOJ's demand. ................................................................. 10

    V.      The procedural protections of the E-Government Act apply to the DOJ's collection of New Mexico's voter data, and the DOJ has not complied with them. ................................................................................................................. 11

CONCLUSION ........................................................................................................................... 12

# TABLE OF AUTHORITIES

**CASES**

*Booth v. Hume Pub., Inc.*, 902 F.2d 925 (11th Cir. 1990) .................................................. 3

*Bowen v. Mich. Acad. of Fam. Physicians,* 476 U.S. 667 (1986) ...................................... 4

*Chevron Mining Inc. v. United States*, 863 F.3d 1261 (10th Cir. 2017) ............................ 7

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ........................................................... 7

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017). ................................................................................................................ 11

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) .......................................................... 7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ..................................................... 3, 4, 5, 7

*Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480 (2015) ....................................................... 4

*Navajo Nation v. Dalley*, 896 F.3d 1196 (10th Cir. 2018) ................................................. 7

*Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243 (D. Colo. 2022) .................................. 9

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846 (W.D. La. 1960) ... 3

*United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Feb. 10, 2026) ....................... 1

*United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026) ......... passim

*United States v. Manning*, 526 F.3d 611 (10th Cir. 2008) ................................................. 6

*United States v. LaHue*, 170 F.3d 1026 (10th Cir. 1999) .................................................. 6

*United States v. Powell*, 379 U.S. 48 (1964) .................................................................. 2, 3

*United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .... passim

*Vigil v. Doe*, 405 F. Supp. 3d 1058 (D.N.M. 2019) ........................................................... 9

*West Virginia v. Env't Prot. Agency*, 597 U.S. 697 (2022) ............................................... 6

**UNITED STATES CODE, TITLE**

5 U.S.C. §§ 552a(a)(3) ....................................................................................................... 10

5 U.S.C. §§ 552a(e) .............................................................................................................. 9

5 U.S.C. §§ 552a(e)(4) ............................................................................................................ 9

5 U.S.C. §§ 552a(e)(7) .................................................................................................... 10, 11

26 U.S.C. § 7604(a) ................................................................................................................ 2

52 U.S.C. § 20507(i) ............................................................................................................... 8

52 U.S.C. § 20510 .................................................................................................................. 8

52 U.S.C. § 20703 .............................................................................................................. 4, 5

52 U.S.C. § 20705 .................................................................................................................. 2

52 U.S.C. § 21083(a)(4)(A) .................................................................................................... 6

52 U.S.C. § 21111 .................................................................................................................. 8

E-Government Act, Pub. L. No. 107–347, § 208(a), 116 Stat. 2899 (2002) ...................... 12

E-Government Act, Pub. L. No. 107–347, § 208(b)(1)(A)(ii), 116 Stat. 2899 (2002) ....... 11

**FEDERAL RULES OF CIVIL PROCEDURE**

F.R.C.P. 1 ............................................................................................................................... 3

F.R.C.P. 12(b)(6) ......................................................................................................... 1, 2, 3, 9

**OTHER AUTHORITIES**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 3 (2012). ... 7

H.R. Rep. No. 86-956 (1959) .................................................................................................. 7

OMB, Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, M-03-22 (Sept. 26, 2003) ......................................................................................................... 12

# INTRODUCTION

Defendant New Mexico Secretary of State, Maggie Toulouse Oliver ("Secretary Toulouse Oliver"), respectfully submits this reply brief in support of her Motion to Dismiss, Dkt. No. 35, which requests that this Court dismiss Plaintiff United States' Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) and the affirmative defense of illegality.

Without citing any statutory text or controlling precedent, the DOJ's breathtaking position is this: the Civil Rights Act of 1960 ("CRA") strips Article III courts of their constitutional role and statutory authority to review federal agency requests for detailed, individual-level voter information. Crucially, in the last month, two federal district courts dismissed—with prejudice and on grounds substantially similar to those argued in Secretary Toulouse Oliver's Motion to Dismiss—comparable lawsuits filed by the U.S. Department of Justice ("DOJ") in California and Oregon seeking those states' unredacted voter records. *United States v. Weber*, No. 2:25-cv-09149, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *United States v. Oregon*, No. 6:25-cv-01666, 2026 WL 318402 (D. Or. Feb. 5, 2026).[1] The DOJ's opposition to the pending motion to dismiss raises no facts or legal arguments warranting a different outcome. Thus, for the reasons set forth in the Secretary's original brief and below, this Court should dismiss the action with prejudice.

# ARGUMENT

**I.    This Court has authority to review the DOJ's Title III records demand in an ordinary proceeding governed by the Federal Rules of Civil Procedure.**

The DOJ argues that if this Court finds that the DOJ has met the basic requirements of Title III of the CRA, it is summarily entitled to an order granting its Motion to Compel Production, Dkt.

---

[1] On February 10, a federal district court in Michigan also dismissed the DOJ's comparable lawsuit seeking Michigan's unredacted voter records on a separate basis. *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Feb. 10, 2026).

1

No. 2. *See* Pl.'s Opp. Mot. Dismiss ("Pl.'s Opp."), Dkt. No. 51, at 2–3. In the DOJ's view, Title III's records inspection provision leaves no place for the Federal Rules of Civil Procedure, including Rule 12(b)(6), under which Secretary Toulouse Oliver moves this Court to dismiss the DOJ's Complaint. Pl.'s Opp. 2, 8–9.

However, as set forth in Secretary Toulouse Oliver's Brief in Opposition to the United States' Motion to Compel,[2] Dkt. No. 37, at 13–15, and recognized by federal district courts in California and Oregon, Title III does not authorize, let alone mandate, a special summary proceeding. *Weber*, 2026 WL 118807, at *8; *Oregon*, 2026 WL 318402, at *7–8. On its face, Title III grants federal district courts "jurisdiction by *appropriate process* to compel" records or papers demanded pursuant to it. 52 U.S.C. § 20705 (emphasis added). In *United States v. Powell*, the Supreme Court concluded that a provision of the Internal Revenue Code that used the same language—"jurisdiction by appropriate process to compel"—and was otherwise silent on applicable procedure, did not authorize a special summary proceeding. 379 U.S. 48, 58 n.18 (1964) (discussing 26 U.S.C. § 7604(a)). The Supreme Court found that "the Federal Rules of Civil Procedure apply" and that "[t]he proceedings are instituted by filing a complaint, followed by answer and hearing." *Id.* The standard process governing a civil action under the Federal Rules should apply here too, including the Court's usual authority to "evaluat[e] the sufficiency of [Defendant]'s allegations regarding [the DOJ's] alleged failure to comply with Title III" and

---

[2] Secretary Toulouse Oliver's view of the appropriate Title III procedure is described in further detail in her Brief in Opposition to the United States' Motion to Compel, to which the DOJ did not submit a reply. Def.'s Opp. Mot. Compel 11–17. Additionally, the DOJ cites Local Rule 7.1(c) as governing the Court's review of the DOJ's Motion to Compel. Pl.'s Opp. 1, 6 n.4. Secretary Toulouse Oliver is unaware of a Local Rule 7.1(c).

2

determine "whether—applying Rule 12(b)(6) standards—a valid Title III demand was made in the first place." *Oregon*, 2026 WL 318402, at *8; *accord Weber*, 2026 WL 118807, at *8.

The DOJ's exclusive reliance on the decades-old *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), to support its summary proceeding argument continues to be misplaced. Not only is it a single, out-of-circuit decision, but the Supreme Court also rejected the *Lynd* approach in *Powell* only two years after the *Lynd* decision by interpreting a substantially similar statute not to authorize a special proceeding. Def.'s Opp. Mot. Compel 11–15; *Powell*, 379 U.S. at 58 n.18; *Oregon*, 2026 WL 318402, at *8. Additionally, the DOJ's repeated invocations of Title III's "investigative" purpose do not warrant departure from the Federal Rules. The Rules specify "the procedure in *all civil actions and proceedings* in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). While the Rules "may be applied less rigidly in special statutory proceedings where a strict application of the [R]ules would frustrate the statutory purpose," *Booth v. Hume Pub., Inc.*, 902 F.2d 925, 931 (11th Cir. 1990), strict application of the Rules to at least allow motions to dismiss, briefing, discovery, and an opportunity to present evidence would not frustrate Title III's purpose. The DOJ argues that the "chief purpose" of Title III is "facilitat[ing] the investigation of the records before suit is filed." Pl.'s Opp. 8 (quoting *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960)). This purpose would be fulfilled even in the absence of a summary proceeding: the Court would apply the Federal Rules, decide whether the statutory requirements have been met, and, if so, compel the records for investigation—all before the DOJ decides whether to file a complaint alleging that New Mexico violated federal law.

Regardless of the exact procedure used and the relevance of *Lynd*, the Court must, at minimum, have the authority to determine if the DOJ has met Title III's statutory requirements,

3

including the condition that the DOJ make "a statement of the basis and the purpose" of its records demand. 52 U.S.C. § 20703. The DOJ concedes as much. *See* Pl.'s Opp. 2–3 (listing one element of the Court's inquiry as "did the Attorney General make a written demand for federal election records stating the basis and purpose"). And *Lynd* recognized that "[i]n the event of a genuine dispute thereon, it would be in order for the Court to determine whether the written demand has been made." 306 F.2d at 226. This understanding aligns with the Supreme Court's admonition that "Congress rarely intends to prevent courts from enforcing [Congress's] directives to federal agencies." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015). For this reason, courts apply "a 'strong presumption' favoring judicial review of administrative action," except "when a statute's language or structure demonstrates that Congress wanted an agency to police its own conduct." *Id.* (quoting *Bowen v. Mich. Acad. of Fam. Physicians,* 476 U.S. 667, 670 (1986)). Title III's language and structure provide that the Court "insist on satisfaction" of the "necessary precondition" that is the "statement of the basis and the purpose." *See id.* at 486–87.

Further, the Court must have the authority to decide not only that the DOJ made a statement that the DOJ *purports to be* a "statement of the basis and the purpose," but also that such statement *actually is* a "statement of the basis and the purpose" within the statute's meaning of that requirement. Without this ability, the requirement would become "merely perfunctory" or technical, rather than "a critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at *9; *see also Oregon*, 2026 WL 318402, at *7–8. Even the court in *Lynd* examined whether the written demand in that case "*adequately* stated the basis and the purpose therefor." 306 F.2d at 229 (emphasis added). The DOJ points to *Lynd*'s statement that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement

4

of the basis and the purpose'" "is not open to judicial review or ascertainment." Pl.'s Opp. 12 (quoting *Lynd*, 306 F.2d at 226). Even if *Lynd* were controlling precedent here, the Secretary is not asking the Court to assess whether the DOJ's statement of basis and purpose shows a violation of federal law. The question for the Court here is whether the DOJ made an adequate "statement of the basis and the purpose" at all. Thus, the DOJ has not shown that the Court lacks authority to decide Secretary Toulouse Oliver's Motion to Dismiss.

## II. The DOJ has not met Title III's statutory requirement that the DOJ provide a "statement of the basis and the purpose" of its demand.

Title III's plain language requires the demand to "contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The DOJ contends that this requirement is "plainly satisfied" by its assertion that "[t]he purpose of the request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." Pl.'s Opp. 11. As the California and Oregon district courts have held, this statement is insufficient. *Weber*, 2026 WL 118807, at *8–10; *Oregon*, 2026 WL 318402, at *8–10.

First, Title III's text requires a statement with two components: "the basis" and "the purpose." The statement identified by the DOJ presents a purpose but does not state a basis: "[t]he *purpose* of the request is to ascertain New Mexico's compliance with the list maintenance requirements of the NVRA and HAVA." Pl.'s Opp. 11 (emphasis added). "The basis [would be] the reasoning provided by the DOJ regarding the evidence behind its investigation of a particular state and specific, articulable facts pointing to the violation of federal law." *Weber*, 2026 WL 118807, at *9; *accord Oregon*, 2026 WL 318402, at *9. Second, assessing compliance with the NVRA and HAVA cannot be a "purpose" within the meaning of Title III. Although the scope of acceptable "purposes" may not be apparent from the plain language of 52 U.S.C. § 20703, limits

5

on disclosure requests must exist: a request premised on retaliatory purpose or a bare-bones statement of purpose would not be appropriate, and the lack of any judicial review would render the requirement "meaningless." *See Oregon*, 2026 WL 318402, at *9. Absent clear indication, courts should not conclude that "Congress intended to grant Plaintiff such expansive and unfettered authority to invade citizens' right to keep their sensitive information private." *Id.* at *9 (citing *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 721 (2022)). Therefore, since the statute's language "is ambiguous as to Congressional intent," the Court ought to "'look to the legislative history and the underlying public policy of the statute.'" *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) (quoting *United States v. LaHue*, 170 F.3d 1026, 1028 (10th Cir. 1999)).

The DOJ attempts to circumvent the "basis" requirement by arguing that "[t]he federal statute itself" can "suppl[y] the basis for the request," because, in contrast to *Lynd*, "Plaintiffs did not rely on a generalized or abstract purpose." Pl.'s Opp. 11. Neither Title III's text nor *Lynd*'s reasoning support the DOJ's contention that a statement of basis is not required if the proffered purpose is specific enough. Furthermore, interpreting Title III as permitting a legal, rather than factual, basis "would give Plaintiff virtually limitless access to records required to be maintained under Title III." *Oregon*, 2026 WL 318402, at *8.[3] Finally, the DOJ's reading of Title III's "statement of the basis and the purpose" requirement would collapse the meanings of "basis" and "purpose," rendering "the basis" portion of the statutory condition mere surplusage in violation of the basic canon of statutory construction requiring "giv[ing] effect to all statutory provisions."

---

[3] Even if a reference to a federal statute could be a "basis," HAVA cannot supply one here. HAVA requires states to adopt "a system of file maintenance that makes a reasonable effort to remove" ineligible voters. 52 U.S.C. § 21083(a)(4)(A). The DOJ has not explained why the unredacted records of over a million New Mexico voters are required to evaluate whether New Mexico's procedures make a "reasonable effort" to remove ineligible voters under HAVA. Def.'s Mot. 18.

6

*Chevron Mining Inc. v. United States*, 863 F.3d 1261, 1282 n.15 (10th Cir. 2017). If both "basis" and "purpose" were satisfied by a single, bare reference to a federal statute, Title III's "basis" provision would "needlessly be given an interpretation that causes it to duplicate another provision" and "to have no consequence." *Navajo Nation v. Dalley*, 896 F.3d 1196, 1215 (10th Cir. 2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 3, 174 (2012)). Even the examples of Title III demand statements in the case law cited by the DOJ are structured with both components. *See Lynd*, 306 F.2d at 229 n.6; *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) ("*Coleman I*"), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ("*Coleman II*").[4]

Separately, the DOJ's stated purpose, that is, assessing compliance with the NVRA and HAVA, is not an adequate purpose under Title III, as shown by the statute's legislative history and underlying policy. *See generally* Def.'s Mot. Dismiss ("Def.'s Mot."), Dkt. No. 35, at 16–17. For one, the NVRA and HAVA were enacted long after Title III, so assessing compliance with those statutes could not have been the purpose legislators had in mind. Moreover, Title III's legislative history indicates that it was enacted to "provide a more effective protection of the right of all qualified citizens to vote *without discrimination on account of race*," not to assess states' compliance with just any federal statute. H.R. Rep. No. 86-956, at 7 (1959) (emphasis added).

---

[4] The DOJ's selective quoting of the legislative history contained in *Coleman II* obscures that the demand at issue there did, in fact, include both "purpose" and "basis" components, the latter of which read: "This demand is based upon information in the possession of the Attorney General tending to show that discriminations on the basis of race and color have been made with respect to registration and voting within your jurisdiction." *Coleman I*, 208 F.Supp. at 199–200. *Coleman II* only referred to the legislative history to confirm that this statement was sufficient. Secretary Toulouse Oliver does not argue that the DOJ must prove that the alleged violations that make up the "basis" are more than just "possible," but the DOJ must at least allege that it has a factual basis for suspecting that the violations exist, as the demand in *Coleman* did.

Here, the DOJ does not allege that its purpose is to further an investigation into racially discriminatory voting practices and, for that additional reason, has not stated a "purpose" within the meaning of Title III. *See Weber*, 2026 WL 118807, at *9 (concluding the DOJ's similar "stated purpose" in demanding California's records was "outside of the scope of what Congress intended Title III to be used for"). If anything, the DOJ's use of Title III's records inspection provision to enforce NVRA and HAVA is an end-run around the enforcement and records inspection provisions set forth in those statutes. *See* 52 U.S.C. §§ 20507(i), 20510, 21111.

### III.  The DOJ is not entitled to New Mexican voters' unredacted election records under Title III of the CRA.

Title III does not require states to disclose information whose release or collection is prohibited by state or federal laws, nor does it prohibit redaction of information when voter records are released. Def.'s Mot. 17–18; *Oregon*, No. 2026 WL 318402, at *12. The DOJ argues that if it was only entitled to unredacted information, then "it would eviscerate Title III." Pl.'s Opp. 20. However, this overstates Secretary Toulouse Oliver's position, which is that disclosure is not statutorily mandated where state and federal privacy laws require redaction and where the DOJ has not explained the connection between its sweeping data demand and its purported purpose (here, evaluating compliance with the NVRA and HAVA). Def.'s Mot. 18. To the extent the NVRA's disclosure provision does not prohibit redaction to protect voter privacy and comply with state law, and HAVA does not have any public records disclosure requirement at all, a reasonable inference is that Congress did not believe providing access to unredacted records was necessary to assess compliance with those statutes. *See* 52 U.S.C. §§ 20507(i), 20510, 21111.[5]

---

[5] The DOJ identifies two matters in which Title III was used to seek access to unredacted state voter lists. Pl.'s Opp. 21, n.17. However, neither case required a court to decide whether that was

8

### IV. Compliance with the DOJ's demand for New Mexico's voter data would be illegal under the Privacy Act.

The DOJ's argument that it was not required to plead compliance with the Privacy Act is immaterial—the DOJ put the Privacy Act into play by pleading compliance with it in its Complaint. Pl.'s Opp. 13; Compl. ¶¶ 22–23. The Court may grant a motion "where the facts establishing the affirmative defense are apparent on the complaint's face," *Vigil v. Doe*, 405 F. Supp. 3d 1058, 1067 (D.N.M. 2019), and illegality is one such affirmative defense, *see, e.g.*, *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1260–61 (D. Colo. 2022). In the Complaint, the DOJ purports to be in compliance with the Privacy Act based on pre-existing system of records notices ("SORNs") but none of those cover the records requested or current factual scenario. Def.'s Mot. 23–25. Thus, the illegality of giving the DOJ the records it seeks under the Privacy Act is clear from the face of the Complaint, and the Court can grant Secretary Toulouse Oliver's Rule 12(b)(6) motion based on the affirmative defense of avoidance of illegality. Def.'s Mot. 11–12

#### a. The DOJ has not met the Privacy Act's notice requirements for establishing or revising a system of records.

First, the DOJ misreads the Privacy Act in claiming that the statute does not apply to the instant data demand. Pl.'s Opp. 15. Regardless of whether the Privacy Act "restrict[s] the ability of state actors to share information with federal agencies," *id.*, it does regulate federal agencies' maintenance of that information. 5 U.S.C. § 552a(e), (e)(4) (requiring "[e]ach agency that maintains a system of records" to publish a SORN before establishing or revising such a system). The DOJ is an "agency," and it would "maintain" a system of records through its demand of

---

a permissible use of Title III: these cases were resolved by consent decree and memorandum of understanding.

9

Secretary Toulouse Oliver. 5 U.S.C. § 552a(a)(3) (defining "maintain" as "maintain, collect, use, or disseminate"). Therefore, the SORN requirement applies.

Second, the DOJ does not meaningfully engage with the Secretary's arguments about the insufficiency of the SORNs identified in its Complaint. Instead, in its Opposition, the DOJ simply relists those SORNs and points to a table of "routine uses." Pl.'s Opp. 13–14. However, it does not respond to the Secretary's argument that these SORNs do not give adequate notice as to the system of records at issue here, since, among other things, they do not identify with specificity the categories of covered individuals, covered records, and covered sources. *See* Def.'s Mot. 24–25; *see also Weber*, 2026 WL 118807, at *18 (concluding that the DOJ "fails to identify relevant System of Records Notices (SORNs) as necessitated by the Privacy Act").

b. **The Privacy Act's protection of records pertaining to First Amendment rights bars the DOJ's demand.**

The DOJ also does not meaningfully counter Secretary Toulouse Oliver's argument that 5 U.S.C. § 552a(e)(7) bars the DOJ from maintaining the records at issue because the records "describ[e] how . . . individual[s] exercise[] rights guaranteed by the First Amendment." Def.'s Mot. 20–21. The DOJ acknowledges that the cases cited by Secretary Toulouse Oliver "stand for the proposition[]" that "voting and registration implicate speech and actions protected under the First Amendment." Pl.'s Opp. 15. But the DOJ does not recognize the obvious implication of that statement: since voting and registration implicate rights protected under the First Amendment, records that describe how an individual votes and registers to vote are records that describe how "an individual exercises rights guaranteed by the First Amendment" under 5 U.S.C. § 552a(e)(7). *See also Weber*, 2026 WL 118807, at *17 (deciding that the Privacy Act's First Amendment provision barred the DOJ's request for California's unredacted records).

10

Further, the application of the Privacy Act here would not "effectively prevent the Voting Section of the Civil Rights Division from engaging in any investigations or enforcement actions at all," as the DOJ suggests. Pl.'s Opp. 15–16. It would simply require the DOJ not to maintain First Amendment records unless one of the enumerated exceptions applies. 5 U.S.C. § 552a(e)(7).

V.     **The procedural protections of the E-Government Act apply to the DOJ's collection of New Mexico's voter data, and the DOJ has not complied with them.**

The DOJ misunderstands the plain meaning of the E-Government Act. The DOJ contends, without citation to statutory language or other authority, that "[o]nly when a new system is established—not when each new data request is made—will a [Privacy Impact Assessment ("PIA")] be required." Pl.'s Opp. 17. However, the text of that Act directs "an agency" to conduct a PIA before "initiating a new collection of information." Pub. L. No. 107–347, § 208(b)(1)(A)(ii), 116 Stat. 2899 (2002). In other words, an agency's initiation of a new *collection* of information, not the establishment of a new *storage system* triggers the PIA requirement.[6] The DOJ's collection of New Mexico voters' information is a type of "new collection" contemplated by the Act, and therefore a PIA is required. *See* Def.'s Mot. 25–26; *Weber*, 2026 WL 118807, at *19. The PIAs briefly cited by the DOJ in its Opposition pertain only to the DOJ's general data storage systems, not to this particular collection of information. Pl.'s Opp. 17 nn. 12–13. Therefore, the DOJ has not complied with the statute.

To the extent that the DOJ contends that a PIA is not required because the data requested is "already maintain[ed]" by Secretary Toulouse Oliver, this argument similarly fails. Pl.'s Opp.

---

[6] Secretary Toulouse Oliver cited *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity* ("*EPIC*"), 266 F. Supp. 3d 297, 311 (D.D.C.) in her Motion to Dismiss solely for that case's description of an agency's PIA obligations under the E-Government Act. Def.'s Mot. 25.

11

16. The E-Government Act does not exempt certain collections from the PIA requirement based on the source or manner in which it is originally maintained. In fact, Office of Management and Budget guidance explains that PIAs are required, for example, when an agency "systematically incorporate[s] into existing information systems databases of information in identifiable form . . . obtained from commercial or public sources." OMB, Guidance for Implementing the Privacy Provisions of the E-Government Act of 2002, M-03-22 (Sept. 26, 2003), Att. A § II(B)(b)(6).

Finally, the E-Government Act's application here would not lead to an "absurd result." Pl.'s Opp. 17. The DOJ states that "[n]othing in the E-Government Act or the purpose of the privacy provision in the Act suggests it was meant to encompass the enforcement provisions of all voting laws where voter data is examined." *Id.* However, the purpose of the Act's privacy provision "is to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." Pub. L. No. 107–347, § 208(a). Nothing about this provision suggests that the Act was *not* meant to encompass the DOJ's sweeping collection of voter information to assess compliance with the NVRA and HAVA. In fact, it is precisely in situations like this, where the federal government seeks to collect copious amounts of highly sensitive, individual-level, electronic data that the consideration of personal privacy is most important.

## CONCLUSION

Defendant respectfully requests that the Court grant the motion to dismiss with prejudice.

Dated: February 10, 2026

Respectfully Submitted,

**RAÚL TORREZ**
**ATTORNEY GENERAL**
**NEW MEXICO DEPARTMENT OF JUSTICE**

*/s/ Anjana Samant*
James Grayson
Chief Deputy Attorney General
Anjana Samant
Deputy Counsel for Impact Litigation
Olivia den Dulk
Bailey Quinn Colfax
Assistant Attorneys General
408 Galisteo Street
Santa Fe, NM 87501
Tel. (505) 490-4060
jgrayson@nmdoj.gov
asamant@nmdoj.gov
odendulk@nmdoj.gov
bcolfax@nmdoj.gov

*Counsel for Defendant Secretary Maggie Toulouse Oliver*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system causing all counsel of record to be electronically served.

*/s/ Anjana Samant*
Anjana Samant